# EXHIBIT A

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
NO. 24CV026995-910

REPUBLICAN NATIONAL COMMITTEE; and NORTH CAROLINA REPUBLICAN PARTY,

*Plaintiffs*,

v.

**VERIFIED COMPLAINT**

NORTH CAROLINA STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as Executive Director of the North Carolina State Board of Elections; ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections; JEFF CARMON, in his official capacity as Secretary of the North Carolina State Board of Elections; STACY EGGERS IV, KEVIN N. LEWIS, and SIOBHAN O'DUFFY MILLEN, in their official capacities as members of the North Carolina State Board of Elections,

*Defendants*.

NOW COMES Plaintiffs the Republican National Committee ("RNC") and the North Carolina Republican Party ("NCGOP"), by and through undersigned counsel and, pursuant to Rule 7 of the North Carolina Rules of Civil Procedure file this Verified Complaint seeking a Writ of Mandamus compelling the North Carolina State Board of Elections ("NCSBE") and its members, Alan Hirsch, Jeff Carmon, Siobhan Millen, Stacy Eggers IV, and Kevin Lewis in their respective official capacities, and the NCSBE's Executive Director Karen Brinson Bell (collectively "Defendants") to fulfill their duties set forth in N.C. Gen. Stat. § 163-82.11 *et seq.* In support, Plaintiffs allege as follows:

1

# INTRODUCTION

1.     "Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Purcell v. Gonzalez*, 549 U.S. 1, 4, 166 L. Ed. 2d 1, 7 (2006).

2.     Free and fair elections are the bulwark of the citizenry's trust in their government. Ensuring that qualified voters—and only qualified voters—are able to vote in elections is the cornerstone of that compact between the state and its citizens. But trust must be earned.

3.     The North Carolina State Board of Elections ("NCSBE") betrayed that trust when it allowed over 225,000 people to register to vote with registration forms that failed to collect certain required identification information before the registration forms were processed, a plain violation of Section 303 of the Help America Vote Act ("HAVA"). Because of these errors, the North Carolina voter rolls, which both HAVA and state law mandates that Defendants regularly maintain, are potentially replete with ineligible voters—including possible non-citizens—all of whom are now registered to vote.

4.     By failing to collect certain statutorily required information prior to registering these applicants to vote, Defendants placed the integrity of the state's elections into jeopardy.

5.     Defendants admit they violated HAVA and, as a result, state law. Yet, even when concerned citizens brought these issues to their attention, Defendants inexplicably refused to correct their wrongs. All Defendants offer as a solution is a half-hearted promise that those who were ineligible to register but were allowed to anyway will naturally filter themselves out from the state's voter rolls when they conduct other election-related activities.

6. This inaction misses the mark. Not only does this "solution" fail to remedy the ongoing violations of state and federal law or account for Defendants' responsibilities under the same, but it leaves North Carolinians to wonder how they can trust in the security of their elections, especially when those tasked with protecting their rights cannot be bothered to do what is required by law.

7. Even worse, this "solution" sends the message to the millions of duly qualified and registered voters in North Carolina that their chief elections officials will shirk their responsibilities and refuse to verify whether those who vote in the state's elections are entitled to do so in the first place.

8. This ominous message eviscerates confidence in North Carolina's elections and it ensures that *Purcell*'s warning of distrust and disenfranchisement may soon come true.

9. By failing to do the required work to determine if Defendants' violation of HAVA has resulted in the registration of ineligible voters, and thereby allowing unlawfully registered persons to vote in the state's elections, Defendants' actions further jeopardize the individual right to vote that is guaranteed to every qualified voter in North Carolina. *See,* N.C. Const. art. VI § I; *see also Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)).

10. With the November 2024 election fast approaching, North Carolinians cannot afford to simply wait and see. Defendants admit they violated federal law. Now, they must be required to remedy their actions before these failures impact the results of the 2024 elections.

## **PARTIES**

11. The Republican National Committee is the national committee for the Republican Party; representing all registered Republicans across both the state and nation, as well as the values

3

they stand for. The RNC serves as the collective voice for the Republican Party's platform. It is the national committee of the Republican Party as defined by 52 U.S.C. § 30101(14) and a political party as defined by N.C. Gen. Stat. § 163-96. The RNC's principal place of business is 310 First Street SE, Washington, D.C.

