IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:24-CV-00547-M

REPUBLICAN NATIONAL COMMITTEE
and NORTH CAROLINA REPUBLICAN
PARTY,

    Plaintiffs,

v.

NORTH CAROLINA STATE BOARD OF
ELECTIONS, et al.,

    Defendants.

ORDER

This matter comes before the court on the North Carolina State Conference of the NAACP ("North Carolina NAACP"), Jackson Sailor Jones, and Bertha Leverette's ("Proposed Intervenors") amended motion to intervene [19] and motion to expedite [DE 21]. For good cause shown, the motion to expedite is granted. For the reasons that follow, the motion to intervene is denied.

**I. Case History**

Plaintiffs initiated this action in North Carolina state court on August 23, 2024. *See* DE 1-3 at 23. The Complaint contends that Defendants violated state law that requires the North Carolina State Board of Elections ("NCSBE") to comply with Section 303 of the Help America Vote Act ("HAVA"). *Id.* at 3, 10-11, 18-19; N.C.G.S. § 163-82.11(c). That provision of HAVA obligates states to collect, in connection with a voter's registration, either the applicant's driver's license number or the last 4 digits of the applicant's social security number (or an affirmation that

1

the applicant has neither). 52 U.S.C. § 21083(a)(5)(A). Defendant's alleged noncompliance with HAVA has resulted in "NCSBE accept[ing] hundreds of thousands of voter registration applications without applying the HAVA identifying information requirement." DE 1-3 at 11. Plaintiffs seek a court order that Defendants remedy their prior noncompliance with HAVA, including by either removing any ineligible voters from voter registration lists or by requiring registered voters who did not provide HAVA identification information at the time of their application to cast a provisional ballot. *Id.* at 20-21.

While this action was pending in state court, the Democratic National Committee ("DNC") moved to intervene. DE 1-16 at 2. That motion was granted on September 10. DE 1-18 at 3. Approximately two weeks later, Defendants removed the action to this court. DE 1 at 1-3. Proposed Intervenors now seek to intervene as of right, or alternatively, with the court's permission. DE 19.

## II. Legal Standards

"On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Fourth Circuit "has interpreted Rule 24(a)(2) to entitle an applicant to intervention of right if the applicant can demonstrate: (1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *Teague v. Bakker*, 931 F.2d 259, 260–61 (4th Cir. 1991); *see also North Carolina State Conf. of NAACP v. Berger*, 970 F.3d 489, 502 (4th Cir. 2020) ("There are three requirements for intervention as of right.").

2

"Proposed Intervenors bear the burden of demonstrating to the Court that they have a right to intervene." *North Carolina All. for Retired Americans v. Hirsch*, No. 1:23-CV-837, 2023 WL 9422596, at *1 (M.D.N.C. Dec. 15, 2023), *recommendation adopted*, No. 1:23-CV-837, 2024 WL 308513 (M.D.N.C. Jan. 26, 2024).

As to the first factor, although Rule 24 "speaks in general terms . . . "[w]hat is obviously meant there is a significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971); *cf. Diamond v. Charles*, 476 U.S. 54, 66 (1986) ("Article III requires more than a desire to vindicate value interests."). In other words, the movant must "stand to gain or lose by the direct legal operation of the district court's judgment." *Teague*, 931 F.2d at 261. An "interest" shared by all members of an electorate is not "sufficient[ly particularized] to meet the requirements of Rule 24(a)." *League of Women Voters of Virginia v. Virginia State Bd. of Elections*, 458 F. Supp. 3d 460, 466 (W.D. Va. 2020).

As to the second factor, "[t]he focus . . . is on whether the proposed intervenor would suffer a 'practical disadvantage or impediment' if not permitted to intervene." *North Carolina NAACP*, 970 F.3d at 504 (quoting *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 121 (4th Cir. 1981)). This broad language encompasses more than legal disadvantages "in the *res judicata* sense." *Francis v. Chamber of Com. of U. S.*, 481 F.2d 192, 195 n.8 (4th Cir. 1973) (discussing intent of 1966 amendment to Rule 24 "to liberalize the right to intervene in federal actions") (italics in original). If a third party satisfies the first factor of Rule 24(a), it often follows that participation as a party is necessary to protect that interest. *See Nuesse v. Camp*, 385 F.2d 694, 704 n.10 (D.C. Cir. 1967) (observing that "relegat[ion] to the status of amicus curiae . . . is not an adequate substitute for participation as a party").

