UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-cv-547

REPUBLICAN NATIONAL COMMITTEE; and )
NORTH CAROLINA REPUBLICAN PARTY, )
                                        )
              Plaintiffs, )
v. )
                                          )
NORTH CAROLINA STATE BOARD OF )
ELECTIONS; KAREN BRINSON BELL, in )
her official capacity as Executive Director of )
the North Carolina State Board of Elections; )
ALAN HIRSCH, in his official capacity as )
Chair of the North Carolina State Board )     **DEFENDANTS' MEMORANDUM**
of Elections; JEFF CARMON, in his official )     **OF LAW IN SUPPORT OF THEIR**
capacity as Secretary of the North Carolina )         **MOTION TO DISMISS**
State Board of Elections; STACY EGGERS )
IV, KEVIN N. LEWIS, and SIOBHAN )
O'DUFFY MILLEN, in their official capacities )
as members of the North Carolina State Board )
of Elections, )
                                          )
              Defendants, )
                                          )
and )
                                          )
THE DEMOCRATIC NATIONAL COMMITTEE, )
                                          )
            Intervenor-Defendant. )

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ....................................................................................... 1

STATEMENT OF FACTS ........................................................................... 2

    A.  HAVA and North Carolina state law establish rules for voter registration, voter identification, and voter-list maintenance........................................... 2

    B.  The National Voter Registration Act forbids the systematic removal of ineligible voters within 90 days of an election. .............................................. 4

    C.  A voter challenges the State's registration form. ........................................ 5

    D.  Fewer than 90 Days before the 2024 general election, Plaintiffs sue. .......................... 6

ARGUMENT ............................................................................................... 7

  I.  Legal Standard ............................................................................... 7

  II.  Plaintiffs' Claims Are Independently Barred by Laches. ................................. 7

  III. Plaintiffs Have Failed to State a Claim for Which Relief Can Be Granted. ..................... 10

    A.  Plaintiffs have failed to state a claim for mandamus relief........................................ 11

        1.  Plaintiffs have no clear right to the remedies they ask the Court to impose. ........................................................................................... 11

        2.  The State Board Defendants have no "clear duty" to provide Plaintiffs' chosen remedies. ........................................................................... 13

        3.  Plaintiffs have an alternative route to relief. ..................................... 15

    B.  Plaintiffs have failed to state a claim under the North Carolina Constitution. ........... 16

CONCLUSION........................................................................................... 20

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(f)(3) ...................................... 22

CERTIFICATE OF SERVICE ...................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Arcia v. Fla. Sec'y of State*,
    772 F.3d 1335 (11th Cir. 2014) ............................................................................. 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... 7, 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 7

*Blankenship v. Bartlett*,
    363 N.C. 518, 681 S.E. 759 (2009) ...................................................................... 16

*Bost v. Ill. State Bd. of Elections*,
    684 F. Supp. 3d 720 (N.D. Ill. 2023) .................................................................... 19

*Bowyer v. Ducey*,
    506 F. Supp. 3d 699 (D. Ariz. 2020) .................................................................... 19

*Clements v. Fashing*,
    457 U.S. 957 (1982) ......................................................................................... 9

*Cumberland Cnty. Hosp. Sys., Inc. v. Burwell*,
    816 F.3d 48 (4th Cir. 2016) ............................................................................... 11

*Democratic Nat'l Comm. v. Wisc. State Legislature*,
    141 S. Ct. 28 (2020) ...................................................................................... 8, 10

*Donald J. Trump for President v. Boockvar*,
    493 F. Supp. 3d 331 (W.D. Pa. 2020) .................................................................. 19

*EEOC v. Propak Logistics, Inc.*,
    746 F.3d 145 (4th Cir. 2014) ............................................................................... 7

*Election Integrity Project Cal., Inc. v. Weber*,
    113 F.4th 1072 (9th Cir. 2024) ........................................................................... 20

*Election Integrity Project Cal., Inc. v. Weber*,
    No. 2:21-cv-32, 2023 WL 5357722 (C.D. Cal. July 18, 2023) ............................... 19

*First Fed. Sav. & Loan Ass'n v. Baker*,
    860 F.2d 135 (4th Cir. 1988) ........................................................ 2, 11, 13, 15, 16

*Francis v. Giacomelli*,
    588 F.3d 186 (4th Cir. 2009) ......................................................................... 17, 19

Case 5:24-cv-00547-M-RJ   Document 31   Filed 09/30/24   Page 3 of 28

*Giarratano v. Johnson*,
    521 F.3d 298 (4th Cir. 2008) ..................................................................... 7

*Giddens v. Isbrandtsen Co.*,
    355 F.2d 125 (4th Cir. 1966) ..................................................................... 8

*In re T.H.T.*,
    362 N.C. 446, 665 S.E.2d 54 (2008) ........................................................ 11

*Langford v. Joyner*,
    62 F.4th 122 (4th Cir. 2023) ..................................................................... 17

*N.C. State Conf. NAACP v. Bipartisan Bd. of Elections & Ethics Enf't*,
    No. 1:16-cv-1274, 2018 WL 3748172 (M.D.N.C. Aug. 7, 2018) ............ 13

*Perry v. Judd*,
    471 F. App'x 219 (4th Cir. 2012) ........................................................... 8, 9

*Pierce v. N.C. State Bd. of Elections*,
    97 F.4th 194 (4th Cir. 2024) ..................................................................... 8

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) ..................................................................................... 10

