IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-00547-BO

REPUBLICAN NATIONAL
COMMITTEEE; and NORTH CAROLINA
REPUBLICAN PARTY,

                    *Plaintiffs*,

vs.

NORTH CAROLINA STATE BOARD OF
ELECTIONS; KAREN BRINSON BELL,
in her official capacity as Executive
Director of the North Carolina State Board
of Elections; ALAN HIRSCH, in his
official capacity as Chair of the North
Carolina State Board of Elections; JEFF
CARMON, in his official capacity as
Secretary of the North Carolina State Board
of Elections; STACY EGGERS IV, KEVIN
N. LEWIS, and SIOBHAN O'DUFFFY
MILLEN, in their official capacities as
members of the North Carolina State Board
of Elections,

                    *Defendants*,

and

THE DEMOCRATIC NATIONAL
COMMITTEE,

                  *Intervenor-Defendant.*

**MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFFS'
EMERGENCY MOTION TO REMAND
TO STATE COURT AND FOR
EXPEDITED CONSIDERATION OF
THE SAME**

Plaintiffs Republican National Committee ("RNC") and the North Carolina Republican Party ("NCGOP") (collectively, "Plaintiffs") submit this Memorandum of Law in support of their Emergency Motion to Remand to State Court.

## INTRODUCTION

In this case, Plaintiffs filed suit in North Carolina state court against the North Carolina State Board of Elections ("NCSBE") and its members Alan Hirsch, Jeff Carmon, Siobhan Millen, Stacy Eggers IV, and Kevin Lewis in their respective official capacities, and the NCSBE's Executive Director Karen Brinson Bell (collectively "Defendants") seeking a Writ of Mandamus compelling Defendants to fulfill their duties as set forth in N.C. Gen Stat. § 163-82.11 *et seq.* Plaintiffs complaint asserts that Defendants must carry out their to duties—all of which arise under state law—to ensure that only qualified voters are able to vote in the general election in North Carolina this coming November. Due to the nature of the relief requested and the exigent circumstances which exist due to the impending November 2024 election, Plaintiffs request the Court treat this Motion on an expedited basis.[1]

## STATEMENT OF FACTS

Plaintiffs filed their Verified Complaint in Wake County Superior Court on August 23, 2024 wherein Plaintiffs sought a writ of mandamus and a permanent injunction arising from Defendants' violations of state law and the state constitution. (Compl. ¶¶ 77-96). Defendants' counsel accepted service of the Complaint on August 27, 2024. Thereafter, on August 29, 2024 Plaintiffs filed a motion to expedite discovery and served a narrow set of discovery requests upon Defendants concurrently with the motion. Then, on September 23, 2024, Defendants noticed their removal to this Court ("Removal").

---

[1] On October 1, 2024 this Court granted Defendants' Motion requesting expedited briefing regarding their motion to dismiss and in doing so, the Court set expedited briefing deadlines. [Dkt. no. 36]. The Court also noticed a hearing on Defendants' Motion to Dismiss for Thursday, October 17, 2024. As set forth in the accompanying motion, Plaintiffs respectfully request that the resolution of the present motion to remand be treated on the same timeline and with a hearing consolidated for the same date as Defendants' Motion to Dismiss. [Dkt. no. 30]

2

In support of their Removal, Defendants cite several bases—28 U.S.C. §§ 1331, 1441(a), 1443(2), and 1367(a). (Dkt. no. 1, pp. 1-2.). Critically, the Removal claims that Plaintiffs' complaint brings "claims arising under the laws of the United States" and specifically, the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901. (Dkt. no. 1, ¶¶ 1-2). This, Defendants claim, provides the Court with original jurisdiction. *Id.* However, a simple reading of Plaintiffs' Complaint reveals that it is devoid of <u>any</u> causes of action arising under HAVA or any federal law. *See generally* (Compl. at ¶¶ 77-96). The Removal also claims that Plaintiffs' requested relief—i.e., requiring NCSBE to identify all persons who were allowed to register to vote in violation of North Carolina law and working to confirm the identity of those who are eligible voters and remove those who are not—would force Defendants to violate federal law, specifically, 52 U.S.C. §§10101(a)(2) and 20507(c)(2)(A). (Dkt. no. 1, ¶¶ 4-5). Yet again, a plain reading of the Complaint shows that Plaintiffs are not asking for relief which would violate either of these statutes, instead, Plaintiffs seek a uniform system which confirms legitimate voters and removes illegitimate ones. (Compl. at pp. 19-20). Importantly, Plaintiffs request that, to the extent removal is not possible at this date—which the Removal contends it is not—that Defendants be ordered to have such voters vote a provisional ballot pending the confirmation of their status as legitimate voters under applicable law. *Id.* at p. 19 ¶ 2. Thus, Defendants' arguments under 28 U.S.C. §1443(2) are contrary to the face of the Complaint. Due to the foregoing, Plaintiffs file this Motion in order to remand the case to state court so it may resolve these issues of state law.

