# No. 2024AP164

## IN THE
## WISCONSIN SUPREME COURT

---

PRIORITIES USA,
 WISCONSIN ALLIANCE FOR RETIRED AMERICANS, AND
 WILLIAM FRANKS, JR.,

      *Plaintiffs-Appellants,*

GOVERNOR TONY EVERS,

      *Intervenor-Appellant*,

      v.

WISCONSIN ELECTIONS COMMISSION,

      *Defendant-Respondent,*

WISCONSIN STATE LEGISLATURE,

      *Intervenor-Respondent.*

---

**NON-PARTY BRIEF OF THE REPUBLICAN
NATIONAL COMMITTEE, THE REPUBLICAN
PARTY OF WISCONSIN, AND RITE PAC
IN SUPPORT OF DEFENDANT-RESPONDENTS**

---

| | |
|---|---|
| Thomas R. McCarthy* | Matthew M. Fernholz, #1065765 |
| Conor D. Woodfin* | CRAMER MULTHAUF LLP |
| R. Gabriel Anderson** | 1601 E. Racine Ave., Ste. 200 |
| CONSOVOY MCCARTHY PLLC | Waukesha, Wisconsin 53186 |
| 1600 Wilson Blvd., Ste. 700 | 262-542-4278 |
| Arlington, VA 22209 | mmf@cmlawgroup.com |
| (703) 243-9423 | |
| tom@consovoymccarthy.com | |
| conor@consovoymccarthy.com | |
| gabe@consovoymccarthy.com | |

*admitted pro hac vice
**pro hac vice application forthcoming

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................ ii

ARGUMENT ............................................................... 1

    I.   *Teigen* was right. ................................................ 2

    II.  Overturning *Teigen* would violate the Constitution. ........................................................ 9

    III. Overturning *Teigen* would disrupt the elections. ............................................................ 11

CONCLUSION .......................................................... 13

CERTIFICATIONS ................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Alberte v. Anew Health Care*
　2000 WI 7, 232 Wis. 2d 587, 605 N.W.2d 515 ......... 6

*Bush v. Gore*
　531 U.S. 98 (2000) ........................................... 10, 11

*Bush v. Palm Beach Cnty. Canvassing Bd.*
　531 U.S. 70 (2000) ................................................ 10

*Carson v. Simon*
　978 F.3d 1051 (8th Cir. 2020) ............................... 10

*City of W. Allis v. Dieringer*
　275 Wis. 208, 81 N.W.2d 533 (1957) ....................... 5

*DNC v. Wis. State Leg.*
　141 S.Ct. 28 (2020) ......................................... 12, 13

*Duncan v. Asset Recovery Specialists*
　2022 WI 1, 400 Wis. 2d 1, 968 N.W.2d 661 ......... 3, 5

*Engelhardt v. New Berlin*
　2019 WI 2, 385 Wis. 2d 86, 921 N.W.2d 714 ........... 1

*Frederick v. Zimmerman*
　254 Wis. 600, 37 N.W.2d 473 (1949) ..................... 11

*Griffin v. Roupas*
　385 F.3d 1128 (7th Cir. 2004) ................................. 7

*Hawkins v. WEC*
　2020 WI 75, 393 Wis. 2d 629, 948 N.W.2d 877 ..... 13

*Hinrichs v. DOW Chem.*
　2020 WI 2, 389 Wis. 2d 669,
　937 N.W.2d 37 ........................................... 1, 2, 8, 9

*In re Visitation of A.A.L.*
　2019 WI 57, 387 Wis. 2d 1, 927 N.W.2d 486 ........... 2

*James v. Heinrich*
　2021 WI 58, 397 Wis. 2d 517, 960 N.W.2d 350 ..... 11

*Johnson Controls, Inc. v. Emps. Ins. of Wausau*
　2003 WI 108, 264 Wis. 2d 60, 665 N.W.2d 257 ....... 8

*Madison Tchrs. v. Scott*
  2018 WI 11, 379 Wis. 2d 439, 906 N.W.2d 436 ....... 7

