IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE and NORTH CAROLINA REPUBLICAN PARTY,<br><br>*Plaintiffs*,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as Executive Director of the North Carolina State Board of Elections; ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections; JEFF CARMON, in his official capacity as Secretary of the North Carolina State Board of Elections; STACY EGGERS IV, KEVIN N. LEWIS, and SIOBHAN O'DUFFY MILLEN, in their official capacities as members of the North Carolina State Board of Elections,<br><br>*Defendants*,<br><br>and<br><br>DEMOCRATIC NATIONAL COMMITTEE,<br><br>*Intervenor-Defendant*. | Case No. 5:24-cv-547-M-RJ |

**THE DEMOCRATIC NATIONAL COMMITTEE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO REMAND TO STATE COURT**

## INTRODUCTION

Plaintiffs allege in this lawsuit that the North Carolina State Board of Elections (Board), its members, and its executive director have committed "a plain violation of Section 303 of the Help America Vote Act ('HAVA')," Compl. (D.E. 1-3) ¶3—and further allege that "because of" that violation, North Carolina's voter rolls "potentially" include ineligible voters, *id.* Based on those allegations, the complaint asks this Court to remove those potentially ineligible voters from the rolls, seeking an injunction to enforce what plaintiffs call "a non-discretionary, statutory duty to maintain the state's voter rolls in in a manner compliant with Section 303(a) of HAVA." *Id.* ¶90. The complaint is thus based on a federal law—HAVA—so the Board's removal was proper. The Court should deny the remand motion (and promptly grant the pending motion to dismiss in order to dispel the cloud plaintiffs seek to cast over the integrity of the upcoming elections).

## STATEMENT

Plaintiffs filed this action in Wake County Superior Court (Case No. 24CV026995-910) on August 23, 2024. They allege that, for an unspecified period of time before December 2023, the Board used a voter-registration form that requested but did not require the applicant to provide a driver's license or social security number. Compl. (D.E. 1-3) ¶¶3, 42.

The complaint includes two claims. First, plaintiffs request a writ of mandamus to address a purported violation of North Carolina General Statutes §163-82.11(c)—a violation that depends entirely on the alleged HAVA violation, because §163-82.11(c) requires the State Board to maintain North Carolina's voter rolls in compliance with HAVA. Compl. (D.E. 1-3) ¶¶77-88. Second, plaintiffs seek a mandatory injunction to redress an alleged violation of the North Carolina Constitution. *See id.* ¶¶89-96. The basis for that purported violation is likewise the State Board's supposed failure to comply with both HAVA and the implementing state statute. *Id.* ¶¶90-92.

1

Plaintiffs primarily seek a "court-approved plan" to "identify[] all ineligible registrants and remov[e] them from the state's voter registration lists." *Id.* at 19.  Alternatively, plaintiffs request a court order requiring "all individuals who failed to provide necessary HAVA identification information but were still registered to vote under the state's prior registration form[] to cast a provisional ballot in the upcoming elections pending" the State Board's "receipt and confirmation of the required HAVA information." *Id.* at 19-20.

Days after this case was filed, the Democratic National Committee (DNC) moved to intervene.  After the superior court granted the motion, the DNC filed its motion to dismiss, answer, and affirmative defenses on September 12.  The State Board then removed the case to this Court pursuant to 28 U.S.C. §§1331, 1441(a), 1443(2), and 1367(a).  D.E. 1 at 2.  They subsequently moved to dismiss on multiple grounds, D.E. 30, 31, and filed an accompanying motion to expedite consideration of the dismissal motion, D.E. 32, 33.  On October 1, plaintiffs filed an emergency motion to remand, D.E. 37, and a memorandum in support, D.E. 38 (Br.).

## ARGUMENT

### I. REMOVAL IS PROPER UNDER 28 U.S.C. §1441(a)

Federal courts have jurisdiction over "all civil actions arising under the … laws[] … of the United States." 28 U.S.C. §1331.  Any such case "may be removed" to federal court.  *Id.* §1441(a).  Showing "that removal jurisdiction is proper" requires no more "than is required to establish federal jurisdiction as alleged in a complaint." *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008).  Under that standard, removal of this case was appropriate.

