IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-00547

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEEE; and NORTH CAROLINA REPUBLICAN PARTY,<br><br>*Plaintiffs*,<br><br>vs.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS, et al<br><br>*Defendants*, | **MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS** |

# INTRODUCTION

Defendants'[1] Motion to Dismiss reveals nothing but the flaws in their defense. Rather than being contrite about their admitted failure to comply with the law in registering voters, Defendants double down on their do-nothing approach to cleaning up their own mess. In doing so, Defendants blame Plaintiffs,[2] and by extension the people of North Carolina, for Defendants' own failures to create a compliant voter registration form. As such, the equitable relief Defendants desire in the form of a dismissal pursuant to the doctrine of laches, is barred by their own unclean hands. Nor can Defendants prove any unreasonable delay on the part of the Plaintiffs in this action. Moreover, Defendants arguments that the case should be dismissed pursuant to Federal Rule of Civil

---

[1] "Defendants" refers to the State Board of Elections ("NCSBE") and its members Alan Hirsch, Jeff Carmon, Siobhan Millen, Stacy Eggers IV, and Kevin Lewis in their respective official capacities, and the NCSBE's Executive Director Karen Brinson Bell.
[2] "Plaintiffs" refers to the Republican National Committee ("RNC") and the North Carolina Republican Party ("NCGOP").

Procedure 12(b)(6) does nothing but support Plaintiffs' Motion for Remand because their arguments demonstrate that this Court lacks federal question jurisdiction.

## FACTUAL BACKGROUND

This lawsuit arises out of the NCSBE's unabashed failure to follow black letter law. It is undisputed that the law requires that applicants seeking to register to vote must provide either: (1) a driver's license number; or (2) the last four digits of their social security number before their registration form can be processed by the state. (Verified Compl. ¶29, 40; Defs. Br. p. 3). It is likewise undisputed that for an undetermined period of time, the NCSBE promulgated a voter registration form that failed to inform registrants that either their last four digits of their social security number or their driver's license number **must** be provided as part of the registration process. (Verified Compl. ¶48-51; Def. Br. pp. 5-6). No party disputes that this error was originally discovered by a third party—Ms. Carol Snow in or about October of 2023. (*Id*). It is estimated that this error infected approximately 225,000 voter registrations. (Verified Compl. ¶ 52). While Defendants issued a compliant voter registration form, shockingly, Defendants did nothing to attempt to cure these faulty registrations.

Ms. Snow's complaints continued into the summer of this year. At the NCSBE's June 17, 2024 meeting, the NCSBE denied Ms. Snow's request for relief, determining that North Carolina state law permits verification of voter identification through alternative means, and those alternative means were sufficient to satisfy the law. Plaintiffs promptly reached out to the NCSBE to understand the scope of the issue raised by Ms. Snow after becoming aware that the NCSBE refused to cure the problem. Unfortunately, Defendants refused to provide Plaintiffs with the information necessary to understand the scope of the NCSBE's abject failure to follow the law.

As a result, Plaintiffs filed their Verified Complaint in Wake County Superior Court on August 23, 2024, seeking a writ of mandamus and a permanent injunction arising from Defendants' violations of state law and the North Carolina Constitution. (Verified Compl. ¶¶ 77-96). Defendants' counsel accepted service of the Verified Complaint on August 27, 2024. On August 29, 2024 Plaintiffs filed a motion to expedite discovery and served a narrow set of discovery requests upon Defendants, seeking again the information requested earlier in the summer in order to understand the scope of the issue caused by the NCSBE's non-compliance. To date, Defendants have refused to respond to discovery. Twenty-five days later, on September 23, 2024, Defendants noticed their removal to this Court and then moved to dismiss.[3] In support of their dismissal, Defendants ask the Court for relief because of the lateness of the hour before the election, accusing Plaintiffs of playing games. (Def. Br. pp 8-9).

As described below, Defendants' dismissal arguments fail. The procedural history of this case, however, begs the question—if Defendants were on notice of its violation of the law as early as October of 2023, then why did they take no action to remedy the non-compliant voter registrations?

## ARGUMENT

**I. The Court Lacks Jurisdiction.**

At the outset, the Court must resolve the question of whether it has jurisdiction and issue a ruling on Plaintiffs' Motion to Remand before it can reach Defendants' Motion to Dismiss. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94-95 (1998) (declining to adopt the hypothetical jurisdiction doctrine and ordering issues of subject matter jurisdiction be reached before the merits).

