UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-cv-547

REPUBLICAN NATIONAL COMMITTEE; and )
NORTH CAROLINA REPUBLICAN PARTY, )
                                  )
               Plaintiffs, )
v. )
                                  )
NORTH CAROLINA STATE BOARD OF )
ELECTIONS; KAREN BRINSON BELL, in )
her official capacity as Executive Director of )
the North Carolina State Board of Elections; )
ALAN HIRSCH, in his official capacity as )
Chair of the North Carolina State Board )         **STATE BOARD DEFENDANTS'**
of Elections; JEFF CARMON, in his official )         **RESPONSE TO PLAINTIFFS'**
capacity as Secretary of the North Carolina )         **MOTION TO REMAND**
State Board of Elections; STACY EGGERS )
IV, KEVIN N. LEWIS, and SIOBHAN )
O'DUFFY MILLEN, in their official capacities )
as members of the North Carolina State Board )
of Elections, )
                                  )
              Defendants, )
                                  )
and )
                                  )
THE DEMOCRATIC NATIONAL COMMITTEE, )
                                  )
              Intervenor-Defendant. )

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION .......................................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 3

    A.  Statutory Background. ..................................................................................... 3

    B.  Procedural History. ......................................................................................... 4

ARGUMENT .................................................................................................................. 6

    I.  Legal Standard .................................................................................................. 6

    II.  Removal Is Proper Because Plaintiffs' Claims Necessarily Raise a Disputed
        and Substantial Federal Question and Therefore Arise Under Federal Law. .................... 6

        A.  The Court necessarily must construe HAVA to resolve Plaintiffs' claims. ................. 7

        B.  The State Board disagrees with Plaintiffs' construction of HAVA. ........................... 9

        C.  The proper construction of HAVA is a substantial federal question. ........................ 10

        D.  Construing HAVA in federal court is consistent with Congress's division
            of labor between federal and state courts. ................................................................. 12

    III.  Removal Is Proper Because Plaintiffs Are Suing the State Board for Refusing
        to Take Acts that Are Inconsistent with Federal Civil Rights Laws. .............................. 13

CONCLUSION.............................................................................................................. 17

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(f)(3) ......................................... 19

CERTIFICATE OF SERVICE ........................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Arcia v. Fla. Sec'y of State*,
  772 F.3d 1335 (11th Cir. 2014) ...................................................................... 14

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
  489 U.S. 141 (1989) .......................................................................................... 11

*Cavanagh v. Brock*,
  577 F. Supp. 176 (E.D.N.C. 1983) ................................................................. 16

*City of Greenwood v. Peacock*,
  384 U.S. 808 (1966) .......................................................................................... 16

*Common Cause v. Lewis*,
  358 F. Supp. 3d 505 (E.D.N.C. 2019) ........................................................... 16

*First Fed. Sav. & Loan Ass'n v. Baker*,
  860 F.2d 135 (4th Cir. 1988) ............................................................................ 8

*Georgia v. Rachel*,
  384 U.S. 780 (1966) .......................................................................................... 15

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005) ...................................................................... 1, 7, 9, 11, 12

*Gunn v. Minton*,
  568 U.S. 251 (2013) .......................................................................................... 11

*In re T.H.T.*,
  362 N.C. 446, 665 S.E.2d 54 (2008) ................................................................. 8

*Jackson v. Riddell*,
  476 F. Supp. 849 (N.D. Miss. 1979) ............................................................... 17

*King v. Marriott Int'l, Inc.*,
  337 F.3d 421 (4th Cir. 2003) ............................................................................. 6

*N.C. State Conf. of NAACP v. Bipartisan Bd. of Elections & Ethics Enf't*,
  No. 1:16CV1274, 2018 WL 3748172 (M.D.N.C. Aug. 7, 2018) .................. 14

*North Carolina ex. rel. N.C. Dep't of Admin. v. Alcoa Power Generating, Inc.*,
  853 F.3d 140 (4th Cir. 2017) (amended) ......................................................... 7

*O'Keefe v. N.Y.C. Bd. of Elections*,
  246 F. Supp. 978 (S.D.N.Y. 1965) ................................................................. 15

*Old Dominion Elec. Coop. v. PJM Interconnection, LLC*,
　24 F.4th 271 (4th Cir. 2022) ........................................................................ 7

*Smith v. Winter*,
　717 F.2d 191 (5th Cir. 1983) ...................................................................... 17

*Strawn v. AT & T Mobility LLC*,
　530 F.3d 293 (2008) ...................................................................................... 6

*Vlaming v. W. Point Sch. Bd.*,
　10 F.4th 300 (4th Cir. 2021) ...................................................................... 14

*Whatley v. City of Vidalia*,
　399 F.2d 521 (5th Cir. 1968) ...................................................................... 15

