UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-cv-547

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE; and NORTH CAROLINA REPUBLICAN PARTY, <br><br> Plaintiffs, <br><br> v. <br><br> NORTH CAROLINA STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as Executive Director of the North Carolina State Board of Elections; ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections; JEFF CARMON, in his official capacity as Secretary of the North Carolina State Board of Elections; STACY EGGERS IV, KEVIN N. LEWIS, and SIOBHAN O'DUFFY MILLEN, in their official capacities as members of the North Carolina State Board of Elections, <br><br> Defendants, <br><br> and <br><br> THE DEMOCRATIC NATIONAL COMMITTEE, <br><br> Intervenor-Defendant. | **STATE BOARD DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    I.   This Court Has Jurisdiction over Plaintiffs' Claims and No Basis for Declining to Exercise that Jurisdiction. ............................................................................................... 2

    II.  Plaintiffs' Claims Are Barred by Laches. ...................................................................... 3

    III. Plaintiffs Have Not Alleged Any Claims for Which Relief Can be Granted. .................... 6

        A.  Plaintiffs are not entitled to mandamus relief. ............................................................. 6

        B.  Plaintiffs have not stated a claim under the North Carolina Constitution. ................... 8

CONCLUSION ........................................................................................................................ 10

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(f)(2) ...................................... 11

CERTIFICATE OF SERVICE ................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Bd. of Educ. v. Bd. of Comm'rs*,
   178 N.C. 305, 100 S.E. 698 (1919) .................................................................................. 6

*Burton v. Furman*,
   115 N.C. 166, 20 S.E. 443 (1894) ...................................................................................... 6

*Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*,
   260 N.C. App. 1, 817 S.E.2d 738 (2018) ........................................................................... 7

*Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*,
   376 N.C. 558, 853 S.E.2d 698 (2021) ............................................................................ 6, 7

*In re T.H.T.*,
   362 N.C. 446, 665 S.E.2d 54 (2008) .................................................................................. 6

*Johnson v. N.C. Dep't of Cultural Res.*,
   223 N.C. App. 47, 735 S.E.2d 595 (2012) ...................................................................... 3, 5

*Meredith v. Talbot County*,
   828 F.2d 228 (4th Cir. 1987) .............................................................................................. 2

*Morningstar Marinas v. Warren County*,
   233 N.C. App. 23, 755 S.E.2d 75 (2014) ........................................................................... 7

*Nivens v. Gilchrist*,
   444 F.3d 237 (4th Cir. 2006) .............................................................................................. 3

*Ray v. Norris*,
   78 N.C. App. 379, 337 S.E.2d 137 (1985) ......................................................................... 6

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
   589 U.S. 423 (2020) ........................................................................................................... 5

*Save Our Schs. of Bladen Cnty., Inc. v. Bladen Cnty. Bd. of Educ.*,
   140 N.C. App. 233, 535 S.E.2d 906 (2000) ...................................................................... 4, 5

*Sonda v. W. Va. Oil & Gas Conservation Comm'n*,
   92 F.4th 213 (4th Cir. 2024) ............................................................................................... 3

*Stratton v. Royal Bank of Canada*,
   211 N.C. App. 78, 712 S.E.2d 221 (2011) ...................................................................... 3, 4

*White v. Daniel*,
   909 F.2d 99 (4th Cir. 1990) ................................................................................................ 3

*Williams v. Blue Cross Blue Shield of N.C.*,
  357 N.C. 170, 581 S.E.2d 415 (2003) ............................................................................... 3

*Wise v. Circosta*,
  978 F.3d 93 (4th Cir. 2020) ............................................................................................. 2

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
  780 F.3d 597 (4th Cir. 2015) ........................................................................................... 4

**Statutes**

52 U.S.C. § 10307 ............................................................................................................. 10

52 U.S.C. § 20507 ............................................................................................................... 5

52 U.S.C. § 21083 ............................................................................................................... 8

N.C. Gen. Stat. § 143-318.10 .............................................................................................. 4

N.C. Gen. Stat. § 143-318.12 .............................................................................................. 4

N.C. Gen. Stat. § 163-20 ..................................................................................................... 4

