# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:24-CV-547-M**

REPUBLICAN NATIONAL COMMITTEE,
NORTH CAROLINA REPUBLICAN
PARTY.,

          *Plaintiffs*,

   v.

NORTH CAROLINA STATE BOARD OF
ELECTIONS, *et al.*,

          *Defendants*,

and

DEMOCRATIC NATIONAL COMMITTEE,

          *Intervenor-Defendant*.

**STIPULATION AND CONSENT
JUDGMENT**

       Plaintiffs Republican National Committee and the North Carolina Republican Party ("*RNC*

Plaintiffs"), together with Defendants North Carolina State Board of Elections, Sam Hayes,

Francis X. De Luca, Stacy Eggers IV, Jeff Carmon, Siobhan O'Duffy Millen, and Robert Rucho[1],

each in their official capacity (collectively, the "State Board Defendants"); and Intervenor-

Defendant Democratic National Committee ("DNC") stipulate to the following and request that

this Court approve the Consent Judgment. This Stipulation and Consent Judgment encompasses

*RNC* Plaintiffs' claims challenging (1) the State Board Defendants' practices and procedures

regarding the maintenance and accuracy of North Carolina's statewide computerized voter

---

[1] Pursuant to Fed. R. Civ. P. 25(d), these official capacity parties are automatically substituted as successor parties in this action for Karen Brinson Bell, Alan Hirsch, and Kevin Lewis. The Parties agree and represent that this change in membership shall not affect the continuing viability and enforceability of this Stipulation and Consent Judgment, nor shall any future changes in membership.

registration list ("Voter Roll"), which the *RNC* Plaintiffs alleged reflects that incomplete voter registration forms were processed by the County Boards, and (2) the State Board Defendants' practices and procedures regarding their statutory duties concerning the correcting of incomplete voter registration forms.

In consideration of the mutual promises and recitals contained in this Stipulation and Consent Judgment, including relinquishment of certain legal rights, the Parties stipulate and agree to entry of the following consent judgment.

## I.
## STIPULATIONS

The Parties to this Consent Judgment stipulate and agree to the following facts:

A. *RNC* Plaintiffs alleged that for multiple years between 2004 and 2023, the North Carolina State Board of Elections promulgated a North Carolina Voter Registration Application that did not clearly inform applicants that they were required to (1) provide their driver's license number, (2) if they did not have a driver's license number ("DL"), provide the last four digits of their Social Security number ("SSN4"), or (3) if they did not have either number, check a box on the Application stating that they lacked a DL or SSN4 ("Checkbox").

B. *RNC* Plaintiffs alleged that these flaws in the North Carolina Voter Registration Applications risked violating Section 303(a)(5) of the Help America Vote Act of 2002 ("HAVA"), 52 U.S.C. § 21083(a)(5). On December 6, 2023, the North Carolina State Board of Elections amended the North Carolina Voter Registration Application form on a forward-looking basis to require this information.

C. After amending the form to require this information, the North Carolina State Board of Elections did not contact prior registrants and solicit missing DL, SSN4 or a Checkbox on the voter file prior to the November 5, 2024 statewide general election.

2

D.    Similarly, the North Carolina State Board of Elections did not remove or discount, or direct the county boards of elections to remove or discount, any votes cast in the November 5, 2024 statewide general election based solely on the reason that those voters registration forms were accepted and processed without DL, SSN4, or a Checkbox.

E.    *RNC* Plaintiffs alleged that from 2004 to 2023, North Carolina's county boards of elections accepted and processed voter registration application forms and registered some voters without collecting those registered voters' DL, SSN4, or a Checkbox. Plaintiffs allege that accepting and processing these forms violated Section 303(a)(5) of HAVA.

F.    The *RNC* Plaintiffs filed their complaint on September 23, 2024, challenging the State Board's alleged failures to maintain North Carolina's Voter Rolls in accordance with N.C. Gen. Stat. § 163-82.11(c) (requiring compliance with Section 303 of HAVA), in a manner which *RNC* Plaintiffs claimed violates Article I § 19 of the North Carolina Constitution, creating particular harm as applied to *RNC* Plaintiffs.[2]

G.    The North Carolina State Board of Elections has identified records of voters who registered to vote after HAVA's effective date without providing a DL, SSN4, or Checkbox, and has also identified records of voters who registered to vote after HAVA's effective date whose record is missing this information even though they may have initially provided the information.