12.     The RNC's core mission involves organizing lawful voters and encouraging them to support Republican candidates at all levels of government, including throughout North Carolina. The RNC expends significant time and resources fighting for election security and voting integrity across the nation, including in North Carolina. These efforts are intended to ensure that the votes and voices of its members, its candidates, and the party are not silenced or diluted in any way. Recent rises in non-citizens and other unqualified persons voting or seeking to vote in elections has forced the RNC to divert its efforts and funds in order to hold elections officials accountable to what both federal and state laws require.

13.     The North Carolina Republican Party is a state committee of the Republican Party, as defined by 52 U.S.C. § 30101(15), and a political party as defined by N.C. Gen. Stat. § 163-96. The NCGOP represents the interests of registered Republicans across North Carolina. Its headquarters and principal place of business is 1506 Hillsborough St, Raleigh, NC 27605.  The NCGOP represents the interests of registered Republican voters, residing across all one hundred counties in the state. The NCGOP also advocates for the interests of tens of thousands of non-affiliated voters who align with various aspects of the Republican Party platform.

14.     The NCGOP's mission and platform largely mirror that of the RNC, including an emphasis on election integrity and security. The NCGOP's core mission includes counseling interested voters and volunteers on election participation including hosting candidate and voter registration events, staffing voting protection hotlines, investigating reports of voter fraud and

4

disenfranchisement, and providing election day volunteers in all one hundred counties across North Carolina. The NCGOP spends tremendous time and effort advocating for its members throughout all levels of state government, working to make sure they are heard both at the ballot box and beyond.

15.    Plaintiffs have organizational standing to bring this action. Defendants' actions and inaction directly impact Plaintiffs' core organizational missions of election security and providing services aimed at promoting Republican voter engagement and electing Republican candidates for office. Defendants' violations of HAVA and the subsequent refusal to remedy their wrongdoing, in accordance with what state law requires, has forced Plaintiffs to divert significantly more of their resources into combatting election fraud in North Carolina. Plaintiffs' organizational and voter outreach efforts have been and will continue to be significantly stymied due to Defendants' ongoing failures. As a result, Plaintiffs will have no choice but to expend increased amounts of time and money, beyond what they would have already spent, in order to combat this unwarranted interference with their central activities. For example, because of Defendants' violations of state law, Plaintiffs will need to commit added time and resources into monitoring North Carolina's voter rolls, voter activity, and responding to instances of potential voter fraud in upcoming elections, tasks required of Defendants under state and federal law.

16.    Additionally, NCGOP has associational standing because its members have standing in their own right to challenge Defendants' actions here. NCGOP represents millions of registered Republican voters across the state of North Carolina, including at least one registered Republican voter in every one of the state's one hundred counties, which is a matter of public record. NCGOP's members are harmed by these inaccurate voter rolls as well as Defendants' ongoing HAVA and state law violations. These members' votes are undoubtedly diluted due to

ineligible voters participating in elections due to Defendants' statutory violations. Additionally, these members' rights to participate in a fair and secure electoral process, free from voter fraud, will be significantly hindered. Ensuring such freedom and security in all elections throughout North Carolina is germane to the NCGOP's organizational mission.

17. Plaintiffs are further harmed in their ability to effectively compete in elections across the state as Defendants' refusal to maintain accurate and updated voter rolls risks opening the door to potentially fraudulent votes and inaccurate election results. This harm is especially palpable considering North Carolina's party-based primary system which makes verifying the accuracy of each voter registration form that much more crucial.

18. The North Carolina State Board of Elections is the state agency tasked with "general supervision over primaries and elections of the state." *See* N.C. Gen. Stat. § 163-22. NCSBE is tasked with ensuring that elections in North Carolina comply with all relevant state and federal laws and, in NCSBE's own words, "ensur[ing] that elections are conducted lawfully and fairly."[1]

19. Karen Brinson Bell is the Executive Director of NCSBE and the state's "Chief Election Official" as defined by N.C. Gen. Stat. § 163-82.2. In this capacity, Ms. Brinson Bell oversees elections in all one hundred counties in North Carolina and administering all elections occurring therein. *See* N.C. Gen. Stat. § 163-27(d). Ms. Brinson Bell is sued in her official capacity.

20. Alan Hirsch is the Chair of NCSBE. He resides in Chapel Hill, North Carolina. Mr. Hirsch is sued in his official capacity.

21. Jeff Carmon is the Secretary of NCSBE. He resides in Snow Hill, North Carolina. Mr. Carmon is sued in his official capacity.