3

Lastly, a movant must show "that the present litigants fail adequately to represent their interests." *Teague*, 931 F.2d at 262. This showing may entail different burdens depending on the circumstances. Generally, the burden "should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). But "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented." *Commonwealth of Va. v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976); *see also Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179, 197 (2022) ("this presumption applies only when interests overlap fully") (internal brackets and quotation mark omitted). When a movant and party share the same objective, "the [movant] must demonstrate adversity of interest, collusion, or nonfeasance." *Westinghouse*, 542 F.2d at 216. Further, when the movant shares the same objective as a government party, "a more exacting showing of inadequacy should be required." *Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013).

## III. Analysis

Proposed Intervenors have a protectable interest in this action, the protection of which would be practically impeded by disposition of the action. But Defendants and the DNC adequately represent Proposed Intervenors' interests, compelling denial of the motion to intervene.

First, Proposed Intervenors have "a significantly protectable interest" in this action. *Donaldson*, 400 U.S. at 531. "[V]oting is of the most fundamental significance under our constitutional structure." *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979). The North Carolina NAACP includes members who registered to vote without providing their driver's license number or the last 4 digits of their social security number, and the individual Proposed Intervenors "are on the list of registrations in North Carolina lacking either a Social Security Number or driver's license number in their voter file." DE 19-2 at 5; DE 19-3 at

4

3; DE 19-4 at 3. They thus "stand to gain or lose by the direct legal operation of the district court's judgment." *Teague*, 931 F.2d at 261.

Next, Proposed Intervenors' fundamental interest in voting would be practically impeded by disposition of this action. *See North Carolina NAACP*, 970 F.3d at 504. If Plaintiffs prevail, North Carolina NAACP members or the individual Proposed Intervenors may be removed from voter registration lists or required to cast provisional ballots. *See* DE 1-3 at 20-21. Mere weeks before the 2024 election, that sort of practical impediment satisfies the second factor of Rule 24(a). *See Teague*, 931 F.2d at 261.

However, Proposed Intervenors have not shown that "existing parties" do not "adequately represent th[eir] interest." Fed. R. Civ. P. 24(a)(2). As an initial matter, the court finds that Proposed Intervenors have "the same ultimate objective" as Defendants and the DNC: protecting the right to vote for all eligible North Carolina voters. This objective is imposed on Defendants as a matter of law. 52 U.S.C. § 20507(a)(1) ("In the administration of voter registration for elections for Federal office, each State shall . . . ensure that any eligible applicant is registered to vote in an election"); 52 U.S.C. § 21083(a)(4)(B) ("The State election system shall include . . . "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters."); *Green v. Bell*, No. 3:21-CV-00493, 2023 WL 2572210, at *6 (W.D.N.C. Mar. 20, 2023) (denying intervention based on finding that Defendant Karen Bell could adequately represent interests of proposed intervenors because she is "authorized to further and protect the interest that North Carolina voters have in the enforcement of" federal election law). And the DNC has stated its objective as protecting the right to vote not just for registered Democrats, but rather "the broad coalition of Democrats, Republicans, independents, and third-party voters who intend to cast votes for Democratic candidates this fall." DE 1-16 at 3. Just because Defendants may have additional

5

objectives (such as the orderly administration of elections) or because the DNC's interest may be particularly acute for some registered voters (such as those the DNC suspects will vote for Democrat candidates), does not mean that the existing parties' interests do not "overlap fully" with the interest of Proposed Intervenors in remaining on the voter registration list for the 2024 election. *Berger*, 597 U.S. at 197.