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
    589 U.S. 423 (2020) ................................................................................. 10

*Smith v. Virginia*,
    No. 3:08-cv-800, 2009 WL 2175759 (E.D. Va. July 15, 2009) ............. 18

*United States ex rel. Rahman v. Oncology Assocs., P.C.*,
    198 F.3d 502 (4th Cir. 1999) ................................................................... 15

*Voters Organized for the Integrity of Elections v. Balt. City Elections Bd.*,
    214 F. Supp. 3d 448 (D. Md. 2016) .......................................................... 7

*White v. Daniel*,
    909 F.2d 99 (4th Cir. 1990) .................................................................... 7, 9

**Federal Statutes**

52 U.S.C. § 20501 ............................................................................................ 4, 5

52 U.S.C. § 20507 .......................................................................................... 5, 13

52 U.S.C. § 21083 ...................................................................................... *passim*

52 U.S.C. § 21112 ............................................................................................. 15

**State Statutes**

N.C. Gen. Stat. § 163-82.1 ...................................................................................... 3, 14

N.C. Gen. Stat. § 163-82.11 ....................................................................................... *passim*

N.C. Gen. Stat. § 163-82.14 ...................................................................................... 3, 4, 14

N.C. Gen. Stat. § 163-166.12 ............................................................... 4, 12, 14, 15, 18

N.C. Gen. Stat. § 163-166.16 .................................................................................. 4, 15

N.C. Gen. Stat. § 163-166.40 .................................................................................. 4, 15

N.C. Gen. Stat. § 163-230.1 .................................................................................... 4, 15

**Constitutional Provision**

N.C. Const., Art. I, § 19 ......................................................................................... 6, 16

**Regulation**

69 Fed. Reg. 14,844 .................................................................................................. 16

**Rule**

Fed. R. Civ. P. 12 ....................................................................................................... 7

**Other Authority**

Press Release, *NC Election Officials Removed Nearly 750,00 Ineligible Registrants Since Start of 2023*, N.C. State Bd. of Elections (updated Sept. 27, 2024) ......................................... 5

# INTRODUCTION

Voting in North Carolina began ten days ago, on September 20, 2024, when ballots were transmitted to uniformed and overseas civilian voters. Amid this ongoing voting, the Republican National Committee and North Carolina Republican Party ask this Court to order the State Board to remove en masse hundreds of thousands of voters from North Carolina's voter rolls. Plaintiffs allege that these voters registered using an erroneous voter registration form that, contrary to the demands of the Help America Vote Act of 2002 ("HAVA"), did not clearly require registrants to provide their driver's license or social security number. Plaintiffs contend that unless the State Board removes these voters now—in the middle of a general election—illegal voting will proliferate and the results of the State's election will be cast into doubt. This Court should forcefully reject Plaintiffs' allegations and dismiss this suit in its entirety.

As an initial matter, Plaintiffs' suit is barred by laches. Plaintiffs concede that they have been aware of the alleged defect in the State Board's registration form since at least October 2023. Yet they waited ten months to bring this lawsuit—until voting was about to begin. Because Plaintiffs failed to diligently pursue their claims, and because Plaintiffs' delay will cause the State Board—and North Carolina voters—significant prejudice, laches provides an independent reason to dismiss this case.

Plaintiffs' claims should alternatively be dismissed for failure to state a claim. Plaintiffs' complaint purports to raise two claims: one for a writ of mandamus and the other for a violation of Article I, § 19 of the North Carolina Constitution. But the threadbare allegations included in Plaintiffs' complaint are insufficient to state either of these claims.

First, Plaintiffs have failed to state a claim for mandamus relief. Such relief is available "only where three elements co-exist: (1) the petitioner has shown a clear right to the relief sought; (2) the respondent has a clear duty to do the particular act requested by the petitioner;

and (3) no other adequate remedy is available." *First Fed. Sav. & Loan Ass'n v. Baker*, 860 F.2d 135, 138 (4th Cir. 1988). Plaintiffs cannot satisfy *any* of these three requirements.

Second, Plaintiffs have failed to state a constitutional claim. Though Plaintiffs decline to articulate a clear constitutional theory, their allegations seem to gesture at an equal-protection claim. According to Plaintiffs, the fact that certain voters were able to register without providing a driver's license or social security number is likely to give rise to voter fraud and, thus, to dilute the votes of lawful voters. This claim fails. To state a cognizable equal-protection claim grounded in vote dilution, plaintiffs must allege that their votes have been weighted differently than others'. Plaintiffs make no such allegations. And the allegations that they do make are conclusory and wholly unsupported. Plaintiffs cannot survive a motion to dismiss merely by crying voter fraud, without any coherent theory as to how such fraud might transpire.

The State Board Defendants have no higher priority than ensuring the State's elections are administered in a manner that engenders the trust of all North Carolinians. This lawsuit—and the meritless claims it advances—needlessly undermines that trust. This Court should dismiss Plaintiffs' claims with prejudice.

## STATEMENT OF FACTS

### A. HAVA and North Carolina state law establish rules for voter registration, voter identification, and voter-list maintenance.

Section 303 of HAVA tasks the "chief State election official" in each State with "implement[ing], in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1)(A). State elections officials are then required to "perform list maintenance . . . on a regular basis." *Id.* § 21083(a)(2)(A). Voters may be removed, among other reasons, based on "felony status" or because they have died. *Id.* Any removals that occur, however, must happen

2

"in accordance with the provisions of the National Voter Registration Act of 1993." *Id.*

§ 21083(a)(2)(A)(i). And list maintenance "shall be conducted in a manner that ensures that . . .

the name of each registered voter appears in the computerized list [and] only voters who are not

registered or who are not eligible to vote are removed." *Id.* § 21083(a)(2)(B).