## **LEGAL STANDARD**

A defendant may remove a state court action to federal court only if the federal court would have been able to exercise original jurisdiction based on the face of the state court complaint. 28

U.S.C. § 1441(a). If, at any time, it appears that a federal court lacks subject matter jurisdiction, it must remand the case to the state court. 28 U.S.C. § 1447(c).

In order for a federal court to exercise federal question jurisdiction, the action must arise under "the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A "suit arises under the law that creates the cause of action." *American Well Works v. Layne*, 241 U.S. 257, 260 (1916). The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly-pleaded complaint. The rule makes the plaintiff the master of the claim." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (internal citation omitted). Indeed, a plaintiff may avoid federal jurisdiction "by exclusive reliance on state law." *Id.* In this case, Plaintiffs seek to compel Defendants to perform their duties as required exclusively by the laws of the State of North Carolina. Their claims arise under state statutes and the State Constitution. Defendants must not be allowed to usurp plaintiffs' role as master of their claim by misconstruing the action as one that arises under the laws of the United States.

## **ARGUMENT**

The face of Plaintiffs' complaint raises no federal question—both claims for relief expressly arise under state law. Whether a plaintiff's claim arises under federal law as opposed to state law is determined by the application of the well-pleaded complaint rule which requires that a court "ordinarily . . . look no further than the plaintiff's [properly pleaded] complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005) (quoting *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir. 1996) (alteration in original). However, federal-question jurisdiction can sometimes exist in a small group of otherwise state law "cases in

4

which a well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, in that federal law is a necessary element of one of the well-pleaded . . . claims." *Id.* (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988)). Under the substantial federal question doctrine, the burden lies on the defendant to establish "(1) that the plaintiff's right to relief necessarily depends on a question of federal law, and (2) that the question of federal law is substantial." *Id.* (quoting *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004). Here, Defendants have not established either of the two necessary elements to satisfy the substantial federal question inquiry.

1. **<u>Defendants fail to establish that plaintiffs' claim for relief necessarily depends on a question of federal law.</u>**

"A plaintiff's right to relief necessarily depends on a question of federal law when 'it appears that some . . . disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Id.* (quoting *Franchise Tax Bd. of Cal. V. Constr. Laborer's Vacation Trust*, 463 U.S. 1, 8 (1983). In their Notice of Removal, Defendants assert that Plaintiffs bring claims arising under the laws of the United States and claims for relief which would violate federal law. (Dkt. no. 1. ¶¶ 2–6). However, they fail to point to any section of the Complaint in which Plaintiffs raise a disputed question of federal law. Indeed, the face of Plaintiffs' Complaint raises no federal questions, as all of the claims expressly arise under state law. North Carolina General Statute § 163-82.11 establishes that Defendants are required to maintain accurate and updated statewide voter registration lists ("voter rolls"). Part of that state mandate for accuracy includes compliance with the requirements of Section 303 of the Help America Vote Act ("HAVA"). *Id.* at § 163-82.11(c) ("The State Board of Elections shall update the statewide voter registration list and database to meet the requirements of section 303(a) of [HAVA].") But there is no dispute about

compliance with federal law. The NCSBE admitted in a 2023 meeting[2] and subsequent Order[3] that it did not, until 2023 comply with then existing federal law. Even if Plaintiffs had referenced this point about federal law in their Complaint, it would not change the analysis because the federal law is nothing but a reference point—the Defendants' lack of compliance with HAVA has already been admitted elsewhere. Plaintiffs do not dispute the meaning of the Section 303(a) of HAVA in their complaint, and the record reflects that Defendants do not dispute that they failed to comply with HAVA. Plaintiffs' first assertion is that a straightforward application of whether admitted noncompliance with law gives rise to a claim for relief under North Carolina's General Statutes that its voter rolls are indeed incorrect.