*McPherson v. Blacker*
  146 U.S. 1 (1892) ................................................. 10

*Merrill v. Milligan*
  142 S.Ct. 879 (2022) ............................................. 12

*Moore v. Harper*
  600 U.S. 1 (2023) ................................................... 2

*Myers v. WDNR*
  2019 WI 5, 385 Wis. 2d 176, 922 N.W.2d 47 .......... 4

*Pinter v. Vill. of Stetsonville*
  2019 WI 74, 387 Wis. 2d 475, 929 N.W.2d 547 ....... 9

*Purcell v. Gonzalez*
  549 U.S. 1 (2006) ................................................... 7

*RNC v. DNC*
  589 U.S. 423 (2020) ............................................. 12

*Roberts v. T.H.E. Ins.*
  2016 WI 20, 367 Wis. 2d 386, 879 N.W.2d 492 ....... 6

*Schauer v. DeNeveu Homeowners Ass'n*
  194 Wis. 2d 62, 533 N.W.2d 470 (1995) ................. 12

*Sommerfeld v. Bd. of Canvassers of City of St. Francis*
  269 Wis. 299, 69 N.W.2d 235 (1955) ........................ 9

*State ex rel. Bell v. Conness*
  106 Wis. 425, 82 N.W. 288 (1900) ........................... 7

*State v. Dinkins*
  2012 WI 24, 339 Wis. 2d 78, 810 N.W.2d 787 ......... 7

*State v. Johnson*
  2023 WI 39, 407 Wis. 2d 195, 990 N.W.2d. ............. 8

*State v. Rector*
  2023 WI 41, 407 Wis. 2d 321,
  990 N.W.2d 213 ............................................... 3, 4, 8

*Tetra Tech EC v. WDR*
  2018 WI 75, 382 Wis. 2d 496, 914 N.W.2d 21 ....... 13

*Trump v. Biden*
　2020 WI 91, 394 Wis. 2d 629,
　　951 N.W.2d 568 .................................................. 3, 13

**Statutes**

Wis. Stat. §5.02 ............................................................ 4

Wis. Stat. §6.84 ........................................................ 6, 7

Wis. Stat. §6.87 ...................................................passim

**Other Authorities**

5 Wis. Op. Att'y Gen. 591 (1916) ............................. 5, 9

*American Heritage Dictionary* (3d ed. 1992),
　perma.cc/NYY2-EQ3T ............................................. 4

*Black's Law Dictionary* (11th ed. 2019) ...................... 4

*Drop Box Information* 2 (2020),
　perma.cc/62SJ-S57H ............................................... 4

*Wis. Elections Comm. Calendar of Election Events*,
　perma.cc/PHR3-D3FS............................................ 12

**Constitutional Provisions**

U.S. Const. art. I, §4 ............................................. 2, 10

U.S. Const. art. II, §1............................................... 10

# ARGUMENT

"*Stare decisis* is fundamental to the rule of law." *Hinrichs v. DOW Chem.*, 2020 WI 2, ¶66, 389 Wis. 2d 669, 937 N.W.2d 37. For good reason. It ensures that the law is "'evenhanded, predictable, and consistent.'" *Engelhardt v. New Berlin*, 2019 WI 2, ¶24, 385 Wis. 2d 86, 921 N.W.2d 714 (Dallet, J., concurring). It avoids "arbitrary and unpredictable results." *Hinrichs*, 2020 WI 2, ¶67. It assures people that they are governed according to the stability of the law, rather than the fluctuating composition of the courts. And it is "particularly important" when "this court has authoritatively interpreted a statute," which means the reasons for abandoning it must be compelling. *In re Visitation of A.A.L.*, 2019 WI 57, ¶33 n.15, 387 Wis. 2d 1, 927 N.W.2d 486. In that situation, "any departure from *stare decisis* requires special justification." *Hinrichs*, 2020 WI 2, ¶67.