A.  To assess whether a plaintiff's cause of action "has some basis in federal law," courts apply the "well-pleaded complaint rule." *Old Dominion Electric Cooperative v. PJM Interconnection, LLC*, 24 F.4th 271, 279 (4th Cir. 2022).  Applying that rule here leaves no doubt that the complaint "has some basis in federal law." *Id.*  As noted, plaintiffs accuse the Board of "a

2

plain violation of Section 303 of" HAVA, and allege that "[b]ecause of" that violation, North Carolina's voter rolls are "potentially replete with ineligible voters." Compl. (D.E. 1-3) ¶3. And the complaint repeats again and again (and again) the allegation that defendants "violated" or "ignored" HAVA. *Id.* ¶¶5-6, 10, 44; *see also id.* ¶¶3, 48, 50, 52, 55.a, 58, 62-65, 68, 74. It is also filled with yet more references to that federal law. For example, the complaint alleges that "[u]nder the plain text of HAVA," defendants "should not have accepted or processed" voter registrations using the form in place prior to December 2023. *Id.* ¶57. Likewise, plaintiffs allege that "Congress, through HAVA, set requirements for how states must implement and maintain their voter rolls." *Id.* ¶32. And—seemingly recognizing that no court can grant them relief without interpreting HAVA—they then devote another ten paragraphs to describing what "HAVA mandates," *id.* ¶¶32-43. Put simply, the complaint from start to finish alleges a violation of, and therefore arises under, federal law.

B. Plaintiffs' inclusion of state-law causes of action does not alter that conclusion; it constitutes (at best) "'clothing a federal claim in state garb,'" *Old Dominion*, 24 F.4th at 279 (quoting *Travelers Indemnity Co. v. Sarkisian*, 794 F.2d 754, 758 (2d Cir. 1986)). Under Fourth Circuit precedent, that does not preclude removal, so long as "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986), *quoted in Old Dominion*, 24 F.4th at 280. Federal jurisdiction in such circumstances "will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Gunn v. Minton*, 568 U.S. 251, 258 (2013), *quoted in Old Dominion*, 24 F.4th at 280.

1. As discussed, *see supra* p.3, plaintiffs' complaint satisfies the first *Gunn v. Minton* factor because it necessarily raises a federal question. That question is: When election officials register a voter whose registration form lacked a current, valid driver's license number or the last four digits of her social security number as required by 52 U.S.C. §21083(a)(5)(A)(i), does the State Board's obligation under 52 U.S.C. §21083(a)(2)(A) to "perform list maintenance with respect to the computerized [registration] list on a regular basis" require either that the voter be removed from the rolls or allowed to cast only a provisional ballot? Compl. (D.E. 1-3) ¶¶30-38, 55.a. n.6, 58, 64, 74, 78-81, 85-86, 90-91, 93.

Plaintiffs cloak that claim in particularly thin "state garb," *Old Dominion*, 24 F.4th at 279, asserting that a North Carolina statute is the real basis of their claim. Br. (D.E. 38) p.5; Compl. (D.E. 1-3) ¶85. But what that statute requires is compliance with *federal* law, namely HAVA. The state statute requires the Board to maintain North Carolina voter rolls in manner that "meet[s] the requirements of Section 303(a) of" HAVA. N.C. Gen. Stat. §163-82.11(c). Indeed, the provision is *titled* "Compliance With Federal Law." *Id.* But a state statute cannot bar removal merely by referencing federal law; otherwise, states could sweep *every* federal-question case into their courts by enacting a catch-all statute requiring "compliance with all federal laws," which a plaintiff could then invoke to defeat removal in any federal-question case. Plaintiffs therefore cannot obtain the relief they seek—removal of "potentially ineligible" voters or a mandate that they cast provisional ballots if they have not separately provided "the required HAVA information" (Compl. (D.E. 1-3) ¶94, pp.19-20)—without a judicial determination that: (1) the State Board violated HAVA, (2) the voters have not separately provided "the required HAVA information," and (3) that HAVA requires, or even *permits* the requested relief. A federal issue is thus "necessarily raised," *Gunn*, 568 U.S. at 258.