---

[3] Plaintiffs filed a Motion to Remand and accompanying brief on October 1, 2024. [D.E. 37-38]

As the removing party Defendants have the burden to prove that subject matter jurisdiction exists. *Mayor of Balt. v. BP P.L.C.,* 31 F.4th 178, 197 (4th Cir. 2022). Defendants fail to meet that burden. Defendants' briefing conflates federal and state law on a variety of substantive issues to create a basis for federal jurisdiction. Defendants' claims that North Carolina law on laches and common law mandamus are the same as their federal counterparts are simply wrong. Similarly, claims brought under Article I, Section 19 of the North Carolina Constitution are not always the same as equal protection claims. Finally, it is well settled that Defendants' invocation of a federal defense (Br. at p. 18) under the NVRA cannot form the basis for federal jurisdiction. *Caterpillar Inc., v. Williams*, 482 U.S. 386, 392-93 (1987) ("it is now settled law that a case may not be removed to federal court on the basis of a federal defense"). This is true even when the defense is anticipated in the plaintiff's complaint, and even in circumstances (not present here) where both parties concede that the federal defense is the only question truly at issue. *Id.*; *see also Mayor & City Council of Baltimore v. BP P.L.C*., 31 F.4th 178, 198-99 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 1795, 215 L. Ed. 2d 678 (2023); *Badalato v. Wish to Give Prod., LLC*, No. 7:19-CV-66-FL, 2019 WL 3661164, at *4 (E.D.N.C. Aug. 6, 2019).

To the extent this Court finds that Defendants have met the minimum threshold of proving subject matter jurisdiction, which it should not, abstention is appropriate. As a general principle, "federal courts are obliged to decide cases within the scope of federal jurisdiction." *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). But even in circumstances where a court may exercise jurisdiction, there are certain instances when the United States Supreme Court has held that "the prospect of undue interference with state court proceedings counsels against federal relief." *Id.* (citation omitted). One such instance applicable here is *Pullman* abstention. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941).

*Pullman* abstention "is appropriate where there are unsettled questions of state law that may dispose of the case and avoid the need for deciding the constitutional question." *Meredith v. Talbot Cnty.*, 828 F.2d 228, 231 (4th Cir. 1987) (citations omitted). *Pullman* abstention is warranted when there is (1) "an unconstrued state statute" that "is susceptible of a construction by the state judiciary[,]" which (2) could "avoid in whole or in part the necessity for the federal constitutional adjudication, or at least materially change the nature of the problem." *Bellotti v. Baird*, 428 U.S. 132, 146-47 (1976) (quotations omitted).

Here, Defendants admit that that "no state or federal court has ever recognized a cause of actions for violations of [N.C. Gen. Stat. §163-82.11]." (Br. at p. 11). Both of Plaintiffs' causes of action, for mandamus and violation of Article I, Section 19 of the North Carolina constitution, are premised upon Defendants' refusal to comply with N.C. Gen. Stat. §163-82.11. (*See* Verified Compl. at ¶¶77-96). As such, this Court should abstain from determining these issues so that the state courts can resolve the scope of the North Carolina statute before further adjudication by federal courts. However, to the extent this Court might decide to exercise jurisdiction over one or more of Plaintiffs' claims, which it should not, North Carolina substantive law applies under well-established choice of law principles. *See, e.g., Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427-28 (1996); *Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 781-82 (2023).

**II.     Defendants' Laches Defense Fails.**

Laches is not a basis for dismissal of Plaintiffs' suit. Laches is "a rule of equity by which equitable relief is denied to one who has been guilty of unconscionable delay, as shown by surrounding facts and circumstances, in seeking that relief." *Harris & Gurganus, Inc. v. Williams*, 37 N.C. App. 585, 588, 246 S.E.2d 791, 794 (1978). The party asserting laches has the burden of proof. *Id.* Defendants fail to meet that burden of proof for several reasons. First, Defendants cite

only to the federal standard for laches, but ignore the fact that North Carolina's laches doctrine is different than its federal counterpart. Because Plaintiffs' claims were brought under state law, even if this court has jurisdiction, which it does not, the Court is bound to apply state substantive law. *Gasperini,* 518 U.S. at 427-28. Second, Defendants' entire theory of laches is predicated on the un-plead and faulty premise that Plaintiffs knew of Ms. Snow's complaints to the NCBSE in October of 2023. Third, Plaintiffs cannot seek an equitable defense because their own hands are unclean.