**Statutes**

28 U.S.C. § 1331 ....................................................................................... 7, 12

28 U.S.C. § 1441 ............................................................................... 1, 2, 6, 13

28 U.S.C. § 1443 ................................................................................... passim

52 U.S.C. § 10307 ......................................................................................... 16

52 U.S.C. § 20501 ..................................................................................... 4, 15

52 U.S.C. § 20507 ............................................................................... 4, 13, 14

52 U.S.C. § 21083 ......................................................................... 3, 4, 9, 12

52 U.S.C. § 21111 ......................................................................................... 12

Help America Vote Act of 2002, Pub. L. No. 107-252, 116 Stat. 1666 ...................................... 11

N.C. Gen. Stat. § 163-82.11 ............................................................ 2, 5, 8, 12, 15

**Constitutional Provision**

U.S. Const., art. III, § 2 ................................................................................. 7

**Other Authority**

S. Rep. 103-6, S. Rep. No. 6, 103rd Cong., 1st Sess. 1993, 1993 WL 54278 (Leg. Hist.) .......... 15

# INTRODUCTION

Plaintiffs' Complaint repeatedly alleges that the State Board is engaged in "ongoing violations of . . . federal law"—specifically, the Help America Vote Act ("HAVA"). Compl. (D.E. 1-3) ¶ 6.[1] Plaintiffs now attempt to downplay their reliance on federal law because they would much prefer to proceed in state court. In particular, Plaintiffs emphasize that their Complaint "is devoid of *any* causes of action arising under HAVA or any federal law," and instead raises only two state-law claims. Remand Mem. (D.E. 38) at 3-4. True enough, but not dispositive. Federal courts have developed doctrines to ensure that plaintiffs cannot artfully plead away federal jurisdiction when their claims necessarily turn on the construction of federal law. Specifically, federal courts retain jurisdiction to consider a plaintiff's state-law claims when those claims necessarily raise a substantial and disputed federal question. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (clarifying the tests for removal under 28 U.S.C. § 1441(a)).

Here, the substantial federal-question doctrine suffices to defeat Plaintiffs' attempt to avoid federal court. Plaintiffs' "state-law" claims arise from an alleged violation of a state statute that is titled "Compliance with Federal Law" and whose sole function is to require the State Board to implement certain provisions of HAVA. Compl. ¶¶ 77-88, 90-93 (citing N.C. Gen. Stat.

---

[1] *See also* Compl. ¶ 5 (alleging that the State Board "violated HAVA"); Compl. ¶ 9 (alleging that the State Board's refusal to purge certain voters or have those voters cast a provisional ballot is a "violation of HAVA"); Compl. ¶ 10 (alleging that the State Board "violated federal law"); Compl. ¶ 15 (claiming organizational standing based on the State Board's alleged "violations of HAVA"); Compl. ¶ 16 (claiming that Plaintiff North Carolina Republican Party is harmed by the State Board's alleged "ongoing HAVA and state law violations"); Compl. ¶ 47 (alleging that the State Board "wholly failed to uphold" "both state and federal law"); Compl. ¶ 65 (alleging the State Board "violated both state and federal law"); Compl. ¶ 68 (alleging that the State Board "contraven[ed] . . . both federal and state law"); Compl., Prayer for Relief ¶ 2 (asking the Court to remedy the State Board's alleged "violations of state law and HAVA").

§ 163-82.11 (c)). Unsurprisingly, determining whether the State Board violated this "Compliance with Federal Law" statute will require this Court to construe federal law.

Moreover, the State Board and Plaintiffs disagree about how to construe HAVA. Deciding whose reading is correct is a task best entrusted to federal courts. After all, imposing uniformity in federal elections was one of Congress's main reasons for passing HAVA. Diverse—and potentially divergent—state-court interpretations of HAVA threaten that uniformity, not to mention the ability of voters across the country to exercise one of their most fundamental rights. Because Plaintiffs' Complaint necessarily raises a substantial and disputed federal question, the Complaint arises under federal law. Accordingly, this Court should deny Plaintiffs' motion to remand.

Even if the Court disagrees that Plaintiffs' claims arise under federal law, the State Board's removal was nevertheless proper. Plaintiffs' Complaint challenges the State Board's refusal to remove a quarter of a million voters in the middle of the general election. The State Board is refusing to conduct such a purge because doing so would violate the National Voter Registration Act ("NVRA"). Congress has made clear that state officials who, like the State Board here, refuse to take an action because doing so would run afoul of a civil rights law are entitled to a federal forum. 28 U.S.C. § 1443(2). Thus, § 1443(2) is an independent basis for the State Board's removal.

Plaintiffs chose to premise their Complaint on allegations that the State Board violated federal law and to demand that the State Board take actions prohibited by federal civil rights law. Those choices subject Plaintiffs to this Court's jurisdiction under both § 1441 and § 1443. The Court should therefore deny their motion to remand.