**Other Authority**

Notice of Meeting, N.C. State Bd. of Elections (Nov. 22, 2023) ....................................... 4

## INTRODUCTION

Plaintiffs' Complaint should be dismissed with prejudice. First, Plaintiffs' unreasonable delay in bringing their suit warrants dismissal. Plaintiffs' Complaint reveals that they had at least constructive knowledge of the facts that form the basis of their claims by December 2023, possibly earlier. Even if, as Plaintiffs now imply, they only obtained knowledge in June 2024, their two-month delay would be unreasonable, given both the National Voter Registration Act's bar on systematic removal of voters 90 days before an election and courts' reluctance, under *Purcell*, to change voting rules during an election. Plaintiffs continue to delay even now: though they claim this suit requires "immediate action," they have not yet sought any form of emergency relief.

Second, even if Plaintiffs' Complaint were timely, it would fail to state a claim. Plaintiffs' suit is premised on their mistaken belief that because the Help America Vote Act requires the State Board's registration form to collect either a voter's driver's license number or the last four digits of her social security number, HAVA also requires the State Board to purge or relegate to provisional voting anyone who did not provide that information when they registered. But HAVA does not authorize, much less compel, the State Board to purge voters. To the contrary, HAVA requires the State Board to accept votes from any voter who mistakenly registered without providing a driver's license or social security number but who presents a current, valid photo identification or other HAVA document at the polls. And since *all* North Carolina voters, even those not subject to the HAVA ID requirement, will be asked to present a photo identification to confirm their identity before voting, the State Board will be in compliance with HAVA in administering the upcoming election, and the risk of ineligible voters casting ballots will be slim to none. Because Plaintiffs built their untimely Complaint on a

misunderstanding of what HAVA requires, they have failed to state a claim, and this case should be dismissed with prejudice.

## ARGUMENT

### I. This Court Has Jurisdiction over Plaintiffs' Claims and No Basis for Declining to Exercise that Jurisdiction.

Plaintiffs argue that this Court either lacks jurisdiction or should decline to exercise it. They are wrong on both counts. First, they argue that the NVRA cannot support this Court's jurisdiction because it is merely a federal defense. Plaintiffs misunderstand the State Board's jurisdictional arguments: This Court has federal question jurisdiction because Plaintiffs' so-called state-law claims necessarily turn on a disputed and substantial question about *HAVA*, not the NVRA. Defs.' Remand Opp. (D.E. 51) 6-13. The NVRA, meanwhile, allows the State Board to remove this case under a different statute, 28 U.S.C. § 1443. Defs.' Remand Opp. 13-17.

Plaintiffs' *Pullman* abstention argument fares no better. Plaintiffs argue that this Court should decline jurisdiction until a state court "resolve[s] the scope of" N.C. Gen. Stat. § 163.82(c); Pls. Opp. (D.E. 50) 5. But *Pullman* abstention applies only "where there are unsettled questions of state law that may dispose of the case and avoid the need for deciding [a] *constitutional* question." *Meredith v. Talbot County*, 828 F.2d 228, 231 (4th Cir. 1987) (emphasis added)). Indeed, avoiding advisory opinions on federal constitutional questions is *Pullman* abstention's chief aim. *See Wise v. Circosta*, 978 F.3d 93, 102 (4th Cir. 2020).

Plaintiffs have not alleged a federal constitutional claim. Rather, Plaintiffs ask the Court to invoke *Pullman* to avoid resolving a federal *statutory* issue. *Pullman* abstention simply does not apply in this context. *See Sonda v. W. Va. Oil & Gas Conservation Comm'n*, 92 F.4th 213,

219 (4th Cir. 2024) (district court abused its discretion by abstaining without connecting state-law issues to federal constitutional claim).[1]

## II. Plaintiffs' Claims Are Barred by Laches.

This Court should dismiss Plaintiffs' Complaint because laches bar their claims. Plaintiffs say North Carolina law treats laches differently than federal law. But the test under both is the same. Laches applies when a plaintiff delays action for so long that it becomes unjust to allow them to prevail on their claim. *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990); *Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 181, 581 S.E.2d 415, 424 (2003). The delay must be "unreasonable" and prejudice the defendant. *White*, 909 F.2d at 102; *Williams*, 357 N.C. at 181-82, 581 S.E.2d at 424-25.