H.    On June 24, 2025, the North Carolina State Board of Elections approved a plan to collect incomplete registration information from certain registered voters. That plan, now known

---

[2] *RNC* Plaintiffs, along with individual Plaintiffs Telia Kivett, Karyn Mulligan, and the Wake County Republican Party, filed a separate complaint on December 31, 2024 alleging violations of N.C. Gen. Stat. § 163-82.4(f). *Kivett v. N.C. State Bd. of Elections*, No. 24CV041789-910 (N.C. Super. Ct., Wake Cnty. 2024) (*Kivett II*). Due to the factual and party overlap between these cases, the terms of the *Kivett II* consent judgment are identical to and fully consistent with those set forth herein.

as the "Registration Repair Project," seeks to obtain the information from registered voters that does not appear in their registration records.[3]

I.      In preparing the plan, the North Carolina State Board of Elections first identified all active and inactive North Carolina registered voters whose records have a registration date on or after January 1, 2004, and whose VoterView record in the State Elections Information Management System ("SEIMS") lacks a DL and SSN4.

J.      In July 2025, the State Board Defendants started implementing the Registration Repair Project to collect identification numbers from registered voters who did not have a DL or SSN4 in the state's voter registration database. *See* State Board Press Release, "State Board Launches Registration Repair Project to Ensure Accurate, Complete Voter Rolls | NCSBE," https://www.ncsbe.gov/news/press-releases/2025/07/17/state-board-launches-registration-repair-project-ensure-accurate-complete-voter-rolls, (July 17, 2025) last visited December 11, 2025. In mid-August, the State Board sent letters to about 82,000 registered voters who had not yet provided the necessary information to election officials. On November 24, 2025, the State Board sent a second letter to voters whose registration records were still missing either a DL or SSN4. From July 17, 2025 to August 15, 2025, prior to the first mailer, the county boards of election reviewed internal records already in their possession and updated an estimated 20,588 records in the HAVA List. This includes updates for active and inactive status voters who provided a current and valid driver's license or the last four digits of their social security number, or who confirmed they did not have that information, but that information was not entered into their record. From July 17, 2025 to August 15, 2025, the county boards of election reviewed and corrected 44 voter records

---

[3] This Court has entered a consent decree in *United States v. North Carolina State Board of Elections*, related litigation under the federal Help America Vote Act. *See* Consent Judgment and Order, No. 5:25-cv-283 (E.D.N.C. Sept. 8, 2025), ECF No. 72. Nothing in this Consent Judgment is intended to conflict with the order of this Court in that parallel action.

for voters who registered before HAVA's effective date of January 1, 2004, but whose current records indicated a registration after that date, to restore their original registration date. In total, from the beginning of the Registration Repair Project on July 17, 2025 to December 11, 2025, the total number of voters missing this information has decreased from 103,329 to 73,064. *See* Status Report filed in *United States v. North Carolina State Board of Elections*, No. 5:25-cv-283 (E.D.N.C. December 12, 2025), ECF No. 84. For any voters who do not provide a DL, SSN, or Checkbox before they appear to vote, they will cast a provisional ballot and will be asked to provide this information as well as a HAVA ID at that time. *See* Numbered Memo 2025-02, Provisional Voting for Registration Repair Voters, August 27, 2025 (revised September 8, 2025), https://s3.amazonaws.com/dl.ncsbe.gov/sboe/numbermemo/2025/Numbered%20Memo%202025-02%20Provisional%20Voting%20for%20Registration%20Repair%20Voters.pdf, last visited December 14, 2025.

K.     The Parties agree that the Consent Judgment promotes judicial economy, protects the limited resources of the Parties, complies with North Carolina and federal law, and resolves *RNC* Plaintiffs' claims regarding the State Board's voter registration and Voter Roll maintenance practices.