---

[1] https://www.ncsbe.gov/about

22.     Stacy Eggers, IV is a member of NCSBE. He resides in Boone, North Carolina. Mr. Eggers, IV is sued in his official capacity.

23.     Kevin N. Lewis is a member of NCSBE. He resides in Rocky Mount, North Carolina. Mr. Lewis is sued in his official capacity.

24.     Siobhan O'Duffy Millen is a member of NCSBE. She resides in Raleigh, North Carolina. Ms. Millen is sued in her official capacity.

## **JURISDICTION AND VENUE**

25.     This Court has jurisdiction over the claims asserted herein pursuant to N.C. Gen. Stat. § 7A-245.

26.     This Court has personal jurisdiction over NCSBE as it is a state agency in North Carolina.

27.     This Court has personal jurisdiction over Executive Director Karen Brinson Bell, Chair Alan Hirsch, Secretary Jeff Carmon, Stacy Eggers IV, Kevin Lewis, and Siobhan O'Duffy Millen as each is sued in their official capacities as appointed officials in North Carolina. Each is a citizen of North Carolina and each resides in the state.

28.     Venue is proper in this court pursuant to N.C. Gen. Stat. § 1-82.

## **FACTUAL ALLEGATIONS**

29.     Defendants are required to maintain accurate and updated statewide voter registration lists ("voter rolls"). N.C. Gen. Stat. § 163-82.11.

30.     In addition to other standards, Defendants must ensure that the voter rolls are in full compliance with the requirements of Section 303 of HAVA. *Id*. at § 163-82.11(c) ("The State Board of Elections *shall* update the statewide computerized voter registration list and database to meet the requirements of section 303(a) of [HAVA].") (emphasis added).

7

31.   Due to this express mandate that North Carolina's voter rolls must be maintained in a manner compliant with section 303(a) of HAVA, it is important to review what that section requires of Defendants. This, in turn, illustrates Defendants' failure to fulfill their statutory duties under state law.

32.   Congress, through HAVA, set requirements for how states must implement and maintain their voter rolls. *See*, *e.g.*, 52 U.S.C. § 21081, 21082, and 21083.

33.   Among other standards, HAVA mandates that states must implement computerized statewide voter rolls to serve as the "single system for storing and managing the official list of registered voters throughout the State." *Id.* at § 21083(a)(1)(A)(i).

34.   HAVA goes on to require that the rolls will "be coordinated with other agency databases within the state" and that "[a]ll voter registration information obtained by any local election official in the State shall be electronically entered into the computerized list on an expedited basis at the time the information is provided to the local official." *Id.* at § 21083(a)(1)(A)(iv), (vi).

35.   HAVA further provides that "[t]he computerized list shall serve as the official voter registration list for the conduct of all elections for Federal office in the State." *Id.* at (viii).

36.   Once a state has established the computerized voter registration list required by HAVA, 52 U.S.C. § 21083(a)(2) provides certain actions the state must take to ensure the list is accurately maintained "on a regular basis." *Id.*

37.   Importantly, these maintenance instructions include processes and procedures for removing the names of ineligible voters from the state's voter rolls. *Id.* at § 21083(a)(2)(A). HAVA also sets the standard of conduct for voter roll maintenance, requiring the state to ensure that: "(i) the name of each registered voter appears in the computerized list; (ii) only voters who are not

8

registered or who are not eligible to vote are removed from the computerized list; and (iii) duplicate names are eliminated from the computerized list." *Id.* at § 21083(a)(2)(B).

38.   Next, HAVA mandates that states maintain the technological security of their voter rolls, requiring the states to implement provisions making "a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." *Id.* at § 21083(a)(3)(4).

39.   In addition to setting the standards for establishing and maintaining accurate state voter rolls, HAVA has a clearly described process for verifying the identification of applicants registering to vote. *See id.* at § 21083(a)(5)(A)(i).

40.   First, it requires that applicants provide either a driver's license number or the last four digits of their social security number. Providing this information is a necessary prerequisite **before** the registration form can be processed by the state. *Id.* at § 21083 (viii). In fact, § 21083(a)(5) prevents a state from accepting a voter registration form for an election for Federal office unless the form includes the listed information. *Id.*

41.   Only if a registrant affirmatively confirms they do not have either form of identification, the state must "assign the applicant a number which will serve to identify the applicant for voter registration purposes . . . [which] shall be the unique identifying number assigned under the list." *Id.* at § 21083(a)(5)(A)(ii).