Given the overlap of objectives, "a presumption arises that" Proposed Intervenors' "interests are adequately represented." *Westinghouse*, 542 F.2d at 216. They therefore "must demonstrate adversity of interest, collusion, or nonfeasance." *Id.* The court need not impose *Stuart's* "more exacting showing of inadequacy," *Stuart*, 706 F.3d at 351, because here, Proposed Intervenors have not even made a "minimal" showing, *Trbovich*, 404 U.S. at 538 n.10.

Proposed Intervenors contend that they "have a personal and unique interest in the outcome of this litigation," whereas Defendants "have a larger obligation to all constituents that may not align with the vulnerable 225,000 voters whose voting rights are at stake." DE 20 at 9-10. But the same could be said in any case where an individual seeks intervention and the government is a party. As noted, Defendants are obligated by law to ensure that eligible voters retain the ability to cast their votes in forthcoming elections. 52 U.S.C. § 20507(a)(1); 52 U.S.C. § 21083(a)(4)(B). Their obligation thus necessarily embraces the interests of Proposed Intervenors, who are among the constituents whose right to vote Defendants must protect. *See Stuart*, 706 F.3d at 351 ("In matters of public law litigation that may affect great numbers of citizens, it is the government's basic duty to represent the public interest.").

Proposed Intervenors further assert that the DNC's interests are not "sufficient to cover those of Proposed Intervenors" because the DNC represents "Democratic voters and candidates" whereas Proposed Intervenors represent "all potentially impacted voters regardless of their partisan

6

affiliation." DE 20 at 10. But the DNC has described its objective much more broadly. *See* DE 1-16 at 3. And as a practical matter, the court cannot conceive of a scenario where the DNC's interest in protecting the right to vote for a "broad coalition of Democrats, Republicans, independents, and third-party voters who intend to cast votes for Democratic candidates," *id.*, would diverge from that of Proposed Intervenors. Proposed Intervenors' generalized assertion to the contrary cannot overcome even a minimal burden. *See Trbovich*, 404 U.S. at 538 n.10.

In sum, the DNC and Proposed Intervenors are aligned: both groups want to protect the right to vote of all eligible and registered North Carolinians. Defendants are obligated to do the same. Accordingly, existing parties adequately represent Proposed Intervenors' interests; they all share an ultimate objective and there has been no suggestion of "adversity of interest, collusion, or nonfeasance." *Westinghouse*, 542 F.2d at 216. Proposed Intervenors have not established a right to intervention. Fed. R. Civ. P. 24(a)(2).

The court has also considered whether permissive intervention is appropriate. A court retains discretion to grant a timely motion for permissive intervention where the movants' "claims or defenses have a question of law or fact in common with the main action" and where "intervention will not result in undue delay or prejudice to the existing parties." *League of Women Voters of Virginia*, 458 F. Supp. 3d at 466; Fed. R. Civ. P. 24(b)(1)(B) & (b)(3). The court finds that permissive intervention is not warranted here because intervention "would necessarily complicate the discovery process and consume additional resources of the court and the parties." *Stuart*, 706 F.3d at 355. Because Defendants' and the DNC's interests overlap with those of Proposed Intervenors, "intervention is 'likely only to result in duplicative briefing.'" *Green*, 2023 WL 2572210, at *7 (quoting *Ohio Valley Env't Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 31 (S.D.W.

7

Va. 2015)). The resulting strain on limited judicial resources would result in undue delay for the parties. Fed. R. Civ. P. 24(b)(3).

Further, granting intervention under the circumstances would "open the floodgates on this lawsuit to any voter in the state" who registered to vote without providing their driver's license number or the last 4 digits of their social security number. *League of Women Voters of Virginia*, 458 F. Supp. 3d at 466. Based on Plaintiffs' allegation that that number may run into the "hundreds of thousands," DE 1-3 at 11, this court is disinclined to "convert[] this lawsuit into a public forum," *League of Women Voters of Virginia*, 458 F. Supp. 3d at 466, particularly with only weeks until the election. The court declines to grant permissive intervention.

## IV. Conclusion

Proposed Intervenors' motion to expedite [DE 21] is GRANTED and their motion to intervene [DE 19] is DENIED.

SO ORDERED this 30th day of September, 2024.

Richard E Myers II
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

8