State law in North Carolina reiterates these requirements, N.C. Gen. Stat. § 163-82.14,

and underscores that the State Board must "update the statewide computerized voter registration

list and database to meet the requirements of section 303(a)" of HAVA, *id.* § 163-82.11(c).

Consistent with HAVA, North Carolina law permits the removal of registered voters only in

certain limited circumstances: (1) when the registrant requests, in writing, to the county board of

elections to be removed; (2) when the registrant becomes disqualified through death, conviction

of a felony, or removal out of the county; or (3) when the county board of elections determines,

through a separate statutory process, that it can no longer confirm where the voter resides. *Id.*

§ 163-82.1(c).

HAVA also instructs States to gather certain identification information from individuals

as part of the voter registration process. *E.g.*, 52 U.S.C. § 21083(a)(4)(A), (a)(5)(A). For

instance, States are not to "accept[ ] or process[ ]" a voter-registration application "unless the

application includes" either an applicant's driver's license number or the last four digits of her

social security number. *Id.* § 21083(a)(5)(A)(i). If an applicant does not have a driver's license or

social security number, States must assign the applicant an identification number. *Id.*

§ 21083(a)(5)(A)(ii).

Separately, HAVA imposes certain requirements on voters who register by mail the first

time they show up to vote in a federal election. Before those individuals can cast a ballot,

whether by mail or in person, they must provide either "current and valid photo identification" or

an official document like a bank statement that verifies the voter's name and address. *Id.* § 21083(b)(2)(A)(i)-(ii); *see also* N.C. Gen Stat. § 163-166.12 (reiterating the same requirements under state law). Voters who include a driver's license or social security number on their registration application are exempt from this requirement, so long as the State is able to validate the number provided. 52 U.S.C. § 21083(b)(3)(B); N.C. Gen. Stat. § 163-166.12(f).

Starting with the 2023 municipal elections, North Carolina has imposed one further identification requirement on voters who seek to cast a ballot. Under state law, North Carolinians are required to present current and valid photo identification before they can vote. N.C. Gen. Stat. §§ 163-166.16, 163-166.40(c)(3), 163-230.1(f1). One such acceptable photo ID is a North Carolina driver's license, but voters can also use passports, student ID cards, or military ID cards, among others. *Id.* § 163-166.16(a). If voters do not present a valid photo ID when voting, they may "cast a provisional ballot that is counted only if the registered voter brings an acceptable form of photograph identification" to the county board of elections prior to the board's canvass of the votes. N.C. Gen. Stat. § 163-166.16(c).

**B.     The National Voter Registration Act forbids the systematic removal of ineligible voters within 90 days of an election.**

As mentioned above, both HAVA and state law require any list maintenance that North Carolina conducts be performed in accordance with the National Voter Registration Act ("NVRA"). 52 U.S.C. § 21083(a)(2)(A)(i); N.C. Gen. Stat. § 163-82.14(a1). The NVRA was enacted "to establish procedures that will increase the number of eligible citizens who register to vote," to "enhance[ ] the participation of eligible citizens as voters," "to protect the integrity of the electoral process," and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). In enacting the NVRA, Congress found that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter

participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." *Id.* § 20501(a)(3).

Consistent with these objectives, the NVRA provides for the removal of ineligible voters from the rolls but demands that any systematic removals be completed "not later than 90 days prior to the date of a primary or general election for Federal office." *Id.* § 20507(c)(2)(A). Voters may be removed beyond this time limit only in limited circumstances: if the registrant requests to be removed, if State law requires removal due to "criminal conviction or mental incapacity," if the registrant dies, or to correct a registration record. *Id.* § 20501(a)(3)(A); -(a)(3)(B); -(a)(4)(A); -(c)(2)(B). In keeping with its obligations under the NVRA, the State Board has systematically removed nearly 750,000 ineligible registrants since January 2023. *See* Press Release, *NC Election Officials Removed Nearly 750,00 Ineligible Registrants Since Start of 2023*, N.C. State Bd. of Elections (updated Sept. 27, 2024), *available at* https://www.ncsbe.gov/news/press-releases/2024/09/26/nc-election-officials-removed-nearly-750000-ineligible-registrants-start-2023.

### C.      A voter challenges the State's registration form.

For nearly two decades, the State Board used a voter-registration form that did not make clear that a voter's driver's license or social security numbers was required information under HAVA. Compl. (D.E. 1-3) ¶ 50. Plaintiffs allege that, over that time period, 225,000 applicants did not provide this information when they submitted their registration form. Compl. ¶ 52.

This potential discrepancy between the state form and federal law was raised in a complaint filed with the Board by Carol Snow on October 6, 2023. The Board considered the complaint at its November 28, 2023 meeting. Compl. ¶¶ 48-49, 51. On December 6, 2023, the Board ordered that the form be changed to indicate that voters must provide a driver's license or

social security number or check a box indicating that they do not have such numbers. Compl. ¶¶ 42, 50, 51, 54.