Furthermore, Plaintiffs' second claim for relief arises under Article I, Section 19 of the North Carolina State Constitution which protects North Carolinians' fundamental right to vote. (Compl. ¶¶ 89–96). Similar to the statutory argument above, no one disputes the meaning of Section 303(a) of HAVA. Instead, Plaintiffs point out that NCBE's actions are noncompliant with HAVA based on a straightforward application of the statute as well as the undisputed fact of noncompliance with the plain language of HAVA, and question under whether those facts give rise to a complaint under the North Carolina Constitution. Additionally, the remedy provisions of HAVA itself—52 U.S.C. §§ 21111-21112—are silent on what to do if a state admits it violated HAVA but refuses to remedy the violation. Because HAVA is silent on the matter, Plaintiffs are entitled to seek a relief in state court arising from Defendants' violations of state law. In sum,

---

[2] Meeting documents and a recording of NCSBE's November 28, 2023 meeting is available here: dl.ncsbe.gov/?prefix=State_Board_Meeting_Docs/2023-11-28/
[3] The December 6, 2023 Order from NCSBE is available here: https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/Orders/Other/2023%20HAVA%20Complaint%20-%20Snow.pdf

Defendants wholly fail to establish that a "*disputed* question of federal law is a necessary element" of Plaintiffs' claims under state law.

Similarly, Plaintiffs' claims for relief would not result in any violation of federal law for the simple reason that, as established above, Plaintiffs seek a uniform system applicable to all persons registered to vote under NCSBE's improper registration form and, to the extent removal is not possible prior to the November election, then Plaintiffs ask those persons to be required to vote a provisional ballot subject to confirmation of their eligibility to vote. (Compl. pp. 19-20). Thus, the face of Plaintiffs' Complaint defeats Defendants arguments from the outset.

2. **Defendants fail to establish that the question of federal law is substantial.**

Even assuming *arguendo* that Plaintiffs' right to relief does necessarily depend on a question of federal law, Defendants have failed to establish the second element of the inquiry, namely, that the question of federal law is substantial. The central consideration for what makes a question substantial for the purposes of federal-question jurisdiction is that the issue is "'important[t] . . . to the federal system as a whole,' and not just to the 'particular parties in the immediate suit." *Burrell v. Bayer Corp.*, 918 F.3d 372, (4th Cir. 2019) (quoting *Gunn v. Minton*, 568 U.S. 251, 260 (2013)). "[T]here is a high bar for treating a federal issue as sufficiently 'substantial' under the . . . § 1331 analysis. *Id.* at 385. Indeed, "any doubt" as to substantiality is to be resolved against Defendants as they "bear[ ] the burden of establishing jurisdiction, especially given the significant federalism implications of removing a state-law action from state court." *Id.* at 384. Generally speaking, a substantial question "will involve a 'pure issue of law,'" rather than being "fact-bound and situation-specific." *Id.* (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006). Here, Plaintiffs' complaint under state law is intensely fact bound and situation specific to the ways that Defendants failed to comply with HAVA as they

7

are required by North Carolina General Statute § 163-82.11(c) and the state Constitution. This is true even granting the fact that Defendants admitted their failure to comply.

Plaintiffs' complaint points out that prior to December 2023, NCSBE used voter registration forms that failed to collect either the registrant's driver's license number or the last four digits of their social security number. According to the standards established by HAVA, states must provide either of those two pieces of information before a registration can be processed. 52 U.S.C. § 21083(iii). In fact, § 21083(a)(5) prevents a state from accepting a voter registration form for Federal office unless the form includes the listed information. *Id.* Only if a registrant affirmatively confirms they do not have either form of identification, the state must "assign the applicant a number which will serve to identify the applicant for voter registration purposes . . . [which] shall be the unique identifying number assigned under the list." *Id*. at § 21083(a)(5)(A)(ii). As a result of these errors, voters did not utilize the catchall provision of § 21083(a)(5)(A)(ii), as the registration forms failed to make registrants aware that the driver's license or social security number identifying information was necessary for the application to be processed. Thus, any affirmative attestation regarding one's lack of those relevant documents was impossible. Plaintiffs' Complaint explains these failures in great detail as well as NCSBE's acknowledgement of these shortcomings. (Compl. ¶¶ 29–61). The question of NCSBE's compliance with HAVA is manifestly fact bound and situation specific and, at the very least, Plaintiffs' allegations raise some doubt as to the substantiality of the question. Indeed, Defendants admitted that their actions violate the state statute. Even granting for the sake of argument that the admission of the NCSBE makes this a legal question, that would be a question under state law and not a substantial question of federal law. Therefore, the question of substantiality should be resolved against NCSBE as they have failed to establish that a "pure issue of law" is at stake in this case.