There is no justification here—special or not. Voters must deliver their absentee ballots in one of two ways: by mail or "in person, to the municipal clerk." Wis. Stat. §6.87(4)(b)(1). Drop boxes do neither. Depositing a ballot in a box isn't the same as "mail[ing]" it "to the municipal clerk." *Id.* And it isn't the same as "deliver[ing]" a ballot "in person, to the municipal clerk" either. *Id.* Text, history, and structure support that conclusion. So do purpose, *stare decisis*, and *Teigen*.

Overruling *Teigen* would be atextual and unwise— and unconstitutional. The U.S. Constitution vests "the

1

Legislature" of each State with the power to regulate congressional elections. U.S. Const. art. I, §4. Overturning *Teigen* would accomplish precisely what the Elections Clause prohibits, thwarting more than a century of settled law and permitting a novel approach to absentee voting that "the Legislature" has never condoned. *See Moore v. Harper*, 600 U.S. 1, 36 (2023).

That novel approach would sow chaos in this State's elections just months before the presidential election. Overruling *Teigen* threatens to politicize this Court and cast a pall over the election. And far from settling the matter today, overruling *Teigen* would unleash a wave of new challenges and injunctions on the eve of the election. The Court has long refused to upend the status quo "in the election context." *E.g.*, *Trump v. Biden*, 2020 WI 91, ¶¶26-31, 394 Wis. 2d 629, 951 N.W.2d 568. It should refuse here, too.

## I.　*Teigen* **was right.**

Less than two years ago, this Court answered the same question it's considering now. In *Teigen*, the Court held that "ballot drop boxes are illegal," and voters must return their absentee ballots "by mail" or "personally deliver" them "to the municipal clerk." *Teigen v. Wisconsin Elections Commission,* 2022 WI 64, ¶4, 403 Wis. 2d 607, 976 N.W.2d 519. Text, history, and structure support that conclusion. So do the canons, common sense, and caselaw.

**Text.** "[S]tatutory interpretation begins with the language of the statute." *State v. Rector*, 2023 WI 41, ¶10, 407 Wis. 2d 321, 990 N.W.2d 213. If the language

2

is "plain," statutory interpretation "stop[s] there," too. *Duncan v. Asset Recovery Specialists*, 2022 WI 1, ¶9, 400 Wis. 2d 1, 968 N.W.2d 661. Here, the law is plain: Absentee ballots can be "mailed by the elector, or delivered in person, to the municipal clerk." Wis. Stat. §6.87(4)(b)(1). Drop boxes do neither, so the law forbids them.

For starters, a ballot isn't "mailed … to the municipal clerk" when someone deposits it in a drop box. *Id.* Something qualifies as "mail"—and therefore can be "mailed"—only when it's "processed for distribution [at] a post office." Mail, *American Heritage Dictionary* (3d ed. 1992).[1] So ballots are "mailed" only if they are "properly addressed, stamped with postage, and deposited for delivery in the postal system." Mail, *Black's Law Dictionary* (11th ed. 2019). Voters "mail" their ballots only when they "send" them through the "postal system." *American Heritage Dictionary*, *supra*.

By that metric, drop boxes fall short. Drop boxes are part of "municipal" governments—not the postal system. WEC, *Drop Box Information* 2 (2020).[2] They're "operated by local election officials," not postal workers. *Id.* at 1. So it's no wonder that Plaintiffs and WEC admit that placing "absentee ballots [in] a drop box" is different than "sending them back through the mail." *Id.*; *accord* Compl.¶¶42-43. Simply put, voters don't "mail[]" their ballots to anyone when they stuff them in a drop box. Wis. Stat. §6.87(4)(b)(1).