4

Plaintiffs also cite North Carolina General Statute §163-82.4(a)(11). Compl. (D.E. 1-3) ¶82. But that provision does not help them either, because it likewise simply incorporates HAVA's requirements. Specifically, the provision states that "[t]he form required by" §162-82.3(a) "shall request the applicant's … [d]rivers license number or, if the applicant does not have a drivers license number, the last four digits of the applicant's social security number." This state-law requirement manifestly implements HAVA's requirement that an application to register to vote in federal elections not "be accepted or processed by a State unless" it includes "the applicant's driver's license number" or (if the applicant lacks a valid driver's license or another identification number from North Carolina's Division of Motor Vehicles) "the last 4 digits of the applicant's social security number." 52 U.S.C. §21083(a)(5)(A)(i). Nor does plaintiffs' passing reference (*see* Compl. (D.E. 1-3) ¶71) to a "chilling effect on North Carolinians' right to vote in free and fair elections" under Article I, §10 of the North Carolina Constitution mask the federal nature of their claim. Such chilling, they allege, will occur only "[i]f [d]efendants do not remove ineligible voters from the state's voter rolls," *id.*—the action they claim HAVA mandates, *e.g.*, *id.* ¶58.

Plaintiffs' presentation of their putative state-law claims further confirms that those claims depend entirely on federal law. For example, the complaint alleges that defendants "should have taken immediate action to correct the accuracy of the state's voter rolls, a task *mandated by HAVA* and, *in turn*, state law." Compl. (D.E. 1-3) ¶58 (emphases added). Likewise, plaintiffs' request for relief asks that defendants be directed to (1) "ensure compliance with HAVA and, *in turn*, N.C. Gen. Stat. §163-82.11(c);" (2) "take all actions necessary to remedy their violations of state law and HAVA"; and (3) "ensure future compliance with state law and HAVA." *Id.* at 19-20 (emphasis added). Even plaintiffs' press release about this case admits that it is based on federal law. Indeed, the release does not even *mention* state law—instead accusing the Board of "violating [the] Help

5

America Vote Act (HAVA)." Ex. 1 (*Back-to-Back Lawsuits: RNC Sues North Carolina State Board of Elections*, RNC (Aug. 26, 2024), https://gop.com/press-release/back-to-back-lawsuits-rnc-sues-north-carolina-state-board-of-elections/). Thus, while plaintiffs tout the case in the media as an effort to remedy HAVA violations, they tell this Court that their case "raises no federal question," Br. (D.E. 38) p.4. The law does not (and this Court should not) countenance such conduct.

Finally, plaintiffs' assertion that HAVA "*is silent* on what to do if a state admits it violated HAVA but refuses to remedy the violation," Br. (D.E. 38) p.6, is both irrelevant and untrue. It is irrelevant because the Board has not admitted "it violated HAVA but refuses to remedy the violation," *id.* And it is untrue because HAVA is not "silent" on the matter. To the contrary, as set forth by defendants (D.E. 31 pp.4, 13) and the DNC (D.E. 48 at 19-22), both HAVA and the National Voter Registration Act affirmatively preclude the relief plaintiffs seek here, i.e., systematic removals of voters from the rolls within 90 days of a federal election. *See* 52 U.S.C. §§20507(c)(2)(A), 21083(a)(2)(A)(i), 21083(a)(2)(B)(ii). What HAVA *is* silent about is any private right of action for the relief plaintiffs seek—and *that* silence is another reason why (as explained in the DNC's response supporting dismissal) plaintiffs' complaint fails as a matter of law.

2. As to the second *Gunn* factor, the federal issue here is "actually disputed," 568 U.S. at 258. Again, the federal question is: When election officials register a voter whose registration form lacked a current, valid driver's license number or the last four digits of her social security number as required by 52 U.S.C. §21083(a)(5)(A)(i), does the State Board's obligation under 52 U.S.C. §21083(a)(2)(A) to "perform list maintenance with respect to the computerized list on a regular basis" require either that the voter be removed from the rolls or allowed to cast only a

provisional ballot? Plaintiffs say the answer is yes, defendants and the DNC say the answer is no. That is the essence, if not the entirety, of the dispute here.

3. The federal issue here is "substantial," *Gunn*, 568 U.S. at 258, as the relief that plaintiffs seek based on their reading of HAVA could cost tens if not hundreds of thousands of registered North Carolinians their fundamental right to vote (and have that vote counted) in the upcoming November 5 general election. Nor is the matter "fact bound" or "situation specific," Br. (D.E. 38) p.7. Plaintiffs seek an order requiring state election officials to remove registered voters from the rolls just before a federal election, based on plaintiffs' interpretation of HAVA. If their interpretation is correct, and if the relief they seek is permissible (i.e., not barred by federal law), that would have the potential to affect registered voters in every jurisdiction in the country.