Plaintiffs cite to a threadbare federal standard that the elements of laches are met when a plaintiff shows "a lack of diligence in bringing its claim" and when "that lack of diligence has prejudiced the defendant." (Def. Br. p. 7 citing *White v. Daniel,* 909 F.2d 99, 102 (4th Cir. 1990)). Under North Carolina law the elements of laches are more robust. Specifically, under North Carolina law:

> To establish the affirmative defense of laches, our case law recognizes that 1) the doctrine applies where a delay of time has resulted in some change in the condition of the property or in the relations of the parties; 2) the delay necessary to constitute laches depends upon the facts and circumstances of each case; however, the mere passage of time is insufficient to support a finding of laches; 3) the delay must be shown to be unreasonable and must have worked to the disadvantage, injury or prejudice of the person seeking to invoke the doctrine of laches; and 4) the defense of laches will only work as a bar when the claimant knew of the existence of the grounds for the claim.

*Johnson v. N. Carolina Dep't of Cultural Res.*, 223 N.C. App. 47, 55, 735 S.E.2d 595, 600 (2012) quoting *MMR Holdings, LLC v. City of Charlotte,* 148 N.C. App. 208, 209–10, 558 S.E.2d 197, 198 (2001).

At base, Defendants have a duty to prove an unreasonable delay. *Id.* But Defendants' entire theory of delay is predicated on the faulty premise that Plaintiffs knew of Ms. Snow's complaints to the NCBSE in October of 2023. To be clear, Ms. Snow is not a Plaintiff in this case, nor is she

an employee or agent of Plaintiffs. While the Complaint acknowledges that Ms. Snow raised this issue first with the NCSBE in October of 2023, Defendants ask this Court to take a leap of faith (outside of the allegations of the Complaint) and impute Ms. Snow's knowledge from October of 2023 to Plaintiffs.[4] Notably, Defendants fail to present the Court with any authority that would support such a leap of faith. Rather, it is undisputed that when Plaintiffs became aware that NCSBE would not resolve this issue, they properly first sought to resolve the issue with the NCSBE directly. When that failed, Plaintiffs were left with no choice but to seek emergency relief. Moreover, delay has not caused the relationship between the parties to cease. To the extent Ms. Snow's knowledge can be imputed to Plaintiffs (which it cannot), the relationship has not been altered. The NCSBE is still a state agency that failed to comply with black letter law providing basic voter integrity safeguards which were supposed to be implemented **before** the NCSBE processed voter registration applications. Plaintiffs are still organizations attempting to ensure that the NCSBE not only follows black letter law going forward, but also to ensure NCSBE cures its past failure to do so. As such, there is no change in the relations of the parties. *See Johnson,* 735 S.E.2d 595, 600 (N.C. App. 2012) (holding there was no relationship change between the parties where one party died because the descendants possessed the same rights in the Collection).

Nor can Defendants show that Plaintiffs acted with unreasonable delay. First, all cases cited by Defendants in supported of the allegedly unreasonable delay involved a delay of the party who ultimately brought suit. Here, that is not the case, and as discussed above, Defendants cannot impute Ms. Snow's knowledge to Plaintiffs. To the extent Defendants argue on reply that Plaintiffs delay of a few weeks is unreasonable, this too misses the mark. Upon receiving and verifying

---

[4] That Plaintiffs know now that Ms. Snow raised this issue in October of last year is immaterial. What matters is when Plaintiffs learned of this issue and whether any delay (if there was even a delay at all) was unreasonable.

information regarding this issue, Defendants promptly contacted the NCSBE. That the NCSBE failed to take any steps to mitigate its failure to follow the law after the issue was raised not once, but twice, can only speak to the unreasonableness of the NCSBE's own conduct and need for mandamus, not an unreasonable delay on the part of Plaintiffs.