## STATEMENT OF FACTS

### A.    Statutory Background

Section 303 of HAVA instructs States to gather certain identification information from individuals as part of the voter registration process. *E.g.*, 52 U.S.C. § 21083(a)(4)(A), (a)(5)(A). For instance, States are not to "accept[ ] or process[ ]" a voter-registration application "unless the application includes" either an applicant's driver's license number or the last four digits of her social security number. *Id.* § 21083(a)(5)(A)(i). If an applicant does not have a driver's license or social security number, States must assign the applicant an identification number. *Id.* § 21083(a)(5)(A)(ii).

Relatedly, HAVA imposes certain requirements on voters who register by mail the first time they vote in a federal election in the jurisdiction. Before those individuals can cast a ballot, whether by mail or in person, they must provide either "current and valid photo identification" or an official document like a bank statement that verifies the voter's name and address. *Id.* § 21083(b)(2)(A)(i)-(ii). Voters who include a driver's license or social security number on their registration application are exempt from this requirement, so long as the State is able to validate the number provided. *Id.* § 21083(b)(3)(B).

HAVA also tasks the "chief State election official" in each State with "implement[ing], in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list." *Id.* § 21083(a)(1)(A). State elections officials are then required to "perform list maintenance . . . on a regular basis." *Id.* § 21083(a)(2)(A). Voters may be removed, among other reasons, based on "felony status" or because they have died. *Id.* List maintenance must "be conducted in a manner that ensures that . . . the name of each registered voter appears in the computerized list [and] only voters who are not registered or who are not eligible to vote are removed." *Id.* § 21083(a)(2)(B).

If elections officials remove any voters, HAVA requires they do so "in accordance with the provisions of the National Voter Registration Act of 1993," a federal law that Congress enacted to eliminate voter purges that disproportionately disenfranchise racial minorities on the eve of an election. *Id.* § 21083(a)(2)(A)(i); *see id.* § 20501 (a)(3). The NVRA provides for the removal of ineligible voters from the rolls in specific circumstances, but demands that all systematic removals be completed "not later than 90 days prior to the date of a primary or general election for Federal office." *Id.* § 20507 (c)(2)(A). This election cycle, the NVRA cut-off was August 7, 2024.

## B. Procedural History

When the State Board designed its voter registration form in the wake of HAVA's passage, it failed to make clear that voters with a driver's license or social security number needed to include one of those numbers on the registration form. Compl. ¶ 50. Plaintiffs estimate that roughly 225,000 North Carolinians registered to vote using this form without providing either number. Compl. ¶ 52.

The State Board was alerted to the error in the registration form by a complaint filed by Ms. Carol Snow on October 6, 2023. Compl. ¶¶ 48-49. The State Board considered the complaint at its November 28, 2023 meeting. Compl. ¶ 51. On December 6, 2023, the State Board ordered that the form be changed to indicate that voters must provide either a driver's license or the last four digits of their social security number or check a box indicating that they do not have such numbers. Compl. ¶¶ 42, 50, 51, 54. The State Board declined, however, to take any action with respect to voters who had already been registered. Compl. ¶ 55. The State Board noted that, consistent with HAVA, "any voter who did not provide a driver's license number or the last four digits of a Social Security number would have had to provide additional documentation to prove their identity before being allowed to vote." Compl. ¶ 51 n.4 (citing the

State Board's Dec. 2023 Order at 4-5). The State Board thus had no reason to believe that the error in the form had resulted in any ineligible voters being allowed to vote. Compl. ¶ 51 n.4 (citing Dec. 2023 Order at 4-5). HAVA, the State Board further explained, did not authorize, much less require, action to remove eligible voters. Compl. ¶ 51 n.4 (citing Dec. 2023 Order at 4).

On August 23, 2024, more than eight months after the State Board's December 6, 2023 Order, Plaintiffs filed their Complaint in North Carolina Superior Court for Wake County. By that point, Election Day was just 74 days away, and voting by mail was set to begin in a matter of weeks.

Plaintiffs allege that the State Board is violating N.C. Gen. Stat. § 163-82.11(c), and demand a writ of mandamus ordering the State Board to come into compliance. *E.g.*, Compl. ¶¶ 77-88, 91-93. They also assert, without explanation, that the State Board's alleged violation of § 163-82.11(c) runs afoul of Article I, Section 19 of the North Carolina Constitution. Compl. ¶¶ 89-96. Section 163-82.11(c) is titled "Compliance with Federal Law" and requires the State Board to "update the statewide computerized voter registration list and database to meet the requirements of section 303(a) of the Help America Voter Act of 2002."