Plaintiffs maintain that that they cannot be charged with knowledge of Ms. Snow's complaint. Pls. Opp. (D.E. 50) 6-7. But their Complaint does not allege—nor does their response outright say—that they did not actually know about Ms. Snow's complaint. And knowledge of the facts giving rise to their claims can be imputed to them anyway.

"[C]onstructive, rather than actual, knowledge of a claim can be used to establish laches." *Johnson v. N.C. Dep't of Cultural Res.*, 223 N.C. App. 47, 57, 735 S.E.2d 595, 601 (2012). A plaintiff has constructive knowledge when it knows of the grounds for its claim. *Stratton v. Royal Bank of Canada*, 211 N.C. App. 78, 90, 712 S.E.2d 221, 231 (2011).

Plaintiffs' Complaint reveals that they had constructive and actual knowledge of their claim by December 2023 at the latest. Plaintiffs allege that the State Board decided not to act with respect to voters who registered without providing a driver's license or social security

---

[1] Plaintiffs also mistakenly believe *Pullman* will get them out of federal court. But *Pullman* abstention does not result in remand; instead, the federal court retains jurisdiction but stays proceedings pending a state-court ruling on the state-law question. *Nivens v. Gilchrist*, 444 F.3d 237, 245-46 (4th Cir. 2006).

number in December 2023. Compl. (D.E. 1-3) ¶¶ 51-55. They also allege that the State Board used the deficient voter registration form until December 2023. Compl. ¶ 42. And they allege that the errors on the form were apparent on the form's face. *See* Compl. ¶¶ 49-51 & Fig. 1. Thus, *anyone* who registered voters in North Carolina was aware of the "grounds" for Plaintiffs' claim long ago. *See Stratton*, 211 N.C. App. at 90, 712 S.E.2d at 231. That would include Plaintiff North Carolina Republican Party, who "host[s] . . . voter registration events." Compl. ¶ 14.

Plaintiffs also had constructive notice of the State Board's December 2023 decision on Ms. Snow's complaint. As institutional plaintiffs, Plaintiffs can be charged with constructive knowledge of decisions made by public bodies during public meetings on matters germane to the organization's mission. *See Save Our Schs. of Bladen Cnty., Inc. v. Bladen Cnty. Bd. of Educ.*, 140 N.C. App. 233, 236, 535 S.E.2d 906, 909 (2000). Under that standard, they should have known of their claim by December 2023. Ms. Snow's complaint was "[p]ublicly available." Compl. ¶ 48 n.2. So, too, was the State Board's December 2023 Order resolving her complaint. Compl. ¶ 51 n.4. Additionally, the State Board published notice of the meeting where it discussed Ms. Snow's complaint. N.C. Gen. Stat. § 143-318.12(b). The notice included an agenda listing Ms. Snow's complaint as a topic for discussion.[2] The State Board also made minutes and a recording from that meeting publicly available. *See* N.C. Gen. Stat. §§ 143-318.10(e), 163-20(e); Compl. ¶ 51 n.3. If, as Plaintiffs say, this is an important election administration decision, organizations like Plaintiffs, whose "core organizational missions"

---

[2] Notice of Meeting, N.C. State Bd. of Elections (Nov. 22, 2023), *available at* https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/2023-11-28/Meeting%20Notice_2023-11-28.pdf. Courts may consider facts and documents subject to judicial notice on a motion to dismiss. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).

4

include "counseling interested voters and volunteers on election participation" and ensuring "election security," should have known about it. Compl. ¶¶ 14-15; *see Save Our Schs.*, 140 N.C. App. at 236, 535 S.E.2d at 909.

But now, Plaintiff imply—for the first time—that they only learned of the problem with the registration form in June. Pls. Opp. 2, 6-9. Even if that were true, Plaintiffs' decision to wait two more months to file suit would be unreasonable, given that they are asking the State Board to remove a quarter-of-a-million voters from the rolls amidst an election. Waiting to file suit until two weeks *after* the NVRA's deadline to systematically remove voters from the rolls had passed is itself unreasonable. 52 U.S.C. § 20507(c)(2)(A). If Plaintiffs wanted this Court to change voting rules on the eve of an election—something courts disfavor—they should have brought this claim *immediately* after learning of it. *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020).