L.     The following definitions apply in this Stipulation and Consent Decree:

     i.     **Checkbox**: a registrant or voter checking a box on a state-provided form that they do not have a DL or SSN4, or otherwise attesting that they do not have a DL or SSN4.

     ii.     **County Boards**: North Carolina's 100 county boards of elections. The term County Board includes, but is not limited to, any board member, director of

5

elections, employee, volunteers working for a County Board, and appointed precinct officials.

iii.    **Cure Deadline:** the third business day after the election or the latest cure deadline set forth by North Carolina law for a voter to provide information to complete their registration form, absentee ballot, or provisional ballot, whichever is later.

iv.    **DL**: driver's license number or non-operator ID number.

v.    **Excepted Voters**: all active and inactive North Carolina registered voters whose records have a registration date on or after January 1, 2004, and whose VoterView record in SEIMS lacks a DL and SSN4 for whom compliance with HAVA does not require collection of DL, SSN4, or a Checkbox, including:

        a.    Registrants whose North Carolina Voter Identification number ("NCID") corresponds with a registration, in any county, where that voter provided a DL or SSN4 that was submitted to the appropriate County Board for validation, as shown in the VoterScan archive, and the voter has shown HAVA ID.

        b.    Registrants whose NCID corresponds with a registration, in any county, with a registration date prior to January 1, 2004, and the registration was not removed for ineligibility and recreated after that date.

        c.    Registrants whose NCID corresponds with a registration, in any county, with a DL or SSN4 in the VoterScan archive that validated.

6

d.  Registrants whose NCID corresponds with a registration, in any county, with an indication in the VoterScan archive that the voter provided a Checkbox and provided HAVA ID.

e.  Registrants whose NCID corresponds with a registration, in any county, via a Federal Postcard Application ("FPCA") or Federal Write-In Absentee Ballot ("FWAB") with DL or SSN4 that was submitted to the appropriate County Board or an indication that the voter provided a Checkbox in the VoterScan archive for that registration.

f.  Registrants whose NCID corresponds with a registration, in any county, where either (1) DL or SSN4 was submitted for validation in the VoterScan archive and did not validate, or (2) an indication in the VoterScan archive that the voter provided a Checkbox. To the extent that these registrants have not provided HAVA ID, nothing contained herein shall be interpreted or construed to negate the requirement that a registrant provide HAVA ID pursuant to 52 U.S.C. § 21083(b) or N.C.G.S. § 163-166.12.

g.  Any other registrant otherwise shown to have provided: (1) their DL or SSN4 to a County Board or the State Board, if that DL or SSN4 can be Verified; (2) their DL or SSN4 to a County Board or the State Board and a HAVA ID to a County Board or the State Board; or (3) a Checkbox to a County Board or the State Board, and a HAVA ID to a County Board or the State Board.

7

vi.   **FPCA**: the Federal Postcard Application produced by the U.S. Department of Defense and which County Boards are required by state and federal law to accept for voter registration purposes for any voter qualified to register under the Uniformed and Overseas Citizen Absentee Voting Act ("UOCAVA") or under Article 21A of Chapter 163 of the North Carolina General Statutes.

vii.   **FWAB**: the Federal Write-In Absentee Ballot produced by the U.S. Department of Defense and which County Boards are required by state and federal law to accept for voter registration purposes for any voter qualified to register under UOCAVA or under Article 21A of Chapter 163 of the North Carolina General Statutes.

viii.   **HAVA ID**: with respect to in-person voting, (1) a current and valid photo identification, or (2) a copy of one of the following documents that shows the name and address of the voter: a current utility bill, bank statement, government check, paycheck, or other government document. A document with an expiration date is considered "current" if it has not expired; a document without an expiration date is considered current if the issuance date is within six months of the date it is presented to the election official. With respect to absentee by mail voting, a copy of (1), or (2).

ix.   **NCID**: the unique identification number assigned to every registrant in the North Carolina state voter registration database pursuant to N.C. Gen. Stat. § 163-82.10A.

x.   **SEIMS**: the State Elections Information Management System or successor election management software system(s).

8

xi.    **SSN4**: the last four digits of a registrant's or voter's Social Security number.

xii.    **State Board**: the North Carolina State Board of Elections.

xiii.    **Subject Voters**: active and inactive registered voters identified by the North Carolina State Board whose records have a registration date on or after January 1, 2004, and whose VoterView record in the SEIMS lacks a DL and SSN4 and who are not Excepted Voters. For the sake of clarity, no registered voter shall be treated as a Subject Voter based on the failure to provide a full Social Security Number; to the extent that a registrant or voter's Social Security number is provided, the provision of the last four digits of a registrant's or voter's Social Security number shall suffice.

xiv.    **Verified**: determining the DL or SSN4 provided by a registrant or voter is valid by matching the number provided by the registrant with corresponding state and federal databases.

xv.    **VoterScan**: the software module in SEIMS used for scanning and processing voter registration applications and voter registration update applications.

xvi.    **VoterView:** the software module in SEIMS that contains voter registration records.