42.   Prior to December 2023, NCSBE used voter registration forms that failed to collect this required information. Specifically, NCSBE collected, processed, and accepted voter registration applications that lacked **both** the driver's license number and social security number because NCSBE's form did not tell the voter the information was required.

9

43.     As a result of these errors, voters did not utilize the catchall provision of § 21083(a)(5)(A)(ii) as the registration forms failed to make registrants aware that the driver's license or social security number identifying information was necessary for the application to be processed. Thus, any affirmative attestation regarding one's lack of those relevant documents was impossible.

44.     Defendants ignored HAVA's requirement that the identifying information be collected before an application can be accepted and processed. As a result, NCSBE accepted hundreds of thousands of voter registration applications without applying the HAVA identifying information requirement, resulting in approximately 225,000 applicants being registered to vote in a manner out-of-compliance with HAVA.

I.      ***Defendants Admit They Used Voter Registration Forms Which Were HAVA Non-Compliant***

45.     In North Carolina, an individual must register to vote prior to voting. *See* N.C. Gen. Stat. §§163-54, 163-82.1(a); *see also* N.C. Const. art. VI § 3(1).

46.     The state's registration form asks certain information, seeking to ascertain whether the applicant is qualified to vote under applicable state and federal laws. N.C. Gen. Stat. §163-82.4(e). In addition to the information on the form, an elections official may ask an applicant for other "information [that is] necessary to enable officials of the county where the person resides to satisfactorily process the application." *Id.* at § 163-82.4(a).

47.     Despite the informational requirements mandated by both state and federal law—along with the processes and procedures under state law for obtaining the same information—Defendants wholly failed to uphold their statutory duties.

Case 5:24-cv-00547-BO   Document 1-3   Filed 09/23/24   Page 11 of 23

48.     Defendants' noncompliance with HAVA was first raised when a concerned citizen, Carol Snow, filed a complaint with NCSBE on October 6, 2023. (hereinafter, "Snow Amended HAVA Complaint").[2]

49.     In her complaint, Ms. Snow alleged that NCSBE's voter registration form, which was still in use at the time of her filing, failed to indicate that "the applicant's qualifying identification of the applicant's driver's license number or last 4 digits of the applicant's social security number, are required if one or the other have been issued to the applicant." *See* Snow Amended HAVA Complaint, p. 1.

50.     As Ms. Snow's complaint pointed out, the relevant portion of NCSBE's voter registration form then in use identified certain categories of **<u>required</u>** information by denoting them in text blocks with red background. This is contrasted by the white background used for **<u>optional</u>** categories of information on the form. Despite HAVA requiring either a driver's license number or the last four digits of a social security number be provided by the applicant, the registration form had a white text box background for this information, not red. *See* Fig. 1, below; *see also* Snow Amended HAVA Complaint, p. 2.  The applicant had no way to know from the form that the driver's license number or the social security number were required for their form to be accepted and processed by NCSBE.

---

[2] Publicly available at: https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/2023-11-28/Snow%20Amended%20HAVA%20Complaint.pdf

**Fig. 1 – NCSBE Voter Registration Form Prior to NCSBE's December 6, 2023 Order**



51.     At its meeting on November 28, 2023, NCSBE considered Ms. Snow's complaint. At the meeting[3] and in its December 6, 2023 Order,[4] NCSBE acknowledged that its voter registration forms did not sufficiently notify applicants that their driver's license number or last four digits of their social security number were required in order for their registration to be processed and accepted.

52.     Defendants further acknowledged that they used the voter registration form which failed to comply with HAVA for approximately 225,000 voters throughout North Carolina.[5]

53.     It follows then, that by failing to comply with HAVA, Defendants admittedly violated their duties under N.C. Gen. Stat. § 163-82.11(c).

54.     Ultimately, Defendants granted Ms. Snow's request to change the voter registration form **moving forward**.

---

[3] Meeting documents and a recording of NCSBE's November 28, 2023 meeting is available here: dl.ncsbe.gov/?prefix=State_Board_Meeting_Docs/2023-11-28/
[4] The December 6, 2023 Order from NCSBE is available here: https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/Orders/Other/2023%20HAVA%20Complaint%20-%20Snow.pdf
[5] Given that NCSBE could approximate the number of voters registered in this manner, Defendants, upon information and belief, have the ability to track which voters were registered using the non-compliant form and thus, can contact those voters and request the missing information from them.