Ms. Snow was unsatisfied with these corrective actions and submitted additional complaints to the Board on March 11, 2024, and April 11, 2024, respectively. Compl. ¶ 56. The Board granted no further remedies. *Id.*

### D. Fewer than 90 Days before the 2024 general election, Plaintiffs sue.

Plaintiffs then waited to bring this suit until August 23, 2024—nearly a year after Ms. Snow first raised her concerns about the voter-registration form. The NVRA deadline for the systematic removal of voters was August 7, 2024, and voting began in North Carolina on September 20, when ballots were transmitted to uniformed and overseas civilian voters. Compl. ¶¶ 51, 54, 56.

Plaintiffs' suit alleges that the Board violated HAVA when it registered voters without their driver's license or social security numbers, and their complaint expressly identifies claims under N.C. Gen. Stat. § 163-82.11(c) and Article I, § 19 of the North Carolina Constitution. To redress these claims, Plaintiffs demand a writ of mandamus and mandatory injunction "ordering Defendants to develop, implement, and enforce practices and policies to ensure compliance with HAVA and, in turn, N.C. Gen. Stat. § 163-82.11(c)." Prayer for Relief ¶ 1. Plaintiffs further ask that the Court "[d]irect Defendants, under a court-approved plan to be completed no later than September 6, 2024" to "identify[] all ineligible registrants and remov[e] them from the state's voter registration lists." Prayer for Relief ¶ 2. If "such removal is not feasible" before September 6, 2024, Plaintiffs request that the Court direct the State Board to require all individuals who filled out an application form without a driver's license or social security number "to cast a provisional ballot in upcoming elections pending Defendants' receipt and confirmation" of this information. Prayer for Relief ¶ 2.

6

The State Board removed this case from North Carolina Superior Court for Wake County to this Court on September 23, 2024.

## ARGUMENT

### I. Legal Standard

A motion to dismiss under Rule 12(b)(6) should be granted if, accepting all well-pleaded allegations as true, the complaint is not legally and factually sufficient. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). In other words, a complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court need not accept as true a complaint's legal conclusions, elements of a cause of action, or conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### II. Plaintiffs' Claims Are Independently Barred by Laches.

Laches provides an independent basis for dismissing Plaintiffs' suit. *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990); *see also EEOC v. Propak Logistics, Inc.*, 746 F.3d 145, 149 (4th Cir. 2014). Laches bars the claim of a plaintiff (1) who has shown a lack of diligence in bringing its claim when (2) that lack of diligence has prejudiced the defendant. *White*, 909 F.2d at 102. Both of those factors are clearly satisfied here.

First, Plaintiffs were not diligent in bringing this suit. A plaintiff shows a lack of diligence when its filing of the lawsuit is "delayed inexcusably or unreasonably" after it discovered or could have discovered the facts giving rise to suit. *White*, 909 F.2d at 102 (citation omitted). "Diligence in the compressed timeline applicable to elections is measured differently from how it might be measured in other contexts." *Voters Organized for the Integrity of Elections v. Balt. City Elections Bd.*, 214 F. Supp. 3d 448, 454 (D. Md. 2016). Plaintiffs concede that they became aware of the issues with the State's registration form as early as October 2023.

7

Compl. ¶¶ 48, 56. Yet they waited nearly a year to bring suit and finally did so on the eve of an election, at a point when federal law prohibits the Board from taking the corrective action that Plaintiffs demand. *See infra* Part III.A.2.

This kind of gamesmanship is particularly problematic in the context of elections litigation, where candidates or parties may attempt to alter election results by filing belated challenges. In those circumstances, the Fourth Circuit has not hesitated to dismiss claims based on laches. In *Perry v. Judd*, for example, the Fourth Circuit held that a Presidential candidate had unreasonably delayed in bringing suit when he challenged a Virginia ballot-access requirement at the eleventh hour—despite having had four months to do so. 471 F. App'x 219, 224 (4th Cir. 2012). The Fourth Circuit explained that allowing late-filed challenges to election rules "would encourage candidates to wait until the last minute" to file suit, so that a candidate who was disappointed in the outcome "would take his disappointment to the courthouse." *Id.* at 225.

The Supreme Court, too, has cautioned courts not to entertain challenges to election procedures when the plaintiffs have sat on their rights. Indeed, one of the chief aims of the *Purcell* principle—which provides that federal courts should not change election rules close to an election—is to "discourage[] last-minute litigation and instead encourage[] litigants to bring any substantial challenges to election rules ahead of time, in the ordinary litigation process." *Democratic Nat'l Comm. v. Wisc. State Legislature*, 141 S. Ct. 28, 30-31 (2020) (Roberts, J., concurring). Applying the *Purcell* principle, this Court recently affirmed a district court's conclusion that plaintiffs challenging an alleged racial gerrymander unreasonably delayed in bringing their suit when they waited 26 days to challenge a legislatively enacted congressional district plan. *Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 226-27 (4th Cir. 2024).

Plaintiffs' delay here should similarly bar their claims. Plaintiffs offer no explanation for their decision to wait until the eleventh hour to file suit, when they could have done so immediately after Ms. Snow filed her first complaint in late 2023 or, at the latest, after her subsequent complaints this past spring.

Second, Plaintiffs' delay prejudiced the State Board. Though courts have been reluctant to establish any rigid timelines with respect to laches, in general, "the greater the delay, the less the prejudice" a defendant is required to show. *White*, 909 F.2d at 102; *see also Giddens v. Isbrandtsen Co.*, 355 F.2d 125, 126 (4th Cir. 1966) (contrasting "laches" with "rigid limitation" periods). Prejudice "is demonstrated by a disadvantage on the part of the defendant in asserting or establishing a claimed right or some other harm caused by detrimental reliance on the plaintiff's conduct." *White*, 909 F.2d at 102. In the elections context, harm to orderly and uniform operation of elections is a "state interest the Supreme Court has repeatedly credited." *Perry*, 471 F. App'x at 227 (citing *Clements v. Fashing*, 457 U.S. 957, 965 (1982)).