3. **Defendants' argument for removal under 28 U.S.C. § 1443(2) is unavailing because Defendants are not refusing to do any act on the ground that it would be inconsistent with a law providing for equal rights.**

In their Complaint, Plaintiffs' claims for relief are based on Defendants' *violations* of both N.C. Gen. Stat. § 163-82.11 and Article I, Section 19 of the state Constitution. (Compl. ¶¶ 77–96). In their Notice, Defendants state that Plaintiffs allege that Defendants have refused to take "certain actions." (Dkt. no. 1, ¶ 4). Defendants' claim that their refusal to take those actions is based on their duty to comply with 52 U.S.C. § 10101(a)(2) and 52 U.S.C. § 20507(c)(2)(A). (Dkt. no. 1, ¶ 4). The allegations that Defendants have failed take "certain actions" merely point out how Defendants have exacerbated the problem caused by their violation of state law by taking no corrective action regarding 225,000 potentially ineligible voters participating in the 2024 General Election in North Carolina.

Section 1443(2) provides for removal of a civil action "[f]or any act under color of authority derived from any law providing for equal rights, or for refusing to act on the ground that it would be inconsistent with such law." 28 U.S.C. 1443(2). Sitting en banc, the Fourth Circuit noted that this statutory language "has been described as a text of exquisite obscurity." *Baines v. City of Danville, Va.*, 357 F.2d 756, 759 (4th Cir. 1966) (en banc) (internal quotations omitted). While the statute may be exquisitely obscure, the United States Supreme Court did provide guidance as to its interpretation by pointing to the legislative history of the statute:

> The second phrase of 28 U.S.C. [§] 1443(2), "for refusing to do any act on the ground that it would be inconsistent with such law," . . . was added by the House of Representatives as an amendment to the Senate bill during the debates on the Civil Rights Act of 1866. In reporting the House bill, Representative Wilson, the chairman of the House Judiciary Committee and the floor manager of the bill, said, 'I will state that this amendment is intended to enable State officers, *who shall refuse to enforce State laws discriminating in reference to (the rights created by [Section] 1 of the bill) on account of race or color*, to remove their cases to the United States courts when prosecuted for refusing to enforce those laws.'

9

*City of Greenwood, Miss. v. Peacock*, 384, U.S. 808, 824 n.22 (1966) (citing Cong. Globe, 39th Cong., 1st Sess., 1367) (emphasis added).

Here, Defendants have not claimed that they refused to enforce N.C. Gen. Stat. § 163-82.11 because the statute discriminates on account of race or color. Accordingly, removal under Section 1443(2) is unavailable to them. *See, e.g.*, *Burns v. Bd. of Sch. Comm'rs of City of Indianapolis, Ind.* 302 Fed. Supp. 309, 311-312 (S.D. Ind. 1969) ("[T]he privilege of removal is conferred . . . only upon state officers who refuse to enforce state laws discriminating on account of race or color.") Defendants may well refuse to follow through on remedying their failure to enforce the statute out of concern for compliance with 52 U.S.C. § 10101(a)(2) and 52 U.S.C. § 20507(c)(2)(A), but refusing those remedies as proposed by Plaintiffs are different from refusing to enforce state law on the grounds that it discriminates on the basis of race or color. Indeed, Defendants agreed to follow the statutory language *going forward*, therefore foreclosing any argument that they are refusing to enforce state law on the grounds that it is discriminatory. (Compl. ¶ 54).

In any event, granting Plaintiffs' claim for relief would not be inconsistent with either statute Defendants cite. Defendants admitted that the law requires voters to provide a Driver's License number or last four digits of a Social Security number, or otherwise attest that they have not been issued such numbers, in order to register to vote. Defendants admitted that they failed to enforce this requirement in the past, and they have agreed to enforce this requirement going forward. Defendants do not, and cannot, assert that enforcing these legal requirements violates the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2). Accordingly, they cannot plausibly assert, as they do in the Removal Notice, that enforcing these requirements by seeking

this information from registrants who did not previously provide it would run afoul of the Materiality Provision.