---

[1] perma.cc/NYY2-EQ3T
[2] perma.cc/62SJ-S57H

3

And voters don't "deliver[]" their ballots "in person[] to the municipal clerk" when they drop them in a box either. *Id.* The statutory definition of "municipal clerk" refers to people, not objects, so voters must give their ballots to a person—not an object. *E.g.*, *Rector*, 2023 WI 41, ¶10 ("specially-defined words" must be given their "special definitional meaning"); *accord Myers v. WDNR*, 2019 WI 5, ¶18, 385 Wis. 2d 176, 922 N.W.2d 47. As the Legislature instructed, "municipal clerk" refers to specific people, including only "the city clerk, town clerk, village clerk," and a few other "election" officials. Wis. Stat. §5.02(10). So the law's command—"deliver[]" your ballots "to the municipal clerk"—requires voters to hand their ballots to *a person*: "the city clerk, town clerk, village clerk," and so on. *Id.* Placing a ballot inside an object (a drop box) isn't the same as handing it to a person (the "municipal clerk").

The plain meaning of "in person" confirms that conclusion. Since 1916, the phrase "delivered in person" has meant one thing: "manual transmission by the one to the other." 5 Wis. Op. Att'y Gen. 591, 593 (1916). Less than a year after the Legislature approved absentee voting, Attorney General Walter Owen—who later served on the Wisconsin Supreme Court—interpreted the phrase "[d]elivery in person," concluding that the term "must mean handed directly by an elector to the officer." *Id.*; *City of W. Allis v. Dieringer*, 275 Wis. 208, 219, 81 N.W.2d 533 (1957) ("[I]nterpretations by the attorney general … have important bearing upon statutory meaning."). The Court reaffirmed that conclusion in *Sommerfeld*, unanimously agreeing that "the

4

'in person' delivery requirement means personal delivery, in the flesh, by the voter, to the municipal clerk." *Teigen*, 2022 WI 64, ¶176 (Hagedorn, J., concurring). So, as the history shows, someone "deliver[s]" an absentee ballot "in person" only when they hand it to someone else—*i.e.*, the "municipal clerk." Wis. Stat. §6.87(4)(b)(1). Dropping a ballot in a box doesn't suffice.

**Structure.** The Act's "context and structure" confirm its plain meaning. *Duncan*, 2022 WI 1, ¶9. Wisconsin's election laws draw a hard line between in-person voting and absentee voting, recognizing that in-person voting is generally allowed while absentee voting is generally not. Wis. Stat. §6.84(1). In-person voting "is a constitutional right" that "should be strongly encouraged." *Id.* So in-person voting is allowed unless another law says it's not. But "voting by absentee ballot is a privilege," which "must be carefully regulated." *Id.* So absentee voting isn't allowed unless another law says it is.

Nothing in Wisconsin's election code permits drop boxes. When the Court decided *Teigen*, no one—not the plaintiffs, the defendants, or the Court—could "point to any statute authorizing ballot drop boxes." 2022 WI 64, ¶54 (majority). For good reason: none exists. "[D]rop boxes" have never "been in common and longstanding use in this state." *Id.* ¶65 (plurality). They're "'unprecedented.'" *Id.* ¶66 n.26. They're "a novel creation" that is "nowhere in the statutes." *Id.* ¶58 (majority). So the Legislature "did not contemplate" drop boxes, much less condone them. *Alberte v.*

5

*Anew Health Care*, 2000 WI 7, ¶17, 232 Wis. 2d 587, 605 N.W.2d 515. That means "drop boxes are illegal." *Teigen*, 2022 WI 64, ¶4.

**Purpose.** Statutory purpose supports the text, history, and structure. Statutory purpose "is relevant," especially when "the legislature has expressly stated the purpose [in] a statute." *Roberts v. T.H.E. Ins.*, 2016 WI 20, ¶21, 367 Wis. 2d 386, 879 N.W.2d 492. Here, that purpose couldn't be clearer. In the very first sentence of its absentee-voting laws, the Legislature told courts how to "constru[e]" those statutes, reminding them that "voting by absentee ballot must be carefully regulated." Wis. Stat. §6.84(1). Consistent with that "Legislative policy," absentee-voting laws "shall be construed as mandatory," *id.* §6.84(2), thus requiring courts to "test" any election procedure under "the strictest legal standards," *State ex rel. Bell v. Conness*, 106 Wis. 425, 428, 82 N.W. 288 (1900).