4. Finally, this issue is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress," *Gunn*, 568 U.S. at 258. This fourth factor concerns "the appropriate balance of federal and state judicial responsibilities." *Id.* at 264 (quotation marks omitted). In *Gunn*, the Supreme Court deemed this factor to cut against federal jurisdiction because "States … have a special responsibility for maintaining standards among members of the licensed professions." *Id.* (quotation marks omitted). This case, by contrast, concerns statutes that safeguard Americans' right to vote in *federal* elections. HAVA, for example, provides that "[t]he computerized list [at issue here] shall serve as the official voter registration list for the conduct of all elections for Federal office in the State." 52 U.S.C. §21803(a)(1)(A)(viii). And the NVRA's 90-day removal ban covers the "90 days prior to … a[ny] … election for Federal office." *Id.* §20507(c)(2)(A). There is "no reason to suppose that Congress" intended to preclude federal courts from hearing litigation so centrally focused on the fundamental right to vote in federal elections. *Gunn*, 568 U.S. at 264.

## II. REMOVAL IS PROPER UNDER 28 U.S.C. §1443(2)

Even if a case does not arise under federal law, it may be removed by a defendant that "refus[ed] to do an[] act on the ground that [the act] would be inconsistent with" the defendant's "authority derived from any law providing for equal rights." 28 U.S.C. §1443(2). Although defendants removed under this provision (citing the NVRA's 90-day removal ban, D.E. 1 at 2), plaintiffs say §1443 does not apply, arguing that "[d]efendants have not claimed that they refused to enforce N.C. Gen. Stat. §163-82.11 because the statute discriminates on account of race or color." Br. (D.E. 38) p.10. That misunderstands §1443(2), which authorizes removal here because plaintiffs seek *relief* that would force the State Board to act in a manner inconsistent with federal law enacted expressly for the purpose of protecting equal civil rights. *See* D.E. 1 at 2-3.

The Supreme Court has held that the phrase "any law providing for … equal civil rights" in §1443 "must be construed to mean any law providing for specific civil rights stated in terms of racial equality." *Georgia v. Rachel*, 384 U.S. 780, 792 (1966), *quoted in Vlaming v. West Point School Board*, 10 F.4th 300, 309 (4th Cir. 2021). The NVRA is such a statute. It provides for a specific civil right—the "fundamental right" to "vote"—and prohibits "discriminatory and unfair registration laws and procedures" which "disproportionately harm … racial minorities." 52 U.S.C. §20501(a).

## III. SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE-LAW CLAIMS IS PROPER UNDER 28 U.S.C. §1367(a)

Even if plaintiffs' complaint could be read to raise more than its core HAVA claim, this Court, if it has original jurisdiction over any claim alleged in this action, could then exercise supplemental jurisdiction over all of plaintiffs' related claims. 28 U.S.C. §1367(a). Plaintiffs do not argue otherwise, and any such argument is thus forfeited, if not waived. *Grayson O Co. v. Agadir International LLC*, 856 F.3d 307, 316 (4th Cir. 2017).

8

## CONCLUSION

This Court should deny plaintiffs' motion to remand.

October 7, 2024                                    Respectfully submitted,

/s/ Seth P. Waxman | /s/ Jim W. Phillips, Jr.

SETH P. WAXMAN*
DANIEL S. VOLCHOK*
CHRISTOPHER E. BABBITT*
GARY M. FOX*
JOSEPH M. MEYER*
JANE KESSNER*
NITISHA BARONIA*
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
Phone: (202) 663-6000
Fax: (202) 663-6363
seth.waxman@wilmerhale.com
daniel.volchok@wilmerhale.com
christopher.babbitt@wilmerhale.com
gary.fox@wilmerhale.com
joseph.meyer@wilmerhale.com
jane.kessner@wilmerhale.com
nitisha.baronia@wilmerhale.com

* Local Rule 83.1(e) special appearance.

JIM W. PHILLIPS, JR.
N.C. BAR NO. 12516
SHANA L. FULTON
N.C. BAR NO. 27836
ERIC M. DAVID
N.C. BAR NO. 38118
WILLIAM A. ROBERTSON
N.C. BAR NO. 53589
JAMES W. WHALEN
N.C. Bar No. 58477
BROOKS, PIERCE, MCLENDON
   HUMPHREY & LEONARD, LLP
150 Fayetteville Street
1700 Wells Fargo Capitol Center
Raleigh, N.C. 27601
Phone: (919) 839-0300
Fax: (919) 839-0304
jphillips@brookspierce.com
sfulton@brookspierce.com
edavid@brookspierce.com
wrobertson@brookspierce.com
jwhalen@brookspierce.com