Any delay here is materially different than the time periods in the cases cited by Plaintiffs. In *White,* the delay was seventeen years. 909 F.2d at 100-101. In *Perry v. Judd,* the delay was four months. 471 F. App'x 219, 224 (4th Cir. 2012). In *Voters Organized for the Integrity of Elections v. Balt. City Elections Bd.,* 214 F. Supp. 3d 448, 455 (D. Md. 2016), the issue was not just the timeliness of the complaint, but also the failure to seek an expedited basis for relief, which Plaintiffs did here. And finally, in *Pierce,* the plaintiffs not only delayed in bringing suit, but raised no objections during the legislative process (despite their being several avenues for them to do so) and failed to put the Defendants on notice of the suit in the time between the passage of the plans and the filing of the suit and motion for preliminary injunction. *See Pierce v. N. Carolina St. Board of Elections*, 97 F.4th 194, 222 (4th Cir. 2024). Finally, Defendants' own actions here cut against their arguments of delay. Instead of moving to dismiss in state court, Defendants waited nearly the full time allotted to them under law to remove to federal court, and then moved to dismiss, tying this case up in extra weeks of litigation.

Finally, Defendants are barred from using an equitable defense to obtain dismissal because of their own unclean hands. It is well settled that "he who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co*., 324 U.S. 806, 814–15 (1945). *See also Brissett v. First Mount Vernon Indus. Loan Ass'n,* 233 N.C. App. 241, 255, 756 S.E.2d 798, 808–09 (2014) ("The doctrine of clean hands is an equitable defense which prevents recovery where the party seeking relief comes into court with unclean hands."); *Worldcom, Inc. v. Boyne,*

8
Case 5:24-cv-00547-M-RJ    Document 50    Filed 10/07/24    Page 8 of 16

68 F. App'x 447, 451 (4th Cir. 2003*)* ("The doctrine of unclean hands prevents a plaintiff from obtaining equitable relief if the plaintiff has been 'guilty of any inequitable or wrongful conduct with respect to the transaction or subject matter sued on.'" (internal quotation omitted)). Defendants' hands are far from clean. Defendants admit (Br. pp. 5-6) that this issue was raised by Ms. Snow in October of 2023. Defendants further admit that the NCSBE changed the voter registration form to be compliant with the law after receiving Ms. Snow's complaint. (*Id.*). Finally, Defendants admit that Ms. Snow continued to object to the adequacy of that change (*Id.*).

Put simply, Defendants knew they broke the law, cured the non-compliant registration regime after several months on a going-forward basis, but did **nothing** to address the adequacy of those who registered under the non-compliant regime. Defendants had months to address these registration concerns and willfully failed to do so, ultimately deciding at its June 17, 2024 meeting that the supposed state law process for verification of voter identification through alternate means is sufficient. Nothing prevented the NCSBE from reaching out to the individuals who registered under the non-compliant regime to get the required information and cure any deficiency. Now, in support of their argument that laches bars Plaintiffs claims, the NCSBE claims it's too late to address the non-compliant registrations. But it is precisely because of the NCSBE's refusal to clean up a mess of its own making that puts the parties, and the Court, in this time crunch.[5]

### III. The Complaint States Claims Upon Which Relief Can (and Should) Be Granted.

Defendants' arguments seeking dismissal pursuant to Rule 12(b)(6) do nothing but prove the Court should grant Plaintiffs' Motion to Remand. In evaluating a motion to dismiss under Rule

---

[5] Even assuming arguendo the federal standard applies, it is clear that Plaintiffs quickly raised this issue with the NCSBE when they became aware of, and promptly filed suit when an out of court resolution proved fruitless. Moreover, any "prejudice" Defendants claim as a result of this suit is more properly attributed to their own failure to cure a known issue in a timely manner.

12(b)(6), the court's inquiry focuses on whether the complaint, viewed in the light most favorable to the plaintiff, presents sufficient factual matter to establish a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this determination, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court must refrain from dismissing a complaint unless it is "beyond doubt" that the plaintiff cannot prove any set of facts that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Here it is clear that Plaintiff can prove facts that entitle them to relief. In fact, it is undisputed that Defendants failed to comply with the law. The only question is how to remedy that abject failure.