To remedy the State Board's alleged violation of HAVA, Plaintiffs ask this Court to order the State Board to "identify[] all ineligible registrants and remov[e] them from the state's voter registration lists." Prayer for Relief ¶ 2. Alternatively, Plaintiffs request that the Court direct the State Board to require all individuals who submitted the pre-December 2023 registration form without a driver's license or social security number "to cast a provisional ballot in upcoming elections pending Defendants' receipt and confirmation" of this information. Prayer for Relief ¶ 2.

Plaintiffs served their Complaint on the State Board on August 27, 2024. Although the Complaint insists that Plaintiffs' allegations demand "immediate action[]," including relief by September 6, 2024 (a date that has long since passed), Compl. ¶ 76, Prayer for Relief ¶ 2, Plaintiffs declined to file a motion for a temporary restraining order, preliminary injunction, or other emergency relief. Instead, Plaintiffs filed a single motion for expedited discovery.

The State Board removed this case from North Carolina Superior Court for Wake County to this Court on September 23, 2024. D.E. 1. More than a week later, and after the State Board filed a motion to dismiss Plaintiffs' Complaint, *see* D.E. 30, Plaintiffs filed an "emergency" motion to remand. D.E. 37.

## ARGUMENT

### I.     Legal Standard

Federal law allows a defendant to remove certain claims originally brought in state court into federal court. *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 424 (4th Cir. 2003). A defendant may remove nearly any claim that a federal district court would have original jurisdiction over. 28 U.S.C. § 1441(a). Additionally, a defendant who is a state official may remove a claim that is based on the official's refusal to take an act that would be inconsistent with a federal law providing for equal rights. 28 U.S.C. § 1443(2). The defendant bears the burden of demonstrating that removal is proper. *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 296-97, 299 (2008) (reversing district court's order remanding a case to state court).

### II.    Removal Is Proper Because Plaintiffs' Claims Necessarily Raise a Disputed and Substantial Federal Question and Therefore Arise Under Federal Law.

Removal of Plaintiffs' Complaint is proper under 28 U.S.C. § 1441(a). With a few exceptions not relevant here, § 1441(a) allows a defendant to remove any claim over which a federal district court would have original jurisdiction. Federal district courts have original

jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* § 1331; *see also* U.S. Const., art. III, § 2, cl. 1.

Claims "arise under" federal law in several ways. A suit obviously arises under federal law when federal law supplies the plaintiff's cause of action. *Old Dominion Elec. Coop. v. PJM Interconnection, LLC*, 24 F.4th 271, 279 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 87 (2022). But a suit that contains only state-law claims can also "arise under" federal law, so long as vindication of the alleged state-law right "turns on some construction of federal law." *North Carolina ex. rel. N.C. Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) (amended) (cleaned up, citation omitted). Indeed, it is just "common[]sense" that federal courts "ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Grable*, 545 U.S. at 312.

Under this second test (sometimes called "the *Gunn-Grable* framework" in this circuit), "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal state balance approved by Congress." *Old Dominion*, 24 F.4th at 280 (citation omitted). Applying that test here reveals that Plaintiffs' state-law claims turn on a substantial federal question and therefore arise under federal law.

A.     **The Court necessarily must construe HAVA to resolve Plaintiffs' claims.**

Plaintiffs' claims necessarily raise a federal issue. A state-law claim necessarily raises a federal issue when one or more elements of the state-law claim "rise[s] or fall[s] on the resolution of a question of federal law." *Id.* (citation omitted). As Plaintiffs themselves concede in their Complaint, both of their claims turn on a determination of what HAVA requires of the State Board. Compl. ¶ 31 (explaining that "it is important to review what [section 303(a) of HAVA] requires of Defendants" to understand Plaintiffs' state-law claims).

Plaintiffs' first claim asks this Court to issue a writ of mandamus to remove, en masse, any voters who were registered without providing a driver's license or social security number or to require those voters "to cast a provisional ballot in upcoming elections pending Defendants' receipt and confirmation of the required HAVA information." Prayer For Relief ¶ 2. To prevail on this mandamus claim, Plaintiffs must show, among other things, that they have a "clear right" to relief and that the State Board "has a clear duty to do the particular act requested." *First Fed. Sav. & Loan Ass'n v. Baker*, 860 F.2d 135, 138 (4th Cir. 1988); *see also In re T.H.T.*, 362 N.C. 446, 453, 665 S.E.2d 54, 59 (2008) (same, state law).[2]

Plaintiffs claim that N.C. Gen. Stat. § 163-82.11(c) imposes this "clear duty" and supplies their "clear right" to relief. In their view, that state law compels the State Board to remove eligible voters who did not provide a driver's license or social security number or force them to vote provisionally, and entitles Plaintiffs to a court order commanding the State Board to remove voters from the rolls. *See* Compl. ¶ 85, Prayer for Relief ¶ 2. But § 163-82.11(c) merely requires the State Board to "update the statewide computerized voter registration list and database to meet the requirements of section 303(a) of the Help America Vote Act of 2002." To determine the scope of any rights that § 163-82.11 grants, or any duty that it imposes, the Court must construe HAVA.