Plaintiffs next argue that even if they had knowledge, laches is inapplicable because their delay did not cause a change in the parties' circumstances. They rely on *Johnson*, which rejected laches in a case where the plaintiff bailor delayed in bringing suit so long that the original bailor passed away. Pls. Opp. 7 (citing *Johnson*, 223 N.C. App. at 55, 735 S.E.2d at 600). Because the new bailor "possess[ed] the same rights" as the old bailor, the court explained, the delay did not cause a change in the parties' legal relationship. *Johnson*, 223 N.C. App. at 55, 735 S.E.2d at 600. But, unlike *Johnson*, Plaintiffs' delay here did occasion a change in circumstances. Because Plaintiffs waited to bring suit until fewer than 90 days before a general election, even if HAVA authorized the State Board to give Plaintiffs the relief they seek, the NVRA clearly prohibits the State Board from doing so. 52 U.S.C. § 20507(c)(2)(A).

Finally, Plaintiffs argue that the State Board has unclean hands. Unclean hands is available only to a party harmed by alleged wrongful conduct. *Ray v. Norris*, 78 N.C. App. 379, 385, 337 S.E.2d 137, 142 (1985). But the State Board has not engaged in any wrongful conduct, much less any wrongful conduct that might excuse Plaintiffs' delay. Plaintiffs concede that the State Board promptly corrected the registration form. Compl. ¶ 54. And they acknowledge that the State Board did not act with respect to registered voters because the State Board believed HAVA did not authorize it do so. Compl. ¶ 55. Plaintiffs read HAVA differently, but that good-faith difference of opinion does not make the State Board's conduct wrongful.

Plaintiffs' unreasonable delay prejudiced the State Board, not to mention North Carolina's voters. Accordingly, this Court should dismiss their Complaint on laches grounds.

### III. Plaintiffs Have Not Alleged Any Claims for Which Relief Can be Granted.

#### A. Plaintiffs are not entitled to mandamus relief.

Plaintiffs claim that mandamus law in North Carolina differs from federal law because, in North Carolina, "mandamus rules only require proof that a public official defendant has failed to perform a specified official duty imposed by law." Pls. Opp. 11 (citing *Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*, 376 N.C. 558, 574, 853 S.E.2d 698, 711 (2021)). Although North Carolina law does not support that assertion, Plaintiffs fail that standard too.

The standard for mandamus in North Carolina maps neatly onto the federal standard. A plaintiff must show, in the main: (1) a clear right to the act requested, (2) that the defendant had a clear duty to perform the act, and (3) the absence of other adequate remedies. *See, e.g.*, *In re T.H.T.*, 362 N.C. 446, 453-54, 665 S.E.2d 54, 59 (2008) (collecting cases); *Bd. of Educ. v. Bd. of Comm'rs*, 178 N.C. 305, 313, 100 S.E. 698, 702 (1919); *Burton v. Furman*, 115 N.C. 166, 20 S.E. 443, 444 (1894); *Morningstar Marinas v. Warren County*, 233 N.C. App. 23, 27, 755 S.E.2d

75, 78 (2014); *see also* Defs.' Mem. in Supp. Mot. to Dismiss (D.E. 31) 11.[3] In their response brief, Plaintiffs do not even attempt to show how they can satisfy these three factors. *See* Pls. Opp. 11 & n.6 (stating that those "prongs simply do not apply" and, in the alternative, urging the Court to apply *Pullman* abstention).

Plaintiffs ignore these cases and rely on *Committee to Elect Dan Forest*, but that case is irrelevant. *Committee to Elect* is the seminal case on whether North Carolina law imposes the same injury-in-fact requirement as Article III. *Comm. to Elect*, 376 N.C. at 558-59, 853 S.E.2d at 702. Although the opinion does explore the use of mandamus as a historical matter, *Committee to Elect*, 376 N.C. at 569-75, 853 S.E.2d at 708-12, the actual claims in the case were all statutory, *Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*, 260 N.C. App. 1, 2, 817 S.E.2d 738, 739 (2018). The opinion thus contains no discussion of the substantive requirements for mandamus.