**II.**
**JURISDICTION**

A.    This Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. §§ 1441, 1443(2). *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 408 (4th Cir. 2024).

9

B.      Based on the Parties' stipulations and the controlling law, the Court concludes that remedial action by the State Board is required to ensure that the North Carolina's Voter Rolls comply with N.C. Gen. Stat. § 163-82.11(c) (requiring compliance with Section 303 of HAVA) and 52 U.S.C. § 21083(a)(5)(A).

C.      The Court finds that (i) the terms of this Consent Judgment constitute a fair, adequate, and reasonable settlement of the issues raised with respect to *RNC* Plaintiffs' claims concerning the State Board's challenged voter registration and Voter Roll maintenance practices; and (ii) the Consent Judgment is intended to and does resolve *RNC* Plaintiffs' claims.

D.      The Court shall retain jurisdiction of this Stipulation and Consent Judgment for the for purposes of entering all orders and judgment that may be necessary to implement and enforce compliance with the terms provided herein until June 30, 2027, unless a party obtains an extension for good cause shown.

## III.
## PARTIES

This Stipulation and Consent Judgment applies to and is binding upon the following parties (collectively, the "Parties"):

A.      The North Carolina State Board of Elections and its agents, employees, contractors, successors, and all other persons representing its interests;

B.      All members of the North Carolina State Board of Elections, in their official capacities as such;

C.      Sam Hayes, in his official capacity as Executive Director of the North Carolina State Board of Elections and as North Carolina's chief State elections official as defined in 52 U.S.C. § 21083, to enforce the requirements of Section 303(a) of the Help America Vote Act of

2002 ("HAVA"), 52 U.S.C. § 21083(a) and National Voter Registration Act ("NVRA"), 52 U.S.C. § 20509;

      D.      Democratic National Committee; and

      E.      Republican National Committee and North Carolina Republican Party.

## IV.
## SCOPE OF CONSENT JUDGMENT

      A.      This Stipulation and Consent Judgment constitutes a settlement and resolution of *RNC* Plaintiffs' claims against Defendants regarding the State Board's voter registration and Voter Roll maintenance practices. *RNC* Plaintiffs recognize that by signing this Stipulation and Consent Judgment, they are releasing any claims under federal or state law that they might have against these practices as specifically alleged.

      B.      The Parties to this Stipulation and Consent Judgment acknowledge that this does not resolve or purport to resolve any claims pertaining to the constitutionality or legality of other voter registration practices or statutes in North Carolina.

      C.      The Parties to this Stipulation and Consent Judgment further acknowledge that by signing this Stipulation and Consent Judgment, the Parties do not release or waive the following: (i) any rights, claims, or defenses that are based on any events that occur after they sign the Stipulation and Consent Judgment; (ii) any claims or defenses that are not encompassed by their specific challenges to the State Board's voter registration and Voter Roll maintenance practices; and (iii) any right to institute legal action for the purpose of enforcing this Stipulation and Consent Judgment or defenses thereto.

      D.      By entering this Stipulation and Consent Judgment, the Parties are fully settling a disputed matter regarding the State Board's voter registration and Voter Roll maintenance practices. The Parties are entering this Stipulation and Consent Judgment for the purpose of

resolving disputed claims and avoiding the burden and costs associated with litigating this matter through final judgment.

## V.
## INJUNCTIVE RELIEF

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED FOR THE REASONS STATED ABOVE:**

A. **New registrants:** The State Board and County Boards are PERMANENTLY ENJOINED from accepting or processing voter registration application forms from new registrants, which are submitted without the registrant's DL, SSN4, or a Checkbox. If any such form is submitted, election officials shall endeavor to obtain the new registrant's DL, SSN4, or a Checkbox pursuant to N.C. Gen. Stat. § 163-82.4(f).

B. **General List Maintenance**: to facilitate their list-maintenance obligations, the State Board and County Boards shall continue the Registration Repair Project currently underway to collect DL, SSN4, or a Checkbox from any active and inactive North Carolina registered voters whose records have a registration date on or after January 1, 2004, and have not provided such information.