12

55.     In contrast, Defendants denied Ms. Snow's request to identify and contact voters whose registrations were improperly accepted due to their forms lacking the necessary identification information. Specifically, Defendants took the position that:

    a.  HAVA does not authorize NCSBE to contact registered voters (as opposed to applicants)[6]; and

    b.  Even if those registered voters did not provide the required identification information as part of their application, they would have to provide other identifying information in connection with other features of the voting process, such as requesting an absentee ballot.

56.     Recognizing the inadequacy of Defendants'' "solution," Ms. Snow raised the need to actually remedy these improper registrations during NCSBE's March 11, 2024 and April 11, 2024 meetings. Both times NCSBE denied Ms. Snow's requests.

57.     Under the plain text of HAVA, NCSBE should not have accepted or processed these registration forms since they lacked either the required identification or an affirmative attestation that the registrant did not have the necessary information. *See* 52 U.S.C. §21083(a)(5).

58.     Similarly, Defendants should have taken immediate action to correct the accuracy of the state's voter rolls, a task mandated by HAVA and, in turn, state law. *See id.* at §21083(a)(2); *see also* N.C. Gen. Stat. § 163-82.11(c).

---

[6] Curiously, this position is not supported by the plain language of HAVA which provides, among other things, processes for identifying and removing the names of "ineligible **voters**" from the state's voter rolls. *See* 52 U.S.C. § 21083(a)(2)(A)(B). To the extent Defendants believe HAVA only allows them to notify applicants of issues with their registration forms, *see id.* at § 21083(4), Defendants failed to do so on the front end and instead, improperly processed and accepted their registration forms. Thus, NCSBE's logic is self-defeating; it cannot violate the statute by allowing these invalid applicants to become registered voters, only to then say they cannot contact them because those registrants are not "applicants."

13

59.     Nevertheless, public records provided by Defendants reveal that 225,000 voter registrations were processed and accepted despite missing both the applicant's driver's license number and the last four digits of the registrant's social security number.

60.     Thus, Defendants' refusal to correct their violations is unjustifiable.

61.     Defendants' dismissal of Ms. Snow's straightforward solution is irreconcilable with their duties, and it damages lawfully-registered North Carolina voters and candidates, including Republican voters who are members of Plaintiffs, and Republican candidates whom Plaintiffs and their members support.

II.     ***Despite Their Errors, Defendants Refuse to Identify Unqualified Voters or Remove Them From The State's Voter Rolls***

62.     HAVA places the burden on the state to "determine whether the information provided by an individual is sufficient to meet the requirements of [the statute]." *See* 52 U.S.C. § 21083(a)(5)(A)(iii). Similarly, N.C. Gen. Stat. § 163-82.11(c) mandates that the state maintain its voter rolls in accordance with what HAVA requires.

63.     Through this affirmative directive—along with the other enumerated requirements throughout the statute—Defendants either knew or should have known that they were tasked with ensuring that only properly completed registration forms were accepted and processed. Even still, Defendants permitted hundreds of thousands of people to register without providing the basic information HAVA requires.

64.     After this failure, Defendants should have immediately taken action to remedy this mistake, including confirming that ineligible voters were not on the state's voter rolls. *See* 52 U.S.C. § 21803(a)(2)(A)(B); *see also* N.C. Gen. Stat. § 163-82.11(c).

65.     By declining to uphold their statutory duties, Defendants violated both state and federal law, irreparably damaged North Carolina voters, the NCGOP, the RNC, and their

organizational missions, and most importantly, their members. Defendants opened the door to insecure elections in North Carolina, marred by potentially fraudulent votes.

III. ***By Failing to Correct Their HAVA Violations, Defendants Place Foundational Election Principles Into Jeopardy***

66. Many states, including North Carolina, have recently confronted issues relating to non-citizens and other ineligible persons attempting to register to vote. *See, e.g.,* N.C. Gen. Stat. § 163-82.14(c1).[7]

67. North Carolina's statutory requirements notwithstanding, Defendants' failure to require necessary HAVA identification information before processing and accepting hundreds of thousands of voter registration forms allowed untold numbers of ineligible voters to register. Now, those ineligible voters could vote in the upcoming November 5, 2024 election and beyond.