Here, Plaintiffs' delay prejudices the State Board in several ways. First, because Plaintiffs inexplicably waited to file suit until shortly before the election, if Plaintiffs were to prevail, the State Board would be forced to violate the NVRA. *See infra* Part III.A.2.s

Additionally, Plaintiffs' suit threatens the orderly operation of elections, a core responsibility of the Board's. If the Board is indeed compelled to remove hundreds of thousands of voters from the voter rolls amid an ongoing election, the result will be widespread chaos and disenfranchisement. Scores of voters will show up at the polls on Election Day only to learn that—through no fault of their own—they are no longer registered to vote and, thus, that they cannot participate in the election. Other voters may already have submitted absentee ballots, and

the Board will presumably need to spoil those ballots, locate the voters, alert them to their removal from the voter rolls, help them re-register, and then allow them to submit a new ballot.

Plaintiffs' alternative remedy—requiring hundreds of thousands of voters to vote provisionally—is also likely to breed extensive disarray and dysfunction. Voters will be surprised when they show up to vote and, despite being eligible voters and presenting HAVA ID, they are told that they must vote provisionally. Worse still, these voters will not know—right up until the night before canvass—whether their votes have been counted at all. And the State Board and county boards of election will have to manage the Herculean administrative task of processing potentially hundreds of thousands of additional provisional ballots during the canvassing period. This is a recipe to create just what Plaintiffs claim to want to avoid: bringing "the security and validity of the state's elections into question." Compl. ¶ 69.

The Supreme Court has "repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (*per curiam*)). "[R]unning a statewide election is a complicated endeavor," and "[e]ven seemingly innocuous late-in-the-day judicial alterations to state election laws can interfere with administration of an election and cause unanticipated consequences." *Wisc. State Legislature*, 141 S. Ct. 31 (2020) (Kavanaugh, J., concurring). The relief Plaintiffs seek is not just an "innocuous late-in-the-day" alteration—it is the systematic disenfranchisement of hundreds of thousands of North Carolina's voters on the eve of a general election in a Presidential year. This Court should not facilitate that result. Plaintiffs' claim should be dismissed on laches grounds.

### III.   Plaintiffs Have Failed to State a Claim for Which Relief Can Be Granted.

Plaintiffs' complaint alleges two claims. First, Plaintiffs seek a writ of mandamus ordering the State Board to comply with N.C. Gen. Stat. § 163-82.11(c). Compl. ¶¶ 77-88.

Second, Plaintiffs allege that the State Board's refusal to purge over a quarter of a million voters from the State's voter rolls somehow violates their rights under Article I, Section 19 of North Carolina's Constitution. Compl. ¶¶ 89-96. Plaintiffs have not adequately alleged either claim.

### A. Plaintiffs have failed to state a claim for mandamus relief.

Plaintiffs' first claim asks this Court to issue a writ of mandamus to remove, en masse, any voters who were registered without providing a driver's license or social security number or to require those voters "to cast a provisional ballot in upcoming elections pending Defendants' receipt and confirmation of the required HAVA information." Prayer For Relief ¶ 2. Mandamus is a "drastic remedy that must be reserved for extraordinary situations." *Cumberland Cnty. Hosp. Sys., Inc. v. Burwell*, 816 F.3d 48, 52 (4th Cir. 2016). Plaintiffs cannot establish that they are entitled to the extraordinary remedy they seek. Their claim should therefore be dismissed.

A court may enter mandamus "only where three elements co-exist: (1) the petitioner has shown a clear right to the relief sought; (2) the respondent has a clear duty to do the particular act requested by the petitioner; and (3) no other adequate remedy is available." *First Fed. Sav. & Loan Ass'n v. Baker*, 860 F.2d 135, 138 (4th Cir. 1988); *see also In re T.H.T.*, 362 N.C. 446, 453, 665 S.E.2d 54, 59 (2008) (identifying the same elements under state law). Plaintiffs cannot satisfy any of these three elements, much less all three.

### 1. Plaintiffs have no clear right to the remedies they ask the Court to impose.

To start, Plaintiffs lack any "clear right" to the relief they request. Plaintiffs' mandamus claim is based on an alleged violation of N.C. Gen. Stat. § 163-82.11(c), which requires the State Board to "update the statewide computerized voter registration list and database to meet the requirements of section 303(a)" of HAVA. As far as the State Board is aware, no state or federal court has ever recognized a cause of action for violations of that state statute. Indeed, the absence

of any private right of action under this statute is presumably why Plaintiffs have sought to characterize their claim as a petition for mandamus, as opposed to a more straightforward statutory claim. But Plaintiffs cannot manufacture a "clear right" to a sweeping voter purge by creatively repackaging an otherwise unavailable claim.

Moreover, even if Plaintiffs could establish a right to *some* form of relief under § 163-82.11(c), there is no reason to accept that Plaintiffs are entitled to the specific relief they seek. Plaintiffs' complaint demands a writ that would either (a) cancel the registrations of hundreds of thousands of voters or (b) require that any registrants who failed to provide a driver's license or social security number on their registration form cast provisional ballots unless they provide that information. Prayer for Relief ¶¶ 1-2. Plaintiffs have no right to either of these remedies.