Nor would granting Plaintiffs' requested relief run afoul of 52 U.S.C. § 20507(c)(2)(A), which requires that states "complete … any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters" at least 90 days before a federal election. This provision does not apply here for two reasons. First, Plaintiffs have already acknowledged that requiring such voters to cast a provisional ballot pending receipt and confirmation of the required HAVA information—rather than removal from the voter rolls—may be the only feasible option and expressly asked for such relief. *See* Dkt. no. 1-3, Prayer for Relief at 19-20. Second, even if any such voter is removed from the rolls before the election[4] for failure to supply the required information, such removal is not the completion of a program to systematically remove the names of ineligible voters from the voter rolls, such as routine voter list maintenance programs. Removal here would be the result of an individualized inquiry and request that a voter supply the required information.

In sum, the privilege of removal is simply not available to Defendants under these facts. In order to avail themselves of removal under Section 1443(2), Defendants must claim that they have refused to enforce state law on the grounds that it would be discriminatory on account of race or color. Defendants have not done so. Instead, they have admitted that they simply failed to enforce the law and agreed to comply going forward. Any refusal to act on Defendants' part is a refusal to go back and rectify the mistaken registrations it wrongfully accepted, not a refusal to enforce state law. Defendants must correct their errors not just going forward, but take the steps suggested by Plaintiffs to ensure that Defendants errors do not lead to upwards of 225,000 ineligible ballots

---

[4] The statute would not be implicated at all if removal from the voter rolls occurred after the general election.

11

being cast in North Carolina in just a matter of weeks. Therefore, Defendants' attempt to remove this action under 28 U.S.C. 1443(2) should be rejected by this Court and the case immediately remanded.

## CONCLUSION

As Plaintiffs point out in their complaint, the NCSBE has potentially jeopardized the integrity of the general election in North Carolina by improperly registering over 225,000 people to vote with forms that failed to require collection of certain identification information prior to the voter registration forms being processed. As a result of that failure, North Carolina's voter rolls include a vast number of voters who are potentially ineligible to vote. The integrity of the results of the 2024 general election could be in jeopardy. Plaintiffs filed their complaint in state court on August 23, 2024 and requested relief including a court approved plan to ensure that NCSBE's violations would be remedied in time to preserve the integrity of the general election. Defendants waited a month before filing their notice of removal. As the November 5, 2024 election will soon arrive, Plaintiffs make this emergency request to remand this case to the proper jurisdiction so that a state court can provide a remedy for Defendants' violations of state law, before potentially 225,000 improperly registered voters head to the polls. Given the nature of the relief requested and fast approaching date of the general election, Plaintiffs respectfully request an emergency hearing and expedited briefing schedule on this motion to be set as soon as is practical.

This, the 1st day of October, 2024.

**NELSON MULLINS RILEY &
SCARBOROUGH LLP**

By: /s/ Phillip J. Strach
Phillip J. Strach
North Carolina State Bar no. 29456
Jordan A. Koonts

North Carolina State Bar no. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com


**BAKER DONELSON BEARMAN,
CALDWELL & BERKOWITZ, PC**

By: /s/   John E. Branch, III
John E. Branch, III
North Carolina State Bar no. 32598
Thomas G. Hooper
North Carolina State Bar no. 25571
2235 Gateway Access Point, Suite 220
Raleigh, NC 27607
Ph: (984) 844-7900
jbranch@bakerdonelson.com
thooper@bakerdonelson.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(f)(3)

I hereby certify that this memorandum of law is in compliance with Local Rule 7.2(f)(3) as the brief, including headings, footnotes, citations, and quotations, contains no more than 8,400 words as indicated by the computer's word processing program.

This, the 1st day of October, 2024.

/s/ Phillip J. Strach
Phillip J. Strach
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing Motion with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such to all counsel of record in the above-captioned matter.

This, the 1st day of October, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/ Phillip J. Strach*
Phillip J. Strach
North Carolina State Bar no. 29456
Jordan A. Koonts
North Carolina State Bar no. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com