That requirement makes good sense. "Ensuring the integrity of elections is an important public interest." *Madison Tchrs. v. Scott*, 2018 WI 11, ¶76, 379 Wis. 2d 439, 906 N.W.2d 436 (Walsh Bradley, J., dissenting). But voter fraud is "a serious problem in U.S. elections," and it's "facilitated by absentee voting." *Griffin v. Roupas*, 385 F.3d 1128, 1130-31 (7th Cir. 2004). Like anything of value, elections are targets for malicious actors. Even if fraud is rare, it is still a threat. And because elections are the very essence of our democracy, it is essential that people perceive them to be run according to the highest standard of integrity. *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). So even though

6

"absentee voting has many benefits," it also has many problems—problems "the legislature" sought "to minimize" through a series of statutory "safeguards," including the law that Plaintiffs challenge today. *Teigen*, 2022 WI 64, ¶71 (plurality). Short-circuiting those safeguards—and imposing a novel drop-box requirement that the Legislature never enacted, the Governor never signed, and the voters never ratified—would "contravene[] the manifest purpose of the statute." *State v. Dinkins*, 2012 WI 24, ¶29, 339 Wis. 2d 78, 810 N.W.2d 787.

***Stare Decisis.*** The Court reached all these conclusions in *Teigen* after an exhaustive and "authoritative" examination of §6.87(4)(b)(1)'s text, history, structure, and purpose. *See Rector*, 2023 WI 41, ¶32. This Court should respect that recent conclusion.

This Court unanimously held that "stare decisis is fundamental to the rule of law." *Hinrichs*, 2020 WI 2, ¶66. The doctrine reflects a "scrupulous[]" and "abiding respect for the rule of law." *Johnson Controls, Inc. v. Emps. Ins. of Wausau*, 2003 WI 108, ¶94, 264 Wis. 2d 60, 665 N.W.2d 257. That respect "ensures that existing law will not be abandoned lightly." *Hinrichs*, 2020 WI 2, ¶67. And it "requires" that "any departure from *stare decisis*" have a "special" justification. *Id.*

There is no "special justification" here. The Court has identified five flaws that justify "overruling precedent": a past opinion must be legally inconsistent, factually inaccurate, doctrinally unsound, practically unworkable, or the law must have "changed in a way that

7

undermines the prior decision's rationale." *State v. Johnson*, 2023 WI 39, ¶20, 407 Wis. 2d 195, 990 N.W.2d. None are present here. The law hasn't changed. The facts haven't changed. And Wisconsin has followed the same absentee-voting rules for more than a century, so *Teigen*'s ratification of those rules wasn't "unsound," "unworkable," or inconsistent with "the law." *Id.*

But overruling *Teigen* would create the very problems that *stare decisis* is supposed to avoid. For more than a century, almost every governmental entity—from the attorney general, to the counties, to the municipalities, to this Court—has said that Wisconsin's absentee-voting laws prohibit drop boxes. *E.g.*, 5 Wis. Op. Att'y Gen. at 593; *Sommerfeld v. Bd. of Canvassers of City of St. Francis*, 269 Wis. 299, 304, 69 N.W.2d 235 (1955); *Teigen*, 2022 WI 64, ¶4.

Overturning *Teigen* would change all that. "Adopting the dissent's reasoning [in *Teigen*] 'would effectively pull the rug out from under municipalities and other governmental entities that have managed their affairs relying upon [those] decades-old interpretation[s].'" *Pinter v. Vill. of Stetsonville*, 2019 WI 74, ¶37, 387 Wis. 2d 475, 929 N.W.2d 547. Such an abrupt change would be "'especially jarring to the public and legal community'" who have all (rightly) assumed that the Court settled this issue "two years prior in [*Teigen*]." *Id.* Upsetting those reliance interests now would beget the very type of "arbitrary and unpredictable results" that *stare decisis* cautions against, signaling to litigants that any decision—no matter how

well-established, well-settled, or well-reasoned—is "open to revision in every case." *Hinrichs*, 2020 WI 2, ¶67.