## A. Plaintiffs Adequately Stated a Claim Under North Carolina Common Law for Mandamus Relief.

Plaintiffs' mandamus action is brought under North Carolina common law. The North Carolina Supreme Court has made clear that North Carolina law treats mandamus actions differently than federal courts in *Committee to Elect Dan Forest v. Employees Political Action Committee*, 376 N.C. 558, 569, 853 S.E.2d 698, (2021) (discussing North Carolina's incorporation of "the prerogative writ of mandamus" through the common law). N.C. Gen. Stat. §4-1 ("Common law declared to be in force"). Indeed, the North Carolina Supreme Court has held that "[s]ince 1776, North Carolina law contemplated that the writ of mandamus and an action in the nature of the writ of quo warranto were available without any showing of a personal stake in the litigation, continuing a legacy that originated in the earliest days of the common law." *Comm. to Elect Dan Forest*, 376 N.C. at 591, 853 S.E.2d at 722. Therefore, not only must North Carolina's common law mandamus rules apply, but the federal standards cited by Defendants are inapplicable here.

Additionally, the one state court case Defendants cite, *In re T.H.T.*, 362 N.C. 446, 665 S.E.2d 54 (2008), involved a mandamus action brought on appeal pursuant to Rule 22 of the North

Carolina Rules of Appellate Procedure when a trial court failed to adhere to statutory timelines. (Defs. Br. p. 16). Notably, it is questionable whether *In re T.H.T.* is still good law in the wake of *Committee to Elect Dan Forest*. Moreover, Plaintiffs do not bring suit under N.C. R. App. P. 22. North Carolina's common law mandamus rules only require proof that a public official defendant has failed to perform a specified official duty imposed by law. *Comm. to Elect Dan Forest*, 376 N.C. at 574, 853 S.E.2d at 711 (citing *Carr v. Coke*, 116 N.C. 223, 223, 22 S.E. 16, 16 (1985)).

Applying the correct law, Plaintiffs have stated a claim that § 163-82.11(c) requires the statewide computerized voter registration list and database to meet the HAVA requirements, which in turn require an applicant to present either a driver's license number or the last four digits of their SSN. Defendants admit this duty in their Memorandum in Support of their Motion to Dismiss. That is all that is required under North Carolina law. *Comm. to Elect Dan Forest*, 376 N.C. at 574, 591, 853 S.E.2d at 711, 722; *Carr v. Coke*, 116 N.C. 223, 223, 22 S.E. 16 (1895). There is no requirement of a "clear right" and "alternative route to relief" and as such those prongs simply do not apply[6].

Nevertheless, even under the federal standards, Defendants have failed to state how Plaintiffs' factual allegations are lacking. Instead, Defendants misconstrue the burden of proof and attack remedies that are plainly viable, such as provisional ballots. It is undisputed that North Carolinians can vote provisionally, N.C. Gen. Stat. § 163-166.12(e), giving impacted individuals time to present the missing required information. And Defendants' arguments (Br. p. 10) that this would be a "Herculean administrative task" falls flat, as Defendants' have been on notice of this "administrative task" for over a year. That the "administrative task" is now "Herculean" is the

---

[6] Even if the Court were to erroneously apply the federal mandamus standard, whether there is a "clear right" for political parties to enforce §163-82.11(c) is a matter of first impression and, again, interpretation of that statute is best left to the discretion of state courts under *Pullman* abstention.

direct result of Defendants refusal to follow the law, and their refusal to provide notice to impacted registrants over the course of the last year. This is the *exact* reason mandamus is both needed and appropriate.

### B. Plaintiffs Also State a Claim Under Article I, Section 19 of the North Carolina Constitution.

As with Plaintiffs' mandamus claim, Defendants again seek to construe a state law claim as a federal one in a not-so-veiled attempt at forum shopping. While the North Carolina Supreme Court's analysis of Article I, Section 19 of the North Carolina Constitution "generally follows" the corresponding federal clause, *see Blankenship v. Bartlett*, 363 N.C. 518, 522, 681 S.E. 759, 762 (2009), state courts are not bound by the federal court cases that Defendants cite. *See, e.g., Libertarian Party of N. Carolina v. State*, 365 N.C. 41, 47, 707 SE.2d. 199, 203 (2011); *Northampton Cnty. Drainage Dist. No. One v. Bailey,* 326 N.C. 742, 745–47, 392 S.E.2d 352, 355–56 (1990). (Defs. Br. at 19-20).