Plaintiffs' ill-defined state-constitutional claim would also seem to depend on a construction of HAVA. Though the precise nature of Plaintiffs' claim is unclear, Plaintiffs appear to be making a vote-dilution argument. They allege that the State Board failed to

---

[2] Even if Plaintiffs are correct that they need only show that the State Board failed to perform an official duty imposed by law, it is *federal* law they claim imposed the official duty on the State Board. *See* Pls.' Resp. to Defs.' Mot. to Dismiss (D.E. 50) at 11 (asserting that "HAVA . . . require[s] an applicant to present either a driver's license number or the last four digits of their SSN").

"maintain the state's voter rolls in a manner compliant with Section 303(a) of HAVA" by refusing to remove voters who registered using a form that did not clearly require their driver's license or social security number. Compl. ¶¶ 90, 94. According to Plaintiffs, the State Board's failure to remove those voters means that hundreds of thousands of illegitimate voters remain on the State's rolls, diluting the power of Plaintiffs' voters. Compl. ¶¶ 92, 94. But the voters' inclusion on the rolls is illegitimate only if Plaintiffs are correct that HAVA requires the State Board to remove them. Thus, just as with Plaintiffs' mandamus claim, the Court must necessarily construe HAVA to evaluate Plaintiffs' constitutional claim.

Plaintiffs premised both of their state-law claims on the State Board's alleged violation of HAVA, a federal law. Accordingly, their Complaint necessarily raises a federal issue. *Grable*, 545 U.S. at 314.

## B.     The State Board disagrees with Plaintiffs' construction of HAVA.

The federal question raised by Plaintiffs' Complaint—whether HAVA requires the State Board to remove or require a provisional ballot from voters who were registered without providing a driver's license or social security number—is also actually disputed. As the State Board recently explained in its motion to dismiss Plaintiffs' Complaint, it does not read HAVA to require a sweeping purge of, or provisional ballots from, voters who did not provide a driver's license or social security number in their initial registration. *See* Mem. in Support of Mot. to Dismiss (D.E. 31) at 18. HAVA, the State Board recently argued, "make[s] clear that voters who do not provide a valid driver's license or social security number may still lawfully cast a ballot," so long as they provide "a current and valid photo identification" or other official document bearing their name and address before doing so. *Id.* (citing 52 U.S.C. § 21083(b)).

Plaintiffs disagree. In their view, any voters who have a driver's license or social security number, but failed to provide it upon registration, are "ineligible" to vote under HAVA. Compl.

¶¶ 67, 69-71. Plaintiffs understand HAVA to require all such voters to be removed from the rolls or required to vote a provisional ballot unless and until they provide the requisite number.

Despite these conflicting constructions, Plaintiffs assert that there is no dispute about HAVA's meaning because the State Board conceded in December 2023 that its prior registration form was not consistent with HAVA. Remand Mem. at 6 & nn. 2 & 3 (citing Dec. 2023 Order). This narrow consensus is irrelevant. Plaintiffs' suit here does not challenge the State Board's prior registration form, which has since been revised. Nor does it challenge the Board's current registration form, which all parties agree is consistent with federal law. *See* Compl. ¶ 84.

This suit instead challenges the State Board's decision not to remove or require a provisional ballot from voters who registered using the old form and did not provide a driver's license or social security number. *See, e.g.*, Compl. ¶ 86 (alleging that the State Board "affirmatively refused to act and correct the accuracy of the state's voter rolls as to be compliant with HAVA."). On this issue, the parties diverge sharply. The State Board has never agreed that it violated HAVA by not taking action with respect to those voters. To the contrary, as Plaintiffs themselves admit, the State Board expressly refused to take any such action, in part because it concluded that HAVA did not specifically authorize, much less require, the State Board to do so. Compl. ¶ 55; *see also* Remand Mem. at 6 n.3 (Dec. 2023 Order at 4).

Because the State Board has consistently resisted the idea that its decision not to purge or demand provisional ballots from eligible voters violates HAVA, the key federal question raised by this suit is "actually disputed," as the *Gunn-Grable* framework requires.

### C. The proper construction of HAVA is a substantial federal question.

The disputed federal question at the heart of Plaintiffs' Complaint is also "substantial." A federal question embedded in a state-law claim is substantial enough to trigger federal courts'

jurisdiction when the issue is "importan[t] . . . to the federal system as a whole." *Gunn v. Minton*, 568 U.S. 251, 260 (2013).

As an initial matter, it is difficult to argue that any issue that could affect whether hundreds of thousands of Americans (if not more) can exercise their fundamental right to vote in the next federal election is not "substantial." The Court's decision in this case will directly decide whether nearly a quarter-of-a-million North Carolinians can vote this fall. And it could also influence whether other States are required to remove voters from their rolls for similar reasons. An issue with such a wide-ranging impact on the fundamental rights of voters across the country is "substantial" under any conventional understanding of that word.