Even if Plaintiffs were right that they need only allege that the State Board "failed to comply with the law," Pls. Opp. 10, their mandamus claim should still be dismissed. Though Plaintiffs repeatedly accuse the State Board of a HAVA violation, they have not actually alleged facts to support that claim. Plaintiffs do not dispute that the State Board already revised the voter-registration form to ensure that applicants provide their driver's license or social security number if they have one. Instead, Plaintiffs insist that HAVA additionally requires either removal of or provisional ballots from voters who register without providing a driver's license or social security number. HAVA requires nothing of the sort. If a voter is registered without a

---

[3] Plaintiffs argue that *In re T.H.T* is inapt because it was brought on appeal pursuant to North Carolina Rule of Appellate Procedure 22. But the court's analysis of the *substantive* claim had nothing to do with Rule 22 and, instead, applied to writs of mandamus generally. *In re T.H.T.*, 362 N.C. at 453-56, 665 S.E.2d at 59-61. Besides, these other opinions adopt the same substantive standard for claims that were not raised under Rule 22.

7

Case 5:24-cv-00547-M-RJ    Document 53    Filed 10/11/24    Page 11 of 16

driver's license or social security number, HAVA mandates two things: (1) that the State Board assign the voter an identification number, and (2) that it require voters to show qualifying identification the first time they attempt to cast a ballot in a federal election in the jurisdiction. 52 U.S.C. § 21083(a)(5)(A)(ii), (b)(2)(A)(i)-(ii). The State Board has complied with these two duties, and Plaintiffs do not allege otherwise.

Plaintiffs' only real response to any of this is that their requested remedies are "viable." Pls. Opp. 11. Setting aside whether Plaintiffs are actually correct, the standard for mandamus is not whether a remedy is viable. It is whether the law imposes a *clear duty* to provide the remedy. Again, neither HAVA nor Section 163-82.11 *requires* that voters who are registered without their social security or driver's license numbers vote provisionally. Plaintiffs thus are not entitled to this remedy, no matter its "viability." Even on Plaintiffs' own terms, their mandamus claim fails.

### B. Plaintiffs have not stated a claim under the North Carolina Constitution.

Plaintiffs' claim under the North Carolina Constitution remains inscrutable. All they say about Article I, Section 19 is that federal law does not necessarily bind interpretations of it. Pls. Opp. 12. But before Plaintiffs can argue about *how* to interpret the state constitution, they must explain *why* it is relevant. They have not done so. Their claim should be dismissed.

Since Plaintiffs did not dispute the State Board's charitable reading of their allegations as stating an equal-protection claim, the Board continues to assume that is Plaintiffs' theory. But if it is, Plaintiffs have failed to distinguish the wealth of cases rejecting equal-protection claims based on vote-dilution theories. Defs.' Mem. 19 (collecting cases). Nor do Plaintiffs cite any case—state or federal—that recognizes a similar equal-protection claim.

Even if their vote-dilution theory were colorable, Plaintiffs have not adequately pled it. Plaintiffs' claim is dependent on their allegation that the State Board's use of the prior voter-

8

registration form allowed ineligible people to vote in the election, which, they say, could lead to "widespread dilution of legitimate votes." Compl. ¶ 94. Yet Plaintiffs never explain how a voter's failure to provide a social security or driver's license number during registration increases the likelihood of voter fraud—especially given the safeguards found in HAVA and state law.

Rather than grapple with those safeguards, Plaintiffs mistakenly claim the safeguards are inapplicable to the voters they are concerned about. This is incorrect. Section 163-166.12 sets forth the requirements that control the first time these voters seek to cast a ballot in a federal election. Subsections (a) and (b) require *all* of those voters to provide either (1) a current and valid photo ID or (2) a copy of a current utility bill, bank statement, government check, paycheck, or other government document before voting for the first time. N.C. Gen. Stat. § 163-166.12(a), (b). There are certain exemptions from that rule—most notably, voters who already provided a valid driver's license or social security number need not present additional identification. *Id.* § 163-166.12(f)(2). But voters who were mistakenly registered using the prior form would not fall within this exemption. As a result, subsections (a) and (b) apply, and these voters will have to show HAVA ID the first time they attempt to vote. In addition, state law now requires *all voters* to show valid photo ID when they vote. *See* Defs.' Mem. 18. Together, these measures provide an ample backstop against the risk of ineligible voting.