C. **Subject Voter List**: The State Board shall publish and maintain a list of Subject Voters on its website and shall also include the information in SEIMS. *See* "Registration Repair Search Tool, https://dl.ncsbe.gov/RegistrationRepair/index.html, last visited December 11, 2025. This list shall be updated daily. The State Board and County Boards are PERMANENTLY ENJOINED from declining to count the ballots of any voters not on this list on the grounds that no DL or SSN4 or a Checkbox for that registered voter appears in any record (including their VoterView or VoterScan records), or that the voter has not provided DL/SSN4 to elections officials.

12

D.    **Subject Voter List Maintenance**: the following list maintenance provisions apply specifically to Subject Voters:

i.    The State Board and County Boards are ORDERED to continue taking all reasonable steps as contemplated under the Registration Repair Project to obtain missing information for each Subject Voter pursuant to N.C. Gen. Stat. § 163-82.4(f) prior to the first general, primary, or special federal election held in the state at least 30 days after entry of this decree, including but not limited to:

ii.   The State Board has mailed to each Subject Voter's mailing address a first and second notice. A copy of the notice sent out by the State Board to the Subject Voters shall be made available on the State Board's website for the Registration Repair Project through the term of this agreement. See "Registration Repair | NCSBE," https://www.ncsbe.gov/registrationrepair, last visited December 11, 2025.

iii.  The State Board and County Boards shall continue to allow Subject Voters to submit a DL, SSN4 or a Checkbox consistent with the Registration Repair Project and Numbered Memo 2025-02.

iv.   The State Board and County Boards shall continue on an expedited basis to input information gathered from Subject Voters and shall continue to remove from the Registration Repair List those voters for whom information has been collected. Consistent with the requirements of the National Voter Registration Act of 1993 ("NVRA") for the timely transmission of voter registration applications to State election officials, 52 U.S.C. §§ 20504(e), 20506(d), the Parties agree to define "expedited basis" in this Order as "not later than 10

days after the date of acceptance" except that if voter registration information obtained by any local election official "is accepted within 5 days before the last day for registration to vote in an election," then it shall mean "not later than 5 days after the date of acceptance"; and, if voter registration information is submitted to any local election official between the day after the last day that voter registration applications may be accepted prior to an election under state law and the county canvass, then it shall mean no later than 10 days after the county canvass, unless otherwise provided by state law.

v. Any voter not listed as a Subject Voter as of the 60th day before any primary, general, or special election may not be subsequently classified as a Subject Voter for that election.

vi. Pursuant to 52 U.S.C. § 21083(a)(2)(A)(i), nothing in the Order or the Registration Repair Project alters the requirement that for any "individual… to be removed from the computerized list, such individual shall be removed in accordance with the provisions of the National Voter Registration Act of 1993," 52 U.S.C. §§ 20501-11, 'including subsections (a)(3)-(4), (c)(2), (d), and (e) of Section 8'" of the NVRA, 52 U.S.C. § 20507.

E. **Ballots Cast by Subject Voters:** The State Board and County Boards are ORDERED to allow Subject Voters to vote as follows:

i. The State Board and County Boards shall allow Subject Voters to obtain absentee ballots and vote absentee under all applicable statutes and rules governing all absentee voters. Any Subject Voter who submits a valid absentee ballot request

and complies with the absentee ballot request process will be removed from the list of Subject Voters.

ii. The State Board shall continue to instruct elections officials to request DL, SSN4, or a Checkbox from Subject Voters who appear in person to vote during early voting or on election day. In addition, the State Board shall continue to instruct elections officials to request a HAVA ID from Subject Voters who appear in person to vote during early voting or on election day.

iii. A Subject Voter who appears to vote in person and does the following shall be allowed to vote a provisional ballot: (a) provides a DL or SSN4 and a HAVA ID; or (b) provides a Checkbox. In addition, a Subject Voter marked as previously providing a DL or SSN4 that was not Verified may cast a regular ballot if the Subject Voter provides a HAVA ID when appearing to vote in person consistent with Numbered Memo 2025-03. All other Subject Voters shall be allowed to vote provisional ballots.

iv. No Subject Voter shall be denied a provisional ballot solely because of the voter's status as a Subject Voter.

v. For any Subject Voter who casts a provisional ballot and provides a HAVA ID, the election official shall be required to mark that the Subject Voter provided a HAVA ID.

vi. A Subject Voter's ballot – whether absentee, provisional, or otherwise – must be counted in federal races, and their failure to do any of the following shall not be grounds to not count their ballot in any federal race:

      a. Provide their DL or SSN4 to a County Board or the State Board.