68. Upon information and belief, Defendants' violations of HAVA allowed non-citizens to register to vote in North Carolina, in direct contravention of both federal and state law. *See, e.g.,* N.C. Const. art. VI §I.

69. By allowing ineligible voters to register and then remain on the North Carolina voter rolls, Defendants have brought the security and validity of the state's elections into question.

70. Even worse, by refusing to correct their errors, Defendants are willfully ignoring their statutory responsibilities.

71. If Defendants do not remove ineligible voters from the state's voter rolls, then the legitimate votes of qualified voters will be diluted and disenfranchised in upcoming elections. This

---

[7] On Wednesday, August 21, 2024, Ohio announced that it had identified at least 597 non-citizens who registered and/or voted in recent elections. This finding was precipitated by a comprehensive statewide audit which identified 154,995 ineligible registrants on the state's voter rolls. *See* https://apnews.com/article/ohio-voters-citizenship-referrals-42799a379bdda8bca7201d6c42f99c65 [last accessed 08.22.2024].

reality will, in turn, have a substantial chilling effect on North Carolinians' right to vote in free and fair elections. *See* N.C. Const. art. I §10.

IV. ***Remedying These Errors Will Not Burden NCSBE***

72. Defendants already maintain processes for seeking out additional information from voters who fail to provide necessary information.

73. For example, the county boards of elections regularly contact voters who vote with a provisional ballot on election day, seeking additional identifying information from these voters as part of post-election day processes.

74. Notably, accurate voter roll maintenance, including removing the names of ineligible voters from voting rolls, is already required by HAVA and state law. *See* 52 U.S.C. § 21083(a)(2)(A)(B); N.C. Gen. Stat. § 163-82.11(c). Thus, any burden on Defendants in terms of time required to correct the state's voter rolls is mitigated by the fact that federal law mandates the same.

75. Unlike the minimal burden Defendants would face if required to correct the state's voter rolls in compliance with federal law, the burden placed on Plaintiffs is palpable. Absent immediate corrective action by Defendants, the significant harm faced by Plaintiffs will only increase. Not only will Plaintiffs' members be disenfranchised, but Plaintiffs' mission of advocating for Republican voters, causes, and candidates will be impeded by contrary votes of potentially ineligible voters.

76. With the November 5, 2024 election now three months away, early voting starting in less than two months, and ballots being mailed starting September 6, 2024, it is exceedingly important that Defendants take immediate actions to correct their wrongs, guaranteeing that qualified voters are able to vote, while preventing ineligible persons from trying to do the same.

## CLAIMS FOR RELIEF

### COUNT ONE: VIOLATION OF N.C.G.S. § 163-82.11(c) – WRIT OF MANDAMUS

77. The foregoing paragraphs are incorporated by reference as if fully set forth herein.

78. North Carolina law unambiguously requires Defendants to maintain the state's voter rolls in a manner compliant with Section 303 of HAVA. N.C. Gen. Stat. § 163-82.11(c).

79. Section 303 of HAVA requires that North Carolina create a computerized statewide voter registration list containing the names and registration information of every legally registered voter. 52 U.S.C. § 21083(a)(1)(A).

80. HAVA similarly mandates that North Carolina verify the accuracy of a prospective voter's registration information, **prior** to accepting the registration. Specifically, the state must collect the registrant's driver's license number or last four digits of their social security number or, alternatively, the registrant must affirmatively attest that they have neither. *Id.* at § 21083(a)(5)(A).

81. HAVA also requires that Defendants regularly review and maintain the accuracy of the state's voter registration list, including, if applicable, removing ineligible persons from the voter roll. *Id.* at § 21083(a)(2)(4).

82. North Carolina law similarly mandates the collection of certain identification information from applicants, creating certain tools for verification of the same. *See* N.C. Gen. Stat. §§163-54, 163-82.1(a); 163-82.4 (a)(e).

83. Upon information and belief, Defendants failed to collect the statutorily required information from at least 225,000 registrants whose registrations were, in turn, processed and accepted despite lacking this necessary information.

84. Upon information and belief, even once this error was identified and corrected on a forward-looking basis, NCSBE refused, and continues to refuse, to contact these registrants or

17

verify if they have the necessary information in order to correct the accuracy of the state's voter registration list.

85.     Not only does the language of N.C. Gen. Stat. § 163-82.11(c) create a duty for Defendants to maintain accurate voter rolls in compliance with HAVA, but Defendants have no discretion or permissible freedom to deviate from this mandate.