Nothing in § 163-82.11(c)—or any other state or federal law, for that matter—suggests that a plaintiff who alleges that voters were erroneously registered because they failed to provide a driver's license or social security number has any right to have those voters removed from the voter rolls. In fact, as discussed below, the mass removal that Plaintiffs demand would violate both state and federal law. *See infra* Part III.A.2.

Nor have Plaintiffs pointed to any law that empowers them to force such voters to cast provisional ballots. Indeed, that particular remedy seems incompatible with N.C. Gen. Stat. § 163-166.12(e). That statute requires only those voters who fail to provide a valid driver's license or social security number on their registration form—and then *also* fail to present a HAVA ID when they show up to cast a ballot—to vote a provisional ballot. *Id.* This provision suggests that the General Assembly could have opted to make all voters who do not include a driver's license or social security number on their registration forms vote a provisional ballot unless and until they provide such a number or certify that they have never been issued one. The

General Assembly made a different choice, and required only voters who fail to comply with HAVA's alternative process for proving their identity to cast provisional ballots. Plaintiffs point to nothing that affords them a "clear right" to alter the legislature's decision and force a wider swath of voters to cast provisional ballots.

### 2. The State Board Defendants have no "clear duty" to provide Plaintiffs' chosen remedies.

Plaintiffs likewise cannot establish that the State Board has any "clear duty" to provide their desired relief. *See First Fed. Sav. & Loan Ass'n*, 860 F.2d at 138. "Mandamus against a public official will not lie unless the alleged duty to act involves a mandatory or ministerial obligation which is so plainly prescribed as to be free of doubt." *Id.* The Board faces no such duty here.

To be sure, Section 163-82.11(c) does obligate the State Board to "update the statewide computerized voter registration list and database to meet" the HAVA requirements. But Plaintiffs can hardly argue that this provision imposes a *clear duty* on the Board to *purge* the voters at the center of this lawsuit. In fact, removing those voters en masse in response to this suit would violate both federal and state law.

The NVRA requires the State Board to carry out any plan to "systematically remove" ineligible voters from the rolls "not later than 90 days prior to the date of a primary or general election." 52 U.S.C. § 20507(c)(2)(A); *see also* N.C. Gen. Stat. § 163-82.14(a1) (requiring all list maintenance efforts in North Carolina to comply with the NVRA). States cannot systematically remove voters fewer than 90 days before an election because that is "when the risk of disenfranchising eligible voters is the greatest." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014); *N.C. State Conf. NAACP v. Bipartisan Bd. of Elections & Ethics Enf't*, No. 1:16-cv-1274, 2018 WL 3748172, at *6 (M.D.N.C. Aug. 7, 2018), This year, the NVRA cutoff

was August 7, more than two weeks before Plaintiffs filed their Complaint. The State Board is therefore forbidden, at this point, from removing the voters that Plaintiffs have identified from the rolls.

In addition, state law also seems to prohibit the removal of registrants that Plaintiffs seek. Section § 163-82.1(c) provides that "[e]very person registered to vote by a county board of elections in accordance with [Article 7A of the General Statutes] *shall remain registered*" unless one of three limited circumstances occurs. (Emphasis added.) These three circumstances are: (1) when the registrant requests, in writing, to the county board of elections to be removed; (2) when the registrant becomes disqualified through death, conviction of a felony, or removal out of the county; or (3) when the county board of elections determines, through a separate statutory process, that it can no longer confirm where the voter resides. N.C. Gen. Stat. § 163-82.1(c). Plaintiffs have not alleged that any of those circumstances is present here. The State Board thus cannot remove the voters at the center of this suit without running headlong into the restrictions set forth in state law.

Importantly, the fact that Plaintiffs cannot compel the State Board to implement a sweeping voter purge does not mean that state law provides no safeguards. There are at least two additional barriers in place to ensure that ineligible voters do not cast a ballot in a North Carolina election. The first is in HAVA itself. Voters who do not provide a driver's license or social security number on their registration application cannot cast a ballot until they provide either "a current and valid photo identification" or "a copy of a current utility bill, bank statement, government check, paycheck or other government document that shows the[ir] name and address." 52 U.S.C. § 21083(b)(2)(A)(i); N.C. Gen. Stat. § 163-166.12(a); *see also* 52 U.S.C. § 21083(b)(2)(A)(ii) (requiring individuals who vote by mail to submit the same forms of ID

with their ballot); N.C. Gen. Stat. § 163-166.12(b) (same). In addition, since the November 2023 municipal elections, North Carolina has also imposed a photo-identification requirement on *all* voters. Under North Carolina law, voters are required to present current and valid photo identification before they can vote. N.C. Gen. Stat. §§ 163-166.16, 163-166.40(c)(3), 163-230.1(f1). These belt-and-suspenders provisions ensure that there is virtually no chance of voter fraud resulting from a voter not providing her driver's license or social security number on her voter registration.

In short, Plaintiffs cannot establish that the State Board has any "clear duty" to provide their desired actions. Indeed, they cannot even establish that implementation of their desired remedies would be consistent with state and federal law. Mandamus is therefore unavailable. *See First Fed. Sav. & Loan Ass'n*, 860 F.2d at 138 (mandamus will lie only if the "alleged duty to act . . . is so plainly prescribed as to be free of doubt"); *Syngenta Crop Prot. Inc. v. EPA*, 444 F. Supp. 2d 435 (M.D.N.C. 2006) (denying a writ of mandamus where federal law did not contemplate that the EPA would cancel approved pesticide registrations if they were submitted without proper notice).