The Court should not take that step. Rather, it should reaffirm its commitment to *stare decisis* and hold—as it often does—that "the legislature is free to change" the State's absentee-voting laws if it disagrees with *Teigen*'s analysis. *E.g.*, *Pinter*, 2019 WI 74, ¶¶36-38; *A.A.L.*, 2019 WI 57, ¶33 & n.15.

## II. Overturning *Teigen* would violate the Constitution.

Even if the Court wanted to overturn *Teigen*, it couldn't. The Elections Clause vests state legislatures with the power to set "[t]he Times, Places and Manner" of congressional elections. U.S. Const. art. I, §4. And the Electors Clause gives state legislatures authority over the "Manner" of appointing presidential electors. art. U.S. Const. art. II, §1. Those provisions "leav[e] it to the legislature exclusively to define the method" of regulating elections. *McPherson v. Blacker*, 146 U.S. 1, 27 (1892). So "state legislatures" have the "primary responsibility for setting election rules"—"not state judges." *Carson v. Simon*, 978 F.3d 1051, 1062 (8th Cir. 2020).

State courts thwart that rule when they read election statutes too "liberally." *Bush v. Palm Beach Cnty. Canvassing Bd.*, 531 U.S. 70, 77 (2000). The Constitution requires state courts to fairly apply "the legislative scheme" that Wisconsin's representatives enacted, barring courts from "broaden[ing] the scope of [a] statute beyond what a fair reading provide[s]."

9

*Bush v. Gore*, 531 U.S. 98, 113-15 (2000) (Rehnquist, C.J., concurring). If the Court places a thumb on the scale and concludes that Wisconsin's election laws "must be liberally construed in favor of the citizens' right to vote"—that act "circumscribe[s] the legislative power" and is unconstitutional. *Palm Beach*, 531 U.S. at 77.

Abandoning *Teigen* would "transgress the ordinary bounds of judicial review" and usurp "the power vested in state legislatures to regulate federal elections." *Moore*, 600 U.S. at 36. The Legislature has long required absentee voters to mail their ballots or deliver them in person, mandating those procedures—and no others—across three separate statutes for more than one hundred years. *Teigen*, 2022 WI 64, ¶77 n.11 (Hagedorn, J., concurring). But after more than a century of settled practice, WEC tried to skirt that rule, concocting a novel absentee-voting procedure that was "found nowhere in the statutes," "history," or "evidence." *Id.* ¶58 (majority).

*Teigen* rightly rejected that lawless novelty. Overturning *Teigen* would resurrect it, marking a "significant departure from the legislative scheme" that the Federal and Wisconsin Constitutions don't permit. *Bush*, 531 U.S. at 112-13; *Frederick v. Zimmerman*, 254 Wis. 600, 613, 37 N.W.2d 473 (1949) (Only "the legislature has the constitutional power to say how, when and where [a] ballot shall be cast.").

At a minimum, constitutional avoidance calls for reaffirming *Teigen*. The Court can "interpret the challenged statute in a way that both resolves the case and avoids [a] constitutional question." *James v. Heinrich*, 2021 WI 58, ¶85, 397 Wis. 2d 517, 960 N.W.2d 350

(Dallet, J., dissenting). That approach would have the added benefit of deciding the case "on the narrowest available grounds"—a restrained approach that the Court has endorsed "time and again." *Id.*

### III. Overturning *Teigen* would disrupt the elections.

Overturning *Teigen* now would also upend election administration. Under the *Purcell* doctrine, federal courts "should not alter state election laws in the period close to an election." *DNC v. Wis. State Leg.*, 141 S.Ct. 28, 30 (2020) (Kavanaugh, J., concurring). That period, called the *Purcell* window, opens long before a general election—and once it opens, courts reverse decisions that "chang[e] the election rules." *RNC v. DNC*, 589 U.S. 423, 424 (2020) (seven months); *Merrill v. Milligan*, 142 S.Ct. 879 (2022) (nine months).