Moreover, Defendants' argument that N.C. Gen. Stat. § 163-166.12 provides safeguards "to ensure that voters who fail to provide a driver's license or social security number do not vote illegally" (Def. Br. p. 18) is false. N.C. Gen. Stat. § 163-166.12(d) states that:

> Regardless of whether an individual has registered by mail or by another method, if the individual has provided with the registration form a driver's license number or last four digits of a Social Security number but the computer validation of the number as required by G.S. 163-82.12 did not result in a match, and the number has not been otherwise validated by the board of elections, in the first election in which the individual votes that individual shall submit with the ballot the form of identification described in subsection (a) or subsection (b) of this section, depending upon whether the ballot is voted in person or absentee.

Setting aside the serious question of whether an individual who fills out a voter registration application that fails to comply with the law is lawfully "registered to vote" the statute clearly contemplates that an individual who *has* provided a license number or the last four of digits of his

or her SSN, but has the match fail, has an opportunity to cure that deficiency by presenting other identification.[7] However, the statute does not contemplate a situation like this one, where no social security number or drivers' license number was provided because the form promulgated by the NCSBE violated the law. Crucially, the entirety of N.C. Gen. Stat. § 163-166.12 is premised on NCSBE following the law and create a compliant form requiring applicants to provide their identification information. Defendants' willful refusal to remedy its violation of the law and contact individuals who registered under the non-complaint registration scheme is, thus, the proper subject matter of mandamus.

Moreover N.C. Gen. Stat. §163-166.12(e) provides the right for an individual to vote provisionally. This is the precise relief Plaintiffs seek in this action. (Prayer for Relief ¶2). As such, Defendants' *Purcell* arguments, which rest upon the idea that it is too late to change laws before the election also fail. Plaintiffs seek not to change the law, but enforce existing law and have individuals who may be subject to the remedy process provide information that should have been required on their voter registration application. And any argument about the lateness of this request is barred by Defendants' own unclean hands on the subject. This is more than enough for Plaintiffs' state law constitution claim to survive Defendants' motion to dismiss.

## CONCLUSION

For these reasons, should this Court find that subject matter jurisdiction exists in the first instance, then Plaintiff's Motion to Dismiss pursuant to Rule 12(b)(6) should be denied in its entirety.

---

[7] It is the Plaintiffs' position that, at a minimum, any individual who did not provide a driver's license number or the last four digits of his or her SSN because of the NCSBE's non-compliant registration form is not "[a]n individual who has registered to vote" under N.C. Gen. Stat. §163-166.12 because they failed to complete the requirements of registration under the law.

13
Case 5:24-cv-00547-M-RJ   Document 50   Filed 10/07/24   Page 13 of 16

Respectfully submitted, this the 7th day of October, 2024.

        **NELSON MULLINS RILEY &**
        **SCARBOROUGH LLP**

        By: /s/ Phillip J. Strach
        Phillip J. Strach
        North Carolina State Bar no. 29456
        Jordan A. Koonts
        North Carolina State Bar no. 59363
        301 Hillsborough Street, Suite 1400
        Raleigh, North Carolina 27603
        Ph: (919) 329-3800
        phil.strach@nelsonmullins.com
        jordan.koonts@nelsonmullins.com

        **BAKER DONELSON BEARMAN,**
        **CALDWELL & BERKOWITZ, PC**

        By: /s/ John E. Branch, III
        John E. Branch, III
        North Carolina State Bar no. 32598
        Thomas G. Hooper
        North Carolina State Bar no. 25571
        2235 Gateway Access Point, Suite 220
        Raleigh, NC 27607
        Ph: (984) 844-7900
        jbranch@bakerdonelson.com
        thooper@bakerdonelson.com

        *Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(f)(3)

I hereby certify that this memorandum of law is in compliance with Local Rule 7.2(f)(3) as the brief, including headings, footnotes, citations, and quotations, contains no more than 8,400 words as indicated by the computer's word processing program.

This, the 7th day of October, 2024.

/s/ Phillip J. Strach
Phillip J. Strach
*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such to all counsel of record in the above-captioned matter.

This, the 7th day of October, 2024.

        **NELSON MULLINS RILEY &**
        **SCARBOROUGH LLP**

        By: /s/ Phillip J. Strach
        Phillip J. Strach
        North Carolina State Bar no. 29456
        Jordan A. Koonts
        North Carolina State Bar no. 59363
        301 Hillsborough Street, Suite 1400
        Raleigh, North Carolina 27603
        Ph: (919) 329-3800
        phil.strach@nelsonmullins.com
        jordan.koonts@nelsonmullins.com