But the question is "substantial" for other reasons as well. The Supreme Court has signaled that questions concerning federal statutes that are designed to promote national uniformity meet that standard. *See Gunn*, 568 U.S. at 261 (explaining that a federal issue embedded in a legal malpractice claim involving a patent was not substantial because the question did not "undermine 'the development of a uniform body of [patent] law'" (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)) (alteration in original)). Uniformity is the entire point of Section 303 of HAVA. In fact, Section 303 is located within Title III of HAVA, which is titled "Uniform and Nondiscriminatory Election Technology and Administration Requirements." Help America Vote Act of 2002, Pub. L. No. 107-252, 116 Stat. 1666, 1708. Congress's desire for uniform minimum standards in election administration makes construction of those standards a substantial federal question.

Questions that might impact actions brought by federal enforcers under a federal statute are also important to the federal system. *See Grable*, 545 U.S. at 315 (holding that the proper interpretation of federal tax law was a substantial federal question because "[t]he [federal]

Government . . . has a direct interest in the availability of a federal forum to vindicate its own administrative action"). How the courts construe HAVA will undoubtedly impact federal enforcement actions, given that it is the United States Attorney General who is tasked with enforcing the very section of HAVA about which Plaintiffs and the State Board disagree. 52 U.S.C. § 21111 (giving the Attorney General authority to enforce the requirements of 52 U.S.C. § 21083); Compl. ¶ 58 (alleging the State Board violated § 21083(a)(2)).

> ### D. Construing HAVA in federal court is consistent with Congress's division of labor between federal and state courts.

Finally, accepting federal jurisdiction over Plaintiffs' claims would not upset the balance between state and federal courts. This prong of the *Grable-Gunn* test ensures that courts respect Congress's decisions about the proper forum for particular claims and do not extend federal jurisdiction to a "horde of original filings and removal cases" involving state-law claims. *Grable*, 545 U.S. at 318-19. Here, there is no reason to think Congress did not want federal courts to determine what HAVA requires of state elections administrators, or that Congress generally disapproves of cases involving federal elections being litigated in federal court. Indeed, Congress requires the United States Attorney General to bring any actions enforcing HAVA in federal court.[3] Additionally, there is little risk that allowing removal in this case will open the floodgates to the federal courts. After all, few state statutes so explicitly—and so exclusively—invoke federal law as N.C. Gen. Stat. § 163-82.11(c).

<p style="text-align:center">*      *      *</p>

---

[3] HAVA does not extend a private right of action, but that has no bearing on whether this case was properly removed. As *Grable* held, a private right of action is not necessary for jurisdiction under § 1331. 545 U.S. at 318-20 (affirming removal even though the disputed federal statute did not provide a private cause of action).

Plaintiffs allege that the State Board violated a state statute that simply requires the State Board to comply with HAVA, a federal law. It is no surprise, then, that a straightforward application of the *Gunn-Grable* test reveals that Plaintiffs' claims necessarily raise substantial and disputed questions of federal law that are best resolved in federal court. Plaintiffs cannot avoid this conclusion by dressing their federal claims up in state-law clothing. At bottom, Plaintiffs' lawsuit arises under federal law, and the State Board properly removed under § 1441(a). Plaintiffs' motion to remand should be denied.

### III.   Removal Is Proper Because Plaintiffs Are Suing the State Board for Refusing to Take Acts that Are Inconsistent with Federal Civil Rights Laws.

Even if this Court were to conclude that 28 U.S.C. § 1441 does not allow the State Board to remove Plaintiffs' Complaint, the civil rights removal statute (28 U.S.C. § 1443) does. When state officials are sued for their refusal to take an action, and their refusal is based on a "law providing for equal rights," § 1443(2) allows the officials to remove the suit to federal court. Here, Plaintiffs demand that the State Board remove nearly a quarter of a million eligible voters from the State's voter rolls in the middle of a general election. The State Board has refused to do that, in part because the National Voter Registration Act prohibits the State Board from systematically removing registered voters fewer than 90 days before an election. *See* 52 U.S.C. § 20507(c)(2)(A). Under these circumstances, removal is appropriate under § 1443(2).

There can be no dispute over most of the elements for § 1443(2) removal. Plaintiffs allege that the State Board's members are state officials who enforce state election laws. *See* Compl. ¶ 18 ("[The State Board] is tasked with ensuring that elections in North Carolina comply with all relevant state and federal laws . . . ."); Compl. ¶ 19-24 (suing State Board's members and Executive Director "in [their] official capacity"). And Plaintiffs further allege that the State

Board is refusing to purge voters from the State's voter rolls, as Plaintiffs would have them do. *See* Compl. ¶¶ 5, 7, 15, 60, 69-71, 84, 86-88, 93.