Finally, Plaintiffs assert that, because certain voters who show up without the requisite identification are permitted to vote provisionally under Section 163-166.12(e), Plaintiffs are also entitled to that relief. Pls. Opp. 13. This puts the cart before the horse: Plaintiffs must first state and prove their claim before being entitled to relief. Here, moreover, their demanded relief is neither statutorily required, nor theoretically possible. Requiring provisional ballots from *eligible*

9

voters—those who are "entitled to" or "otherwise qualified to vote"— violates Section 11(a) of the Voting Rights Act. Defs.' Remand Opp. 16-17 (quoting 52 U.S.C. § 10307(a)).

Given the multitude of infirmities in Plaintiffs' Complaint, this Court should not entertain Plaintiffs' request to disenfranchise hundreds of thousands of voters at this late date.

## CONCLUSION

For the foregoing reasons, State Board Defendants ask this Court to dismiss Plaintiffs' Complaint.

This the 11th day of October, 2024.

/s/Sarah G. Boyce
Sarah G. Boyce
Deputy Attorney General and General Counsel
N.C. State Bar No. 56896
SBoyce@ncdoj.gov

Mary Carla Babb
Special Deputy Attorney General
N.C. State Bar No. 25731
MCBabb@ncdoj.gov

Terence Steed
Special Deputy Attorney General
N.C. State Bar No. 52809
TSteed@ncdoj.gov

South A. Moore
Deputy General Counsel
N.C. State Bar No. 55175
SMoore@ncdoj.gov

North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Phone: 919-716-6900
Fax: 919-716-6758

*Counsel for State Board Defendants*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(f)(2)**

Undersigned counsel certifies that this memorandum of law complies with Local Rule 7.2(f)(2) in that the brief, including headings, footnotes, citations, and quotations, is no more than ten pages.

This the 11th day of October, 2024.

/s/ Sarah G. Boyce
Sarah G. Boyce
Deputy Attorney General and General Counsel

# CERTIFICATE OF SERVICE

I certify that the foregoing was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to the below listed attorneys:

John E. Branch III
Thomas G. Hooper
Baker Donelson Bearman, Caldwell
Berkowitz, PC
2235 Gateway Access Point, Suite 220
Raleigh, NC 27607
(984) 844-7900
jbranch@bakerdonelson.com
thooper@bakerdonelson.com

Phillip J. Strach
Jordan A. Koonts
Nelson Mullins Riley Scarborough LLP
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
(919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com

*Counsel for Plaintiffs*

Jim W. Phillips, Jr.
Shana L. Fulton
William A. Robertson
James W. Whalen
Brooks, Pierce, McLendon, Humphrey & Leonard, LLP
150 Fayetteville Street
1700 Wells Fargo Capitol Center
Raleigh, N.C. 27601
(919) 839-0300
jphillips@brookspierce.com
sfulton@brookspierce.com
wrobertson@brookspierce.com
jwhalen@brookspierce.com

Seth P. Waxman
Daniel Volchok
Christopher E. Babbitt
Gary M. Fox
Joseph M. Meyer
Jane Kessner
Nitisha Baronia
Wilmer Cutler Pickering Hale and Door LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000
seth.waxman@wilmerhale.com
daniel.volchok@wilmerhale.com
christopher.babbitt@wilmerhale.com
gary.fox@wilmerhale.com
jane.kessner@wilmerhale.com
nitisha.baronia@wilmerhale.com
joseph.meyer@wilmerhale.com

*Counsel for Intervenor-Defendant Democratic National Committee*

This the 11th day of October, 2024.

/s/ Sarah G. Boyce
Sarah G. Boyce
Deputy Attorney General and General Counsel