15

b.  Provide a HAVA ID to a County Board or the State Board.

c.  Provide a Checkbox to a County Board or the State Board.

vii. When determining whether Subject Voters' absentee ballots or provisional ballots shall be counted for state or local elections, the State Board and County Boards shall comply in all respects with the processes and procedures provided by North Carolina law, including, without limitation, N.C. Gen. Stat. § 163-82.4(f). Thus, the State Board and County Boards shall apply the following rules:

a.  If a Subject Voter provides a DL or SSN4 on or before the Cure Deadline following that election, and the number provided is Verified, the Subject Voter's ballot will be counted for all state and local contests, unless there exists some other reason for their ballot not to be counted, in whole or in part, pursuant to North Carolina law.

b.  If a Subject Voter (i) provides a DL or SSN4 on or before the Cure Deadline following that election and the number provided is not Verified, and (ii) provides a HAVA ID on or before the Cure Deadline following an election, the Subject Voter's ballot cast by that voter in that election shall be counted for all state and local contests, unless there exists some other reason for their ballot not to be counted, in whole or in part, pursuant to North Carolina law.

c.  If a Subject Voter (i) provides a Checkbox on or before the Cure Deadline following that election and (ii) provides a HAVA ID on or before the Cure Deadline following an election, the Subject Voter's ballot cast by that voter in that election shall be counted for all state

16

and local contests, unless there exists some other reason for their ballot not to be counted, in whole or in part, pursuant to North Carolina law.

d.  If a Subject Voter does not provide a DL, SSN4, or a Checkbox on or before the Cure Deadline following that election, an absentee ballot or provisional ballot cast by that voter in that election shall not be counted for all state and local contests.

e.  If a Subject Voter (i) provides a DL or SSN4 on or before the Cure Deadline following that election and the number provided is not Verified, and (ii) the Subject Voter does not provide a HAVA ID on or before the Cure Deadline following an election, an absentee ballot or provisional ballot cast by that voter in that election shall not be counted for all state and local contests.

f.  The State Board shall maintain the current guidance and directives to the County Boards confirming that North Carolina law requires a person registering to vote to provide their DL or, if the individual does not have a DL, their SSN4, or, if the individual lacks DL and SSN4, a Checkbox, and confirming that an NCID shall be assigned to each registrant who submits a Checkbox.

## VI.
## ENFORCEMENT AND RESERVATION OF REMEDIES

A.    This Court retains jurisdiction over the subject matter hereof and the Parties hereto for the purposes of interpreting, enforcing, or modifying the terms of this Stipulation and Consent

17

Judgment, or for granting any other relief not inconsistent with the terms of this Consent Judgment, until this Consent Judgment is terminated.

B.      Any motion filed in this action subsequent to the entry of this Order for the purpose of modifying, amending, lifting, or enforcing this Order must be served on the United States and North Carolina Department of Justice as provided by law, the DNC and RNC at the addresses on file for each organization with the Federal Elections Commission.

C.      If any Party believes that another has not complied with the requirements of this Stipulation and Consent Judgment, it shall notify the other Party of its noncompliance by emailing the Party's counsel. Notice shall be given at least two business days prior to initiating any action or filing any motion with the Court. The Parties shall attempt to meet and confer regarding any dispute prior to seeking relief from the Court.

D.      *RNC* Plaintiffs agree to waive any entitlement to fees, including attorneys' fees, expenses, and costs against the Defendants with respect to any and all claims raised by *RNC* Plaintiffs in this action relating to the State Board's voter registration and Voter Roll maintenance practices.

E.      The Parties specifically reserve their right to seek recovery of their litigation costs and expenses arising from any violation of this Stipulation and Consent Judgment that requires any Party to file a motion with this Court for enforcement of the same.

## VII.
## GENERAL TERMS

A.      **Voluntary Agreement**. The Parties acknowledge that no person has exerted undue pressure on them to enter into this Stipulation and Consent Judgment. Every Party is voluntarily entering into this Stipulation and Consent Judgment because of the benefits that are provided under

it. The Parties acknowledge that they have read and understand the terms of the Stipulation and Consent Judgment, that they have been represented by legal counsel or had the opportunity to obtain legal counsel, and that they are voluntarily entering into this Stipulation and Consent Judgment to resolve the dispute amongst them.