86.     It is without dispute that, even when this was brought to their attention, Defendants failed to act. In fact, Defendants affirmatively refused to act and correct the accuracy of the state's voter rolls as to be compliant with HAVA.

87.     Due to Defendants' unambiguous refusal to act, even after acknowledging their own violation of the law, Plaintiffs have no other adequate remedy than to seek relief from this Court.

88.     Unless enjoined and ordered to comply with their statutory duties, Defendants will continue to violate state law by refusing to maintain accurate voter rolls and declining to remedy the 225,000 voter registrations that should have never been processed or accepted in the first place.

**COUNT TWO: VIOLATION OF N.C. CONST. ART. I § 19 – MANDATORY INJUNCTION**

89.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

90.     As described more fully above, Defendants have a non-discretionary, statutory duty to maintain the state's voter rolls in a manner compliant with Section 303(a) of HAVA.

91.     N.C. Gen. Stat. § 163-82.11(c) is an affirmative command, creating a duty imposed by law.

92.     Defendants admit they failed to uphold this duty when they accepted hundreds of thousands of voter registrations which were plainly non-compliant with Section 303(a) of HAVA.

93. Despite this admission, Defendants refuse to take any action to remedy their violations.

94. Defendants' actions directly interfere with North Carolinian's fundamental right to vote. By allowing potentially ineligible persons to vote in the state's elections and remain on the state's voter rolls, Defendants have ignored their statutory and constitutional duties while simultaneously opening the door to potential widespread dilution of legitimate votes in upcoming elections.

95. Defendants cannot offer any legitimate justification, let alone a compelling interest, for this dereliction of duty.

96. Defendants must be ordered to immediately and permanently rectify this harm in order to protect the integrity of North Carolina's elections .

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Issue a writ of mandamus and a mandatory injunction ordering Defendants to develop, implement, and enforce practices and policies to ensure compliance with HAVA and, in turn, N.C. Gen. Stat. § 163-82.11(c);

2. Direct Defendants, under a court-approved plan to be completed no later than September 6, 2024, including mandatory reporting and monitoring requirements, to take all actions necessary to remedy their violations of state law and HAVA, specifically, identifying all ineligible registrants and removing them from the state's voter registration lists in a manner consistent with state and federal law, and to the extent such removal is not feasible prior to the date set forth herein, then direct Defendants to require all individuals who failed to provide necessary HAVA identification information but were still registered to vote under

the state's prior registration form, to cast a provisional ballot in upcoming elections pending Defendants' receipt and confirmation of the required HAVA information;

3. Direct Defendants, under a court-approved plan including mandatory reporting and monitoring requirements, to take all actions necessary to ensure future compliance with state law and HAVA, specifically, registering only eligible, qualified voters in a manner consistent with both statutes and maintaining the state's voter registration lists in accordance therewith;

4. Award Plaintiffs their reasonable attorney's fees, litigation expenses, and associated costs incurred in connection with this action, as otherwise permitted by law;

5. Retain jurisdiction over this matter to ensure Defendants comply with any orders issued by this Court; and

6. Grant such additional relief deemed just and proper.

This, the 23rd day of August, 2024.

**NELSON MULLINS RILEY &
SCARBOROUGH LLP**

By: /s/ Philip J. Strach
Phillip J. Strach
North Carolina State Bar no. 29456
Jordan A. Koonts
North Carolina State Bar no. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com

20

**BAKER DONELSON BEARMAN,
CALDWELL & BERKOWITZ, PC**

By: /s/   John E. Branch, III
John E. Branch, III
North Carolina State Bar no. 32598
Thomas G. Hooper
North Carolina State Bar no. 25571
2235 Gateway Access Point, Suite 220
Raleigh, NC 27607
Ph: (984) 844-7900
jbranch@bakerdonelson.com
thooper@bakerdonelson.com

*Attorneys for Plaintiffs*

21

**VERIFICATION**

I, _Matthew Judge_, affirm under the penalty of perjury, that the foregoing representations in this Verified Complaint are true to my own knowledge, except as to matters stated upon information and belief, and as to those matters, I believe them to be true.

By: _(signature)_

_Executive Director, NCGOP_

Date: _08/23/2024_

_Wake_ County

STATE OF NORTH CAROLINA

Sworn and subscribed to me on this, the _23_ day of _August_ , 2024

_Brooke Peterson_
Notary Public
My commission expires: _07-19-27_