### 3. Plaintiffs have an alternative route to relief.

Finally, because state law affords Plaintiffs an alternative path to relief, mandamus is not available. Where "other adequate means to attain the relief exist," including administrative procedures, "the existence of [those] procedures will preclude the issuance of a writ of mandamus." *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 515 (4th Cir. 1999).

HAVA requires every State to provide an "administrative complaint procedure[ ] to remedy grievances." 52 U.S.C. § 21112. Consistent with that mandate, the State Board has created a detailed administrative scheme for "the resolution of any complaint alleging a violation

of any provision of Title III of HAVA." 69 Fed. Reg. 14,844. These procedures allow "[a]ny person who believes that there is a violation of Title III" of HAVA to file a complaint. *Id.* If the complainant requests one, the State Board must hold a hearing and consider the relevant testimony and evidence. *Id.* Finally, if the Board "determines that a violation has occurred, the Board, acting through the Board or designee, shall provide the appropriate remedy" within 90 days of the complaint being filed. *Id.*

Plaintiffs offer no explanation for their failure to seek relief under this regulatory scheme. Whatever the reason, though, the mere existence of that alternative avenue for relief is fatal to Plaintiffs' effort to secure mandamus.

* * *

Plaintiffs bear the burden of demonstrating that their right to issuance of a mandamus is "clear and indisputable." *First Fed. Sav. & Loan Ass'n*, 860 F.2d at 138. Because Plaintiffs have failed to satisfy a single one of the three requisite elements, their mandamus claim must be dismissed. *Id.*

### B. Plaintiffs have failed to state a claim under the North Carolina Constitution.

Plaintiffs' second claim is difficult to parse, but should also be dismissed. That claim invokes Article I, § 19 of the North Carolina Constitution, which functions, among other things, as the State's analog to the federal Equal Protection Clause. *Blankenship v. Bartlett*, 363 N.C. 518, 522, 681 S.E. 759, 762 (2009) ("[The North Carolina Supreme Court's] analysis of the State Constitution's Equal Protection Clause generally follows the analysis of the Supreme Court of the United State in interpreting the corresponding federal clause."). Plaintiffs make little effort to actually articulate their legal claim under Article I, § 19, alleging only that the Board has "directly interfered with North Carolinian[s'] fundamental right to vote." Compl. ¶ 94. "By allowing potentially ineligible persons to vote in the state's elections and remain on the state's

voter rolls," Plaintiffs say, the Board has "open[ed] the door to potential widespread dilution of legitimate votes." Compl. ¶ 94. These threadbare allegations—which fail even to clarify exactly what Plaintiffs' substantive claim is—should be dismissed on that basis alone. *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). But even if the Court construes Plaintiffs' allegations charitably and reads into them an equal-protection claim, that claim, as pled, cannot survive a motion to dismiss.

Plaintiffs' equal-protection claim (if that is what it is) seems to go as follows: The fact that county boards registered certain voters even though they failed to provide a driver's license or social security number increases the likelihood that the upcoming election will be rife with voter fraud. That voter fraud will mean that the lawful votes cast by Plaintiffs' members are diluted. And that amounts to an equal-protection violation.

Such a claim is not cognizable and must be dismissed. As an initial matter, Plaintiffs' threadbare allegations related to voter fraud are not sufficient to pass muster. A plaintiff must "state a claim to relief *that is plausible on its face*." *Ashcroft*, 556 U.S. at 678 (emphasis added). The plausibility standard is "context-specific" and requires a court "to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

Plaintiffs fall short of this standard. Plaintiffs do not allege knowledge of any *actual* instances of voter fraud due to the State's failure to collect driver's license or social security numbers in the past. Nor do they identify any concrete basis for believing that voter fraud is likely to occur in the future.

Instead, Plaintiffs hypothesize a world in which unqualified voters are able to register without providing a driver's license or social security number and then cast illegal votes. Compl. ¶ 65. But Plaintiffs make no effort to actually connect the dots between a failure to provide these numbers at the time of registration and an increased likelihood of voter fraud. What is more, Plaintiffs ignore entirely the safeguards that state law provides to ensure that voters who fail to provide a driver's license or social security number do not vote illegally. HAVA and its state-law analog make clear that voters who do not provide a valid driver's license or social security number may still lawfully cast a ballot. 52 U.S.C. § 21083(b); N.C. Gen. Stat. § 163-166.12(a), (b), (d), (f). They simply must jump through an additional legal hoop before they can do so: Voters who do not provide a driver's license or social security number on their registration application cannot cast a ballot until they provide either "a current and valid photo identification" or "a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the[ir] name and address." 52 U.S.C. § 21083(b)(2)(A)(i); N.C. Gen. Stat. § 163-166.12(a); *see also* 52 U.S.C. § 21083(b)(2)(A)(ii) (requiring individuals who vote by mail to submit the same forms of ID with their ballot); N.C. Gen. Stat. § 163-166.12(b) (same). This alternative process—which Plaintiffs do not contend that Defendants have failed to follow—prevents voters from casting a ballot without first proving their identity and confirming their eligibility to lawfully vote.