This case is well within the *Purcell* window. The Wisconsin primary is approaching August 13, and candidates for the general election began circulating nomination papers last month. Clerks have already begun publishing absentee voting instructions for the primary. *Wis. Elections Comm., Calendar of Election Events.*[3] Voters have already begun to request absentee ballots and make plans around the current law. *Id.* Implementing drop-boxes will require herculean planning, monitoring, security, time, and resources to administer. That feat cannot be accomplished at this late hour in a manner that preserves uniformity and instills confidence in the election.

This case's procedural posture only makes matters worse. The Court took this case on a motion to dismiss,

---

[3] perma.cc/PHR3-D3FS

11

so even siding with Plaintiffs wouldn't end the matter. Instead, the case would return to the circuit court for further litigation. Unless that further litigation concluded in a final judgment for Plaintiffs, WEC is still bound by the judgment in *Teigen*. *See Schauer v. DeNeveu Homeowners Ass'n*, 194 Wis. 2d 62, 75 n.8, 533 N.W.2d 470 (1995) ("[P]recedent can either be followed or overruled. It cannot be reversed or vacated."). And Wisconsin procedure "does not authorize relief from a judgment on the ground that the law applied by the court in making its adjudication has been subsequently overruled in an unrelated proceeding." *Tetra Tech EC v. WDR*, 2018 WI 75, ¶90, 382 Wis. 2d 496, 914 N.W.2d 21. That means that WEC could introduce drop boxes, if at all, only after this case reaches a final judgment in Plaintiffs' favor. On that timeline, the rule changes would be far too close to the election to be feasible. The Court should not encourage such drastic changes at the eleventh hour.

Siding with Plaintiffs will bring other predictable consequences. Courts could issue a state-wide injunction, "unilaterally chang[ing]" the laws just days before Wisconsinites start voting. *Wis. State Leg.*, 141 S.Ct. at 30 (Kavanaugh, J., concurring). In that event, "election administrators" would have to "first understand the court's injunction, then devise plans to implement that late-breaking injunction, and then determine as necessary how best to inform voters," "local election officials," and "volunteers." *Id.* at 31. That mess "puts courts in a difficult spot" that this Court can avoid by reaffirming *Teigen* (or staying the case until after the election). *Trump*, 2020 WI 91, ¶30; *Hawkins v. WEC*, 2020 WI 75, ¶10, 393 Wis. 2d 629, 948 N.W.2d 877.

## CONCLUSION

The Court should affirm the judgment below.

Dated this day May 3, 2024

        Respectfully submitted,

        *Electronically signed by Matthew M. Fernholz*

        **CRAMER MULTHAUF LLP**
        Matthew M. Fernholz,
        SBN 1065765
        1601 E. Racine Ave., Suite 200
        Waukesha, Wisconsin 53186
        262-542-4278
        mmf@cmlawgroup.com

        **CONSOVOY MCCARTHY PLLC**
        Thomas R. McCarthy*
        Conor D. Woodfin*
        R. Gabriel Anderson**
        1600 Wilson Boulevard
        Suite 700
        Arlington, VA 22209
        (703) 243-9423
        tom@consovoymccarthy.com
        conor@consovoymccarthy.com
        gabe@consovoymccarthy.com

        \**admitted pro hac vice*
        \*\**pro hac vice application forthcoming*

        Attorneys for Non-Parties RNC, RPW, and RITE PAC

## CERTIFICATIONS

I hereby certify that this brief conforms to the rules contained in Wis. Stat. Rule 809.19(8)(b), (bm), and (c). The brief uses a proportional serif font and is 2,998 words.

Dated this 3rd day of May, 2024.

Respectfully submitted,

*Electronically signed by Matthew M. Fernholz*

**CRAMER MULTHAUF LLP**
Matthew M. Fernholz,
SBN 1065765
1601 E. Racine Ave., Suite 200
Waukesha, Wisconsin 53186
262-542-4278
mmf@cmlawgroup.com