The only outstanding question, then, is whether the Plaintiffs' insistence that the State Board purge voters from the State's rolls is inconsistent with a "law providing for equal rights." 28 U.S.C. § 1443(2). The answer is plainly yes.

A mass purge in the middle of the general election is inconsistent with the NVRA. The NVRA requires the State Board to carry out any plan to "systematically remove" ineligible voters from the rolls "not later than 90 days prior to the date of a primary or general election." 52 U.S.C. § 20507(c)(2)(A). The NVRA's 90-day quiet period provision has a "broad" and "expansive meaning." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1344 (11th Cir. 2014). States cannot systematically remove voters fewer than 90 days before an election because that is "when the risk of disenfranchising eligible voters is the greatest." *Id.* at 1346; *N.C. State Conf. of NAACP v. Bipartisan Bd. of Elections & Ethics Enf't*, No. 1:16CV1274, 2018 WL 3748172, at *6 (M.D.N.C. Aug. 7, 2018).

Removing voters en masse, rather than after a "rigorous individualized inquiry" of the voter's eligibility, constitutes a systematic removal. *N.C. State Conf. of NAACP*, 2018 WL 3748172, at *6; *Arcia*, 772 F.3d at 1344 (holding that proposed removal coupled with notice to voter was not an individualized inquiry). This year, the NVRA cutoff was August 7, more than two weeks before Plaintiffs filed their Complaint. Thus, even if HAVA required the State Board to remove the voters that Plaintiffs have identified from the rolls, the NVRA forbids the State Board from doing so until after the election.

And the NVRA is a law providing for equal rights. For purposes of § 1443(2), a "law providing for equal rights" is a law that concerns racial equality. *Vlaming v. W. Point Sch. Bd.*,

10 F.4th 300, 309 (4th Cir. 2021) (citing *Georgia v. Rachel*, 384 U.S. 780, 792 (1966)). As long as the purpose of the relevant statute generally is to advance racial equality, § 1443(2) removal is available, even if the specific statutory provision that motivated the state official's refusal does not expressly discuss race. *See, e.g.*, *Whatley v. City of Vidalia*, 399 F.2d 521, 526 (5th Cir. 1968) (permitting § 1443 removal where defendants relied on the Voting Rights Act provisions that protect those assisting others in registering to vote); *O'Keefe v. N.Y.C. Bd. of Elections*, 246 F. Supp. 978, 979-80 (S.D.N.Y. 1965) (permitting § 1443(2) removal where defendant refused to reinstate a literacy test because doing so would violate the Voting Rights Act).

The NVRA indisputably has as one of its purposes the promotion of racial equality. Its opening provisions expressly state that the law was enacted to eliminate "discriminatory and unfair registration laws and procedures" that "have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a)(3). The NVRA's legislative history confirms that Congress enacted the statute to combat racial discrimination. The statute's Senate Report explained that the legislation was necessary in part because some "discriminatory and unfair practices" persisted in election administration notwithstanding the Voting Rights Act of 1965. S. Rep. 103-6, S. Rep. No. 6, 103rd Cong., 1st Sess. 1993, 1993 WL 54278 at *3 (Leg. Hist.). Accordingly, the NVRA is a law providing for equal rights that is capable of supporting this case's removal.

Plaintiffs make two attempts to avoid this conclusion; neither has merit. First, Plaintiffs argue that removal is unavailable under § 1443(2) because N.C. Gen. Stat. § 163-82.11 does not discriminate on account of race or color. *See* Remand Mem. at 10. Plaintiffs misstate the test for removal under § 1443(2). Section 1443 permits removal when a requested action—not a state

statute—is "inconsistent with any law providing for equal rights." *Cavanagh v. Brock*, 577 F.

Supp. 176, 180 (E.D.N.C. 1983) (cleaned up) (quoting *City of Greenwood v. Peacock*, 384 U.S.

808, 824 n.22 (1966)). This Court itself recently rejected the argument that § 1443(2) requires a

conflict between state and federal law. *Common Cause v. Lewis*, 358 F. Supp. 3d 505, 513

(E.D.N.C. 2019), *aff'd*, 956 F.3d 246 (4th Cir. 2020) ("[T]he language of the removal statute . . .

references in its text inconsistency only between *the act* being refused and federal equal

protection law."). Because the *act* that Plaintiffs demand the State Board take is inconsistent with

the NVRA, removal under § 1443(2) is proper.

      Plaintiffs also argue that the State Board's refusal to grant Plaintiffs' request for a

massive voter purge is not grounds for removal because Plaintiffs would be willing to accept

other forms of relief. Remand Mem. at 11. This argument, too, misreads § 1443(2). Section 1443

does not condition removal on a state official's refusing *every* act requested by a plaintiff. To the

contrary, removal is available anytime a plaintiff sues a state official for refusing to take any act

that is inconsistent with a law protecting equal rights. 28 U.S.C. § 1443(2).