B. **Agreement**. This Stipulation and Consent Judgment is binding. The Parties acknowledge that they have been advised that: (i) no other Party has a duty to protect their interest or provide them with information about their legal rights; (ii) signing this Stipulation and Consent Judgment may adversely affect their legal rights; and (iii) they should consult an attorney before signing this Stipulation and Consent Judgment, if they are unsure of their rights.

C. **Entire Agreement**. This Stipulation and Consent Judgment constitutes the entire agreement between the Parties relating to the specifically challenged voter registration and Voter Roll maintenance practices, as described more fully in *RNC* Plaintiffs' complaint. No Party has relied upon any statements, promises, or representations that are not stated in this document. No changes to this Stipulation and Consent Judgment are valid unless they are in writing, identified as an amendment to this Stipulation and Consent Judgment, and signed by all Parties. There are no inducements or representations leading to the execution of this Stipulation and Consent Judgment except as explicitly contained herein.

D. **Warranty**. The Parties signing this Stipulation and Consent Judgment warrant that they have full authority to enter this Stipulation and Consent Judgment on behalf of the Party each represents, and that this Stipulation and Consent Judgment is valid and enforceable as to that Party.

E. **Counterparts**. This Stipulation and Consent Judgment may be executed in multiple counterparts, which shall be construed together as if one instrument. Any Party shall be entitled to rely on an electronic or facsimile copy of a signature as if it were an original.

19

F.        **Effective Date**. This Stipulation and Consent Judgment is effective upon the date it is entered by the Court. This Consent Judgment shall remain in effect from its effective date until June 27, 2027, or such time as there are legislative changes to the relevant statutes referred to in this Stipulation and Consent Judgment, whichever comes first.

**THE PARTIES ENTER INTO AND APPROVE THIS STIPULATION AND CONSENT JUDGMENT AND SUBMIT IT TO THE COURT SO THAT IT MAY BE APPROVED AND ENTERED.**

**[Signatures on the following page]**

Respectfully submitted this, the 16th day of February, 2026.

**NORTH CAROLINA DEPARTMENT OF JUSTICE**

/s/ Mary L. Lucasse
Mary L. Lucasse
Special Deputy Attorney General
N.C. Bar No. 39153
P.O. Box 629
Raleigh, NC 27602
Phone: (919) 716-6900
Facsimile: (919) 716-6763
mlucasse@ncdoj.gov
*Counsel for North Carolina State Board of Elections,*

NC State Board of Elections:
Dated: Feb. 16, 2026

By: Sam M. Hayes, Executive Director

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

/s/ Phillip J. Strach
Phillip J. Strach
N.C. Bar No. 29456
Jordan A. Koonts
N.C. Bar No. 59363
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
Phone: (919) 329-3800
Facsimile: (919) 329-3799
Phil.strach@nelsonmullins.com
Jordan.koonts@nelsonmullins.com
*Counsel for RNC Plaintiffs*

**BROOKS PIERCE MCLENDON HUMPHREY & LEONARD, LLP**

/s/ Shana L. Fulton
Jim W. Phillips, Jr.
N.C. Bar No. 12516
Shana L. Fulton
N.C. Bar No. 27836
William A Robertson
N.C. Bar No. 53589
James W. Whalen
N.C. Bar No. 58477
150 Fayetteville St.
1700 Wells Fargo Capitol Center
Raleigh, NC 27601
Phone: (919) 839-0300
jphillips@brookspierce.com
sfulton@brookspierce.com
wrobertson@brookspierce.com
jwhalen@brookspierces.com

**WILMER CUTLER PICKERING HALE AND DORR LLP**

/s/ Seth P. Waxman
Seth P. Waxman*
Daniel S. Volchok*
Christopher E. Babbitt*
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
Phone: (202) 663-6000
seth.waxman@wilmerhale.com
Daniel.volchok@wilmerhale.com
Christopher.babbitt@wilmerhale.com
*Admitted Pro-Hac Vice*
*Counsel for Democratic National Committee*

SO ORDERED, this the _____ day of February, 2026.

_____
Richard E. Myers, II
Chief United States District Judge

21