If voters who do not have a driver's license or social security number can lawfully vote— and they plainly can—then Plaintiffs cannot simply point to the fact that North Carolina's voter rolls contain voters who failed to provide that information to support their allegation that illegal votes will be cast in upcoming elections. Without factual allegations explaining how illegal votes will be cast, Plaintiffs are left with nothing more than a "naked assertion" of illegality. *See*

*Francis*, 588 F.3d at 192-93. That naked assertion does not entitle them to relief. *See Smith v. Virginia*, No. 3:08-cv-800, 2009 WL 2175759, at *6 (E.D. Va. July 15, 2009) (dismissing vote-dilution claim as "purely conclusory" because the plaintiff had not identified "any way" in which Virginia's registration system could have violated § 2 of the Voting Rights Act).

The problems with Plaintiffs' equal-protection claim, moreover, go beyond Plaintiffs' failure to advance anything more than conclusory allegations. The claim is also foreclosed by a wealth of case law. Federal courts have routinely rejected equal-protection claims that, like the one here, are grounded in vote dilution. *Bost v. Ill. State Bd. of Elections*, 684 F. Supp. 3d 720, 732-33 (N.D. Ill. 2023); *see also Election Integrity Project Cal., Inc. v. Weber*, No. 2:21-cv-32, 2023 WL 5357722, at *12 (C.D. Cal. July 18, 2023) ("[V]ote dilution claims based on potential or actual voter fraud are noncognizable."); *Donald J. Trump for President v. Boockvar*, 493 F. Supp. 3d 331, 389 (W.D. Pa. 2020); *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 712 (D. Ariz. 2020). An equal-protection claim that relies on vote dilution can prevail only if a plaintiff can show that certain votes have been weighted differently to the disadvantage of an identifiable group. *Bowyer*, 506 F. Supp. 3d at 711 ("[V]ote dilution is a very specific claim that involves votes being weighed differently.").

Plaintiffs' vote-dilution theory does not qualify. Plaintiffs' complaint alleges that ineligible registrants will vote in upcoming elections. But ineligible registrants' casting ballots only increases the pool of voters—it does not result in the votes of certain voters being weighted differently than others. "That's because *any* ballot—whether valid or invalid—will always dilute the electoral power of all other votes in the electoral unit equally, regardless of the voting method a voter chooses to utilize." *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072,

1087 (9th Cir. 2024). Because Plaintiffs fail to allege that their members' votes will be weighted any differently than any other voters' votes, their equal-protection claim is not cognizable.

Plaintiffs' constitutional claim has one final problem: recognizing a claim based on such flimsy allegations of vote dilution would "appear to be limitless." *Id.* at 1087 n.10. "If every allegation of a mistakenly counted ballot were sufficient to state a vote-dilution claim, 'it would transform every violation of state election law into a potential federal equal-protection claim requiring scrutiny of the government's interest in failing to do more to stop the illegal activity.'" *Id.* The Court should not open the floodgates in this manner. Plaintiffs' equal-protection claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' complaint.

This the 30th day of September, 2024.

/s/ Sarah G. Boyce
Sarah G. Boyce
Deputy Attorney General and General Counsel
N.C. State Bar No. 56896
SBoyce@ncdoj.gov

Mary Carla Babb
Special Deputy Attorney General
N.C. State Bar No. 25731
MCBabb@ncdoj.gov

Terence Steed
Special Deputy Attorney General
N.C. State Bar No. 52809
TSteed@ncdoj.gov

South A. Moore
Deputy General Counsel
N.C. State Bar No. 55175
SMoore@ncdoj.gov

North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Phone: 919-716-6900
Fax: 919-716-6758

*Counsel for State Board Defendants*

21

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(f)(3)**

Undersigned counsel certifies that this memorandum of law is in compliance Local Rule

7.2(f)(3) in that the brief, including headings, footnotes, citations, and quotations, contains no

more than 8,400 words as indicated by Word, the program used to prepare the brief.

This the 30th day of September, 2024.

/s/ Sarah G. Boyce
Sarah G. Boyce
Deputy Attorney General and General Counsel

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to the below listed attorneys:

John E. Branch III
Thomas G. Hooper
Baker Donelson Bearman, Caldwell
Berkowitz, PC
2235 Gateway Access Point, Suite 220
Raleigh, NC 27607
(984) 844-7900
jbranch@bakerdonelson.com
thooper@bakerdonelson.com

Phillip J. Strach
Jordan A. Koonts
Nelson Mullins Riley Scarborough LLP
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
(919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com

*Counsel for Plaintiffs*

Jim W. Phillips, Jr.
Shana L. Fulton
William A. Robertson
James W. Whalen
Brooks, Pierce, McLendon, Humphrey & Leonard, LLP
150 Fayetteville Street
1700 Wells Fargo Capitol Center
Raleigh, N.C. 27601
(919) 839-0300
jphillips@brookspierce.com
sfulton@brookspierce.com
wrobertson@brookspierce.com
jwhalen@brookspierce.com

Seth P. Waxman
Daniel Volchok
Christopher E. Babbitt
Gary M. Fox
Joseph M. Meyer
Jane Kessner
Nitisha Baronia
Wilmer Cutler Pickering Hale and Door LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000
seth.waxman@wilmerhale.com
daniel.volchok@wilmerhale.com
christopher.babbitt@wilmerhale.com
gary.fox@wilmerhale.com
jane.kessner@wilmerhale.com
nitisha.baronia@wilmerhale.com
joseph.meyer@wilmerhale.com

*Counsel for Intervenor-Defendant Democratic National Committee*

This the 30th day of September, 2024.

/s/ Sarah G. Boyce
Sarah G. Boyce
Deputy Attorney General and General Counsel