      In any event, Plaintiffs' alternative request—where the State Board will force eligible,

registered voters to cast provisional ballots—conflicts with a different law providing for equal

rights. Under Plaintiffs' alternative plan, any voter who registered without a driver's license or

social security number would be required to cast a provisional ballot, and that ballot would be

counted only if the voter ultimately provided one of those numbers to the State Board. This

request is equally problematic under federal law, because it would require the State Board to

violate Section 11(a) of the Voting Rights Act. That provision prohibits the State Board from

"refus[ing] to permit a person to vote" or "tabulate, count, and report such person's vote" if the

person is "entitled to" or "otherwise qualified to vote." 52 U.S.C. § 10307(a). Because the State

Board understands the voters who Plaintiffs have identified to be eligible voters, so long as they provide the forms of alternative identification contemplated by HAVA, the State Board cannot implement Plaintiffs' provisional-ballot remedy without running headlong into the Voting Rights Act. The Voting Rights Act ("VRA") is the quintessential "law providing for equal rights," and courts have consistently permitted removal under § 1443(2) when a state official refuses to take an act that is inconsistent with the VRA. *See, e.g.*, *Smith v. Winter*, 717 F.2d 191, 194 (5th Cir. 1983) ("Because it confers rights specifically in terms of racial equality, the Voting Rights Act may support § 1443 removal."); *Jackson v. Riddell*, 476 F. Supp. 849 (N.D. Miss. 1979) (holding that Section 11(b) of the VRA "present[s] a right arising under a federal law 'providing for specific civil rights stated in terms of racial equality'").

Because Plaintiffs have sued the State Board for refusing to act in a manner that the State Board believes would violate laws providing for equal rights, removal under § 1443(2) is proper.

## CONCLUSION

For the foregoing reasons, State Board Defendants respectfully request that the Court deny Plaintiffs' Motion to Remand.

This the 7th day of October, 2024.

<div style="margin-left:40%">

Sarah G. Boyce
Deputy Attorney General and General Counsel
N.C. State Bar No. 56896
SBoyce@ncdoj.gov

Mary Carla Babb
Special Deputy Attorney General
N.C. State Bar No. 25731
MCBabb@ncdoj.gov

Terence Steed
Special Deputy Attorney General
N.C. State Bar No. 52809
TSteed@ncdoj.gov

</div>

/s/ South A. Moore
South A. Moore
Deputy General Counsel
N.C. State Bar No. 55175
SMoore@ncdoj.gov

North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Phone: 919-716-6900
Fax: 919-716-6758

*Counsel for State Board Defendants*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(f)(3)**

Undersigned counsel certifies that this memorandum of law complies with Local Rule 7.2(f)(3) in that the brief, including headings, footnotes, citations, and quotations, contains no more than 8,400 words as indicated by Word, the program used to prepare the brief.

This the 7th day of October, 2024.

/s/ South A. Moore
South A. Moore
Deputy General Counsel

**CERTIFICATE OF SERVICE**

      I certify that the foregoing was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to the below listed attorneys:

John E. Branch III
Thomas G. Hooper
Baker Donelson Bearman, Caldwell
Berkowitz, PC
2235 Gateway Access Point, Suite 220
Raleigh, NC 27607
(984) 844-7900
jbranch@bakerdonelson.com
thooper@bakerdonelson.com

Phillip J. Strach
Jordan A. Koonts
Nelson Mullins Riley Scarborough LLP
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
(919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com

*Counsel for Plaintiffs*

Jim W. Phillips, Jr.
Shana L. Fulton
William A. Robertson
James W. Whalen
Brooks, Pierce, McLendon, Humphrey &
Leonard, LLP
150 Fayetteville Street
1700 Wells Fargo Capitol Center
Raleigh, N.C. 27601
(919) 839-0300
jphillips@brookspierce.com
sfulton@brookspierce.com
wrobertson@brookspierce.com
jwhalen@brookspierce.com

Seth P. Waxman
Daniel Volchok
Christopher E. Babbitt
Gary M. Fox
Joseph M. Meyer
Jane Kessner
Nitisha Baronia
Wilmer Cutler Pickering Hale and Door LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000
seth.waxman@wilmerhale.com
daniel.volchok@wilmerhale.com
christopher.babbitt@wilmerhale.com
gary.fox@wilmerhale.com
jane.kessner@wilmerhale.com
nitisha.baronia@wilmerhale.com
joseph.meyer@wilmerhale.com

*Counsel for Intervenor-Defendant Democratic
National Committee*

      This the 7th day of October, 2024.

              /s/ South A. Moore
              South A. Moore
              